BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
THOMAS J. O'REARDON II (247952)
PAULA R. BROWN (254142)
501 West Broadway, Suite 1490
San Diego, CA 92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
toreardon@bholaw.com
pbrown@bholaw.com

LEVI & KORSINSKY LLP
EDUARD KORSINSKY (*pro hac vice forthcoming)*
MARK REICH (*pro hac vice forthcoming*)
33 Whitehall St. 27th Floor
New York, NY 10004
Tel: 212/363-7500
ek@zlk.com
mreich@zlk.com

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CAROLE BODNEY, MICHAEL SALLOWAY, TABOR MILLER, CAROL WOOD, MANDEEP SINGH, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>AMERICAN HONDA MOTOR CO., INC. and HONDA MOTOR COMPANY, LTD.,<br><br>Defendants. | Case No.: 2:26-cv-05939<br><br>**CLASS ACTION**<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Carole Bodney, Michael Salloway, Tabor Miller, Carol Wood, and Mandeep Singh, individually and on behalf of other members of the below-defined classes, bring this action against Defendants American Honda Motor Co. Inc. and Honda Motor Company, Ltd. ("Defendants" or "Honda"), by and through their attorneys, and allege upon personal knowledge as to themselves and their own acts, and as to all other matters upon information and belief, based upon the investigation of the undersigned attorneys, as follows:

## INTRODUCTION

1. This is a class action lawsuit brought on behalf of current and former owners and lessees of 2018-2025 Honda Odyssey vehicles (the "Class Vehicles"), all of which were sold with the same defective starting system.

2. While starting a modern vehicle can appear simple and instantaneous, there are several steps in the technical process that must occur. Typically, when a driver simultaneously presses a vehicle's brake pedal and ignition button, power is delivered through the vehicle's electrical system from the battery to the starter motor, which then engages the engine's flywheel (sometimes referred to as a "flex plate"). The flywheel rotates the engine's crankshaft to sufficient speeds to initiate combustion. Once the engine reaches the target idle speed, the starter motor automatically disengages, and the vehicle is started and ready for operation.

3. For this process to properly occur, it is critical that the vehicle battery has sufficient power output and the starter motor has sufficient and efficient torque output. The Class Vehicles lack both, resulting in a failure to start during normal operation (the "Defect").

4. The Defect occurs because the batteries in the Class Vehicles fail to adequately charge during normal operation, resulting in a perpetual low state of charge and lack of sufficient power to crank the engine.

5. Additionally, the starter motors in the Class Vehicles prematurely degrade due to heat and age, reducing torque output and resulting in insufficient

torque to crank the engine. Compounding the insufficient torque, the starter motor and the flywheel gears have helical teeth – as opposed to straight teeth used by most other automotive manufacturers – which reduces the transfer of torque when the starter motor is engaged. Consequently, the starter motor cannot efficiently transfer torque to the flywheel and crank the engine.

6. The Defect manifests in two ways. First, the Class Vehicles fail to restart when the engine shuts off during an idle stop event (the "Idle Start" side of the Defect). The Class Vehicles are designed to temporarily turn off rather than idle when the vehicle brake is depressed at a temporary stop, such as a traffic light, stop sign, or highway onramp light. When operating properly, the vehicle automatically restarts when the driver takes their foot off the brake and presses the accelerator. However, the Defect prevents the vehicle from restarting after an automatic idle stop has occurred.

7. Second, the Class Vehicles do not re-start after being parked subsequent to use, such as in parking lots following errands or at gas stations (the "Parked Start" side of the Defect).

8. The Defect can be summed up by the following complaint submitted to the National Highway Traffic Safety Administration ("NHTSA") by the owner of a 2025 Honda Odyssey:

> Two concerning and dangerous malfunctions are occurring. 1.) When car is stopped at a light for more than 45 seconds the car engine shuts off, when I press on the gas the dashboard lights up and displays a battery light and advises me to restart the car. The car struggles to turn over. 2.) The car struggles to start on initial start as well. The dealership replaced the battery and it continues to happen, they advised me to disengage idol stop every time I start my vehicle to save the starter and prevent the car from stalling. This is obviously a problem with the Honda idol start that needs to be addressed. There are multiple threads in online forums about this issue with Honda.[1]

[1] *See* NHTSA ID 11693599. All consumer and NHTSA complaints quoted

9. As a result of the Defect, the Class Vehicles suddenly become inoperable, leaving drivers stranded at traffic signals or stop signs, on signal regulated freeway onramps, and stranding them at other dangerous locations.

10. Honda has long been aware of the Defect, providing repairs for other Honda and Acura models, and even attempting to repair some of the Class Vehicles. In fact, Honda has admitted to the Idle Start side of the Defect by implementing several technical service bulletins that offered various solutions, including software updates, valve adjustments, and starter assembly replacements. However, for the Class Vehicles, Honda has never offered a fix for the Defect or otherwise recalled the vehicles.

11. Indeed, in a May 2025 communication to its dealers, Honda admitted that consumers continue to complain of "a no auto re-start condition after going into an auto idle stop" in the Class Vehicles.[2]

12. Despite extensive notice and knowledge of the Defect from the numerous consumer complaints it has received, information received from dealers, pre-sale durability testing, the numerous NHTSA complaints and investigations, and its own internal records, including similar Idle Stop and Parked Start failures in prior model years, Honda has not recalled the Class Vehicles to repair the Defect, offered its customers a suitable repair or replacement free of charge, or offered to reimburse consumers who have incurred out-of-pocket expenses to repair the Defect.

13. As a result of the Defect and the monetary costs associated with attempts to repair it, Plaintiffs and other Class members have suffered injury in fact, incurred damages, and have otherwise been harmed by Honda's conduct.

---

herein are reproduced verbatim, including original spelling, punctuation, and grammatical errors.

[2] https://static.nhtsa.gov/odi/tsbs/2025/MC-11021751-0001.pdf (last visited June 2, 2026).

14. Each purchaser or lessee of a Class Vehicle paid for and received a Class Vehicle with an undisclosed and significant safety defect. Each of these purchasers and lessees were damaged in that they paid more for their Class Vehicles than they would have if they knew about the Defect, or in that they would not have purchased or leased their Class Vehicles at all had they been informed of the Defect.

15. On behalf of themselves and the proposed Classes, defined below, Plaintiffs bring this action to redress Honda's violation of multiple state consumer protection statutes, breach of express and implied warranties, and unjust enrichment. Plaintiffs seek damages, restitution, and equitable relief to compensate Plaintiffs and the Classes and to remedy the Defect.

## JURISDICTION AND VENUE

16. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) and (d) because the aggregate amount in controversy for the Class exceeds $5,000,000 and at least one member of the Class is diverse in citizenship from one Defendant.

17. This Court has personal jurisdiction over American Honda Motor Company, Inc. because it is a California corporation with its corporate headquarters located in this district.

18. This Court has personal jurisdiction over Honda Motor Company Ltd. because Honda Motor Company Ltd. has purposefully availed itself of the privilege of doing business within California, including by marketing and selling the Class Vehicles, and exercising jurisdiction over Honda Motor Company Ltd. does not offend traditional notions of fair play and substantial justice.

19. Venue as to Honda is proper in this judicial district under 28 U.S.C. § 1391 because Defendant sells a substantial number of automobiles in this District, has dealerships in this District, maintains its corporate headquarters within this District, and many of Honda's acts complained of herein occurred

within this District, including the marketing, sale and leasing of the Class Vehicles to Plaintiffs and members of the putative Classes in this District.

## PARTIES

***Plaintiffs***

**California**

20. Plaintiff Carole Bodney is a citizen of California and resides in Los Angeles, California.

21. Plaintiff Bodney owns a 2022 Honda Odyssey, which she purchased new from Norm Reeves Honda in Cerritos, California in August 2021.

22. Prior to purchasing her Honda, Plaintiff Bodney reviewed Honda's promotional materials, test drove the vehicle and interacted with at least one sales representative. At no point during discussions with the authorized sales representative regarding the features, reliability, and safety of the Class Vehicle did Honda reveal the existence of the Defect. Additionally, Honda failed to disclose the Defect through its sales brochures and Monroney sticker when advertising the features, reliability, safety, and long-term durability of the Class Vehicle.

23. Through her exposure to Honda's advertisements, promotional materials and other public statements, Plaintiff was aware of and believed Honda's marketing message that the Class Vehicles are safe and dependable, which was material to her decision to purchase a Class Vehicle.

24. When she purchased the vehicle, she believed, based on Honda's marketing message, that she would be in a safe and dependable vehicle, one that is safer and more dependable than other vehicles on the market.

25. At no point before Plaintiff Bodney purchased her vehicle did Honda disclose the Defect to her, including that as a result, the vehicle was not safe and dependable, as advertised.

26. Plaintiff Bodney's vehicle was not safe and dependable. In or around November 2021, the Defect began manifesting in her vehicle by failing to restart after coming to a complete stop. Plaintiff promptly presented her vehicle to a Honda authorized dealer, Norm Reeves Honda for diagnosis and repair. However, Honda's authorized dealer informed her that nothing was wrong with the vehicle and failed to identify or disclose the existence of the Defect. Plaintiff Bodney's Class Vehicle continues to routinely fail to restart when she engages the accelerator from a complete stop. Despite presenting her Class Vehicle to Norm Reeves Honda for repair, Honda has been either unable or unwilling to repair the underlying Defect.

27. The Defect has created a dangerous condition that gives rise to a clear, substantial, and unreasonable risk of death or personal injury to Plaintiff Bodney, other occupants in her Class Vehicle, and others on the road.

28. Plaintiff Bodney has been left without a remedy and, as a result of Honda's conduct and the Defect, is continuously exposed to an increased risk of severe injury or death.

29. Plaintiff Bodney did not receive the benefit of her bargain. She purchased a vehicle of a lesser standard, grade, and quality than represented, and she did not receive a vehicle that met ordinary and reasonable consumer expectations regarding safe and reliable operation.

30. Had Honda disclosed the Defect, Plaintiff Bodney would not have purchased her Class Vehicle or would have paid less to do so.

31. Plaintiff Bodney would purchase a vehicle from Honda in the future if Honda's representations about the vehicle, including its safety and durability, were accurate.

**Georgia**

32. Plaintiff Michael Salloway is a citizen of Georgia and resides in Dunwoody, Georgia.

33. Plaintiff owns a 2025 Honda Odyssey, which he purchased new from Gwinnett Place Honda in Duluth, Georgia in October 2025.

34. Prior to purchasing his Honda, Plaintiff Salloway reviewed Honda's promotional materials, the Monroney sticker and interacted with at least one sales representative. At no point during discussions with the authorized sales representative regarding the features, reliability, and safety of the Class Vehicle did Honda reveal the existence of the Defect. Additionally, Honda failed to disclose the Defect through its sales brochures and Monroney sticker when advertising the features, reliability, safety, and long-term durability of the Class Vehicle.

35. Through his exposure to Honda's advertisements, promotional materials, and other public statements, Plaintiff Salloway was aware and believed Honda's marketing message that the Class Vehicles are safe and dependable, which was material to his decision to purchase a Class Vehicle.

36. When he purchased the vehicle, he believed, based on Honda's marketing message, that he would be in a safe and dependable vehicle, one that is safer and more dependable than other vehicles on the market.

37. At no point before Plaintiff Salloway purchased his vehicle did Honda disclose the Defect to him, including that as a result, the vehicle was not safe and dependable as advertised.

38. Plaintiff Salloway's vehicle was not safe and dependable. The Defect began manifesting in his vehicle just months after his purchase. Plaintiff Salloway and his wife routinely experience a delayed or sometimes no response from their vehicle's engine when they engage the accelerator from a complete stop, often requiring them to manually restart the vehicle.

39. The Defect has created a dangerous condition that gives rise to a clear, substantial, and unreasonable risk of death or personal injury to Plaintiff Salloway, other occupants in his Class Vehicle, and others on the road.

40. Plaintiff Salloway has been left without a remedy and, as a result of Honda's conduct and the Defect, is continuously exposed to an increased risk of severe injury or death.

41. Plaintiff Salloway did not receive the benefit of his bargain. He purchased a vehicle of a lesser standard, grade, and quality than represented, and he did not receive a vehicle that met ordinary and reasonable consumer expectations regarding safe and reliable operation.

42. Had Honda disclosed the Defect, Plaintiff Salloway would not have purchased his Class Vehicle or would have paid less to do so.

43. Plaintiff Salloway would purchase a vehicle from Honda in the future if Honda's representations about the vehicle, including its safety and durability, were accurate.

**New York**

44. Plaintiff Carol A. Wood is a citizen of New York and resides in Scotia, New York.

45. Plaintiff owns a 2025 Honda Odyssey, which she purchased new from Mohawk Honda in Scotia, New York in September 2025.

46. Prior to purchasing her Honda, Plaintiff Wood reviewed Honda's promotional materials, the Monroney sticker and interacted with at least one sales representative. At no point during discussions with the authorized sales representative regarding the features, reliability, and safety of the Class Vehicle did Honda reveal the existence of the Defect. Additionally, Honda failed to disclose the Defect through its sales brochures and Monroney sticker when advertising the features, reliability, safety, and long-term durability of the Class Vehicle.

47. Through her exposure to Honda's advertisements, promotional materials, and other public statements, Plaintiff Wood was aware and believed

Honda's marketing message that the Class Vehicles are safe and dependable, which was material to her decision to purchase a Class Vehicle.

48. When she purchased the vehicle, she believed, based on Honda's marketing message, that she would be in a safe and dependable vehicle, one that is safer and more dependable than other vehicles on the market.

49. At no point before Plaintiff Wood purchased her vehicle did Honda disclose the Defect to her, including that as a result, the vehicle was not safe and dependable as advertised.

50. Plaintiff Wood's vehicle was not safe and dependable. The Defect began manifesting in her vehicle just months after her purchase. Plaintiff Wood routinely experiences a delayed or sometimes no response from her vehicle's engine when she engages the accelerator from a complete stop, often requiring her to manually restart the vehicle.

51. The Defect has created a dangerous condition that gives rise to a clear, substantial, and unreasonable risk of death or personal injury to Plaintiff Wood, other occupants in her Class Vehicle, and others on the road.

52. Plaintiff Wood has been left without a remedy and, as a result of Honda's conduct and the Defect, is continuously exposed to an increased risk of severe injury or death.

53. Plaintiff Wood did not receive the benefit of her bargain. She purchased a vehicle of a lesser standard, grade, and quality than represented, and she did not receive a vehicle that met ordinary and reasonable consumer expectations regarding safe and reliable operation.

54. Had Honda disclosed the Defect, Plaintiff Wood would not have purchased her Class Vehicle or would have paid less to do so.

55. Plaintiff Wood would purchase a vehicle from Honda in the future if Honda's representations about the vehicle, including its safety and durability, were accurate.

**North Carolina**

56. Plaintiff Tabor Miller is a citizen of North Carolina and resides in Cary, North Carolina.

57. Plaintiff Miller owns a 2025 Honda Odyssey, which he purchased new from Autopark Honda in Cary, North Carolina.

58. Prior to purchasing his Honda, Plaintiff Miller reviewed Honda's promotional materials, the Monroney sticker, sales brochures, test drove the vehicle and interacted with at least one sales representative. At no point during discussions with the authorized sales representative regarding the features, reliability, and safety of his Class Vehicle did Honda reveal the existence of the Defect. Additionally, Honda failed to disclose the Defect through its sales brochures and Monroney sticker when advertising the features, reliability, safety, and long-term durability of the Class Vehicle.

59. Through his exposure to Honda's advertisements, promotional materials and other public statements, Plaintiff was aware of and believed Honda's marketing message that the Class Vehicles are safe and dependable, which was material to his decision to purchase his Class Vehicle.

60. When Plaintiff purchased the vehicle, he believed, based on Honda's marketing message, that he would be in a safe and dependable vehicle, one that is safer and more dependable than other vehicles on the market.

61. At no point before Plaintiff Miller purchased his vehicle did Honda disclose the Defect to him, including that as a result, the vehicle was not safe and dependable, as advertised.

62. Plaintiff Miller's vehicle was not safe and dependable. The Defect first manifested in his vehicle shortly after purchase, resulting in stalls and delayed restarts about 80% of the time. When this happens, the vehicle fails to start, requiring it to be manually turned off and restarted by pressing the on/off button. When Plaintiff presented his Class Vehicle to Autopark Honda in Cary, North

Carolina for repair of the Defect, they simply replaced the starter with another equally defective starter, leaving his Class Vehicle suffering from the same Defect. Thus, despite presenting his Class Vehicle to a Honda dealer, Autopark Honda, in Cary, North Carolina for repair, Honda has been either unable or unwilling to repair the underlying Defect.

63. The Defect has created a dangerous condition that gives rise to a clear, substantial, and unreasonable risk of death or personal injury to Plaintiff Miller, other occupants in his Class Vehicle, and others on the road.

64. Plaintiff Miller has been left without a remedy and, as a result of Honda's conduct and the Defect, is continuously exposed to an increased risk of severe injury or death.

65. Plaintiff Miller did not receive the benefit of his bargain. He purchased a vehicle of a lesser standard, grade, and quality than represented, and he did not receive a vehicle that met ordinary and reasonable consumer expectations regarding safe and reliable operation.

66. Had Honda disclosed the Defect, Plaintiff Miller would not have purchased his Class Vehicle or would have paid less to do so.

67. Plaintiff Miller would purchase a vehicle from Honda in the future if Honda's representations about the vehicle, including its safety and durability, were accurate.

**Virginia**

68. Plaintiff Mandeep Singh is a citizen of Virginia and resides in Aldie, Virginia.

69. Plaintiff Singh owns a 2025 Honda Odyssey Touring, which he purchased new in December 2024 from Landmark Honda in Alexandria, Virginia.

70. Prior to purchasing his Honda, Plaintiff Singh reviewed Honda's promotional materials, the Monroney sticker, sales brochures, and interacted with at least one sales representative. At no point during discussions with the authorized

sales representative regarding the features, reliability, and safety of the Class Vehicle did Honda reveal the existence of the Defect. Additionally, Honda failed to disclose the Defect through its sales brochures and Monroney sticker when advertising the features, reliability, safety, and long-term durability of the Class Vehicle.

71. Through his exposure to Honda's advertisements, promotional materials and other public statements, Plaintiff was aware of and believed Honda's marketing message that the Class Vehicles are safe and dependable, which was material to his decision to purchase his Class Vehicle.

72. When he purchased the vehicle, he believed, based on Honda's marketing message, that he would be in a safe and dependable vehicle, one that is safer and more dependable than other vehicles on the market.

73. At no point before Plaintiff Singh purchased his vehicle did Honda disclose the Defect to him, including that as a result, the vehicle was not safe and dependable, as advertised.

74. Plaintiff Singh's vehicle was not safe and dependable. The Defect manifested in his vehicle within ten months of purchase. Frequently, Plaintiff Singh's engine fails to turn on after sitting at a stoplight, stranding him in the middle of the road. Despite presenting his Class Vehicle to Landmark Honda for repair on three separate occasions, Honda has been either unable or unwilling to repair the underlying Defect.

75. The Defect has created a dangerous condition that gives rise to a clear, substantial, and unreasonable risk of death or personal injury to Plaintiff Singh, other occupants in his Class Vehicle, and others on the road.

76. Plaintiff Singh has been left without a remedy and, as a result of Honda's conduct and the Defect, is continuously exposed to an increased risk of severe injury or death.

77. Plaintiff Singh did not receive the benefit of his bargain. He purchased a vehicle of a lesser standard, grade, and quality than represented, and he did not receive a vehicle that met ordinary and reasonable consumer expectations regarding safe and reliable operation.

78. Had Honda disclosed the Defect, Plaintiff Singh would not have purchased his Class Vehicle or would have paid less to do so.

79. Plaintiff Singh would purchase a vehicle from Honda in the future if Honda's representations about the vehicle, including its safety and durability, were accurate.

***Defendants***

80. Defendant Honda Motor Company, Ltd. ("HML") is a Japanese corporation, with its principal place of business at 2-1-1, Minami-Aoyama Minato-Ku, 107-8556 Japan, and the parent of Defendant American Honda Motor Company, Inc.

81. HML through its various entities (including American Honda Motor Company), designs, manufactures, markets, distributes, and sells Honda automobiles across the United States.

82. Defendant American Honda Motor Company, Inc. ("AHM") is a California corporation with its principal place of business in Torrance, California.

83. AHM is the United States sales and marketing subsidiary of, and is wholly owned by, HML, and is responsible for distributing, marketing, selling, and servicing Honda vehicles in the United States, including the Class Vehicles.

84. At all relevant times, AHM acted as an authorized agent, representative, servant, employee, and/or alter ego of HML while performing activities, including but not limited to advertising, marketing, warranties, selling Class Vehicles, disseminating technical information, and monitoring Honda vehicles in the United States.

85. AHM renders services on behalf of HML that are sufficiently important to HML and its sale of vehicles in the United States that HML would perform those services itself if AHM did not exist.

86. HML controls the public name and brand of AHM, and in consumer transactions, like those with Plaintiffs and the proposed Classes, HML's unified brand and logo serve as its and AHM's official seal and signature as to consumers.

87. HML operates AHM with a unity of interest and owners such that AHM is a mere instrumentality of its parent, HML.

88. HML and AHM engage in the same business enterprise and share common board members and employees. Upon information and belief, HML has, and at all relevant times had, the contractual right to exercise and in practice has exercised control over AHM's work, including but not limited to the manner of Class Vehicles' marketing, the scope of written warranties, and representations made, and facts withheld from consumers and the public about the Defect.

89. At all relevant times to this action, HML and AHM manufactured, distributed, sold, leased, and/or warranted the Class Vehicles under the Honda brand name throughout the United States. Defendants and/or its agents designed, manufactured, and/or installed the defective components and/or software in the Class Vehicles. Additionally, Honda developed and disseminated the owner's manuals, warranty booklets, advertisements, maintenance schedule, and other promotional and technical matter relating to the Class Vehicles.

## FACTUAL ALLEGATIONS

### A. The Defect

90. The Class Vehicles are all equipped with the same or substantially similar engines and starting systems, including the battery, alternator, starter motor, and flywheel.

91. To manually start a Class Vehicle, the driver must simultaneously press the vehicle's brake pedal and ignition button. The vehicle's electrical system

then draws stored electrical energy from the battery and delivers it to the starter motor through a series of control modules, wiring, and relays. The starter motor converts electrical energy into mechanical torque and rotational force sufficient to turn the engine's crankshaft via engagement with the engine's flywheel or flex plate.

92. The Class Vehicles are also all outfitted with automatic stop and start systems (also known as automatic idle systems) that utilize the same starting system. When the automatic stop and start system in a Class Vehicle is working properly, the engine temporarily shuts off, rather than idles, when the vehicle comes to a complete but temporary stop, such as at a red light, stop sign, or metered freeway onramp. When operating properly the vehicle engine automatically restarts when the driver releases the brake and presses the accelerator to continue driving.

93. Starting the vehicle after it has been manually shut off and restarting after an idle stop event utilizes the same start system in the Class Vehicles.

94. To successfully start the engine in both scenarios, the starter motor must (a) receive sufficient electrical power from the battery and (b) generate sufficient torque to overcome internal engine resistance, compression forces, and friction.

95. If either the battery's available power or the starter motor's torque output is insufficient, the engine will fail to crank or will crank too slowly to initiate combustion. Both are deficient in the Class Vehicles.

96. The Class Vehicles are designed so that the battery is recharged during normal vehicle operation through the charging system, such as the alternator, which is intended to maintain the battery at a sufficient state of charge to support repeated engine starts.

97. In the Class Vehicles, however, the charging system fails to adequately replenish the battery's charge during ordinary driving conditions. As a

result, the batteries in the Class Vehicles routinely operate in a low state of charge.

98. A battery operating in a low state of charge is unable to deliver the electrical current required to consistently power the starter motor at levels necessary to crank the engine.

99. This condition is not apparent to drivers during routine vehicle operation and does not necessarily trigger warning lights or diagnostic alerts prior to a no-start event.

100. Over time, the repeated operation of the Class Vehicles with an inadequately charged battery accelerates battery degradation and further reduces available starting power.

101. As a result, even batteries that are relatively new or within their expected service life may be incapable of reliably supporting engine starts in the Class Vehicles.

102. Independent of the battery charging issues, the starter motors installed in the Class Vehicles lack sufficient torque capacity to reliably crank the engine throughout the vehicle's intended useful life.

103. The starter motors are subjected to significant thermal and mechanical stress during normal vehicle operation, causing the starter motor components to degrade prematurely.

104. This premature degradation reduces the starter motor's torque output well before the end of its expected service life.

105. As torque output diminishes, the starter motor becomes increasingly incapable of rotating the engine crankshaft at the speed necessary to initiate combustion.

106. This loss of torque occurs even when the starter motor remains electrically functional and has not completely failed.

107. Consequently, drivers may experience intermittent starting failures that worsen over time rather than a single, complete starter failure.

108. The torque deficiency of the starter motor is compounded by an inefficient mechanical interface between the starter motor and the engine. The starter motor and flywheel in the Class Vehicles use helical gear teeth rather than straight-cut gear teeth commonly used by other automotive manufacturers.

109. Helical gear teeth reduce the amount of usable torque transferred from the starter motor to the flywheel.

110. This design choice further diminishes the starter motor's effective torque at the precise moment maximum torque transfer is required to crank the engine.

111. As a result, even when the starter motor receives electrical power, it is unable to efficiently translate that power into rotational force at the crankshaft.

112. This inefficient torque transfer exacerbates the starter motor's inability to start the engine, particularly as the starter motor ages and its torque output declines.

113. The battery charging deficiency and starter motor torque deficiency, together with the inefficient mechanical torque transfer (i.e., the "Defect"), cause the Class Vehicles to fail to start during normal and foreseeable use.

114. The Defect manifests when drivers attempt to start the vehicle in routine circumstances.

115. For example, Class members report that their vehicles failed to start after being parked following ordinary use (i.e., the "Parked Start" side of the Defect):

> I am reporting a recurring issue with my 2025 Honda Odyssey, which exhibits difficulty starting the engine. Approximately two months after purchasing the vehicle in Dec 2024, the original battery failed and was replaced under warranty. However, the vehicle continues to experience problems when attempting to start. When I press the start button, the engine hesitates, cranks slowly, or feels as though it nearly fails to start. This issue occurs intermittently, regardless of weather conditions or the duration the vehicle has been parked. No warning lights or error messages have appeared on the dashboard The problem has occurred

> multiple times, most recently on Friday August 15th 2025, and creates a safety concern, as the vehicle's unreliable starting could leave me stranded in potentially hazardous situations, such as remote locations or adverse weather. I have not yet had the vehicle inspected by a dealer for this specific issue, but I plan to schedule a service appointment to diagnose the problem. The prior battery replacement suggests potential issues with the electrical system, starter, or related components, possibly linked to the auto start/stop system currently under NHTSA investigation for 2018–2025 Honda Odyssey models. Additionally when driving down the road especially at low speeds the engine hesitates as if it's not getting enough gasoline. Lastly the AppleCarplay screen and all other associated screens randomly go out. I have been to the dealership 3 times for repairs and they give me the run around saying they don't notice anything so Honda won't pay for anything and send me on my way.[3]

> Our 2018 Honda Odyssey has randomly failed to start three times. No warning no advance warning messages or alerts. These appeared once after being parked overnight and twice immediately after being driven a short distance. First time was in June of 2021, second time in May of 2023 and third time in June of 2023. When trying to start the vehicle either the dash would flash with unknown information before going blank or was blank and wouldn't crank the starter motor. We replaced the battery after the third failure.[4]

> Upon going to start my vehicle it would not start. I ended up jump starting the car and going to buy a new battery. I replaced the battery even though repair facility stated battery was at 78% and in good state. Two days later I went to start the van again and the battery was again dead. I jumped the car to get it started and have had to continually jump start the car due to no start issue. The alternator is showing a constant 14.3 volt charge when running but the battery continues to die. Has left my family stranded multiple times in the past week. No known cause or fix.[5]

116. Other Class members report that their vehicles failed to restart following an automatic idle stop event (i.e., the "Idle Start" side of the Defect):

---

[3] 2025 Honda Odyssey, NHTSA ID 11681024.

[4] 2018 Honda Odyssey, NHTSA ID 11528454.

[5] 2021 Honda Odyssey, NHTSA ID 11553382.

The auto on/off while idling will randomly fail. The car stalls, all emergency lights turn on and the car won't start for a few minutes. This has occurred at stop lights and in traffic after coming to a complete stop and the car turns off when idling. The car is only 6 months old. The first occurrence happened at the 3 month mark and has become more persistent. I've had my battery checked and that was not an issue.[6]

After going into Auto-idle at a traffic light. The engine did not turn back on when accelerator was pressed. Even after a restart. It took about 30 seconds.[7]

Vehicle will fail to restart after Auto Idle Stop engages at times. Dealership performed reset, but issue continued afterwards . Safety Issue due to delayed acceleration. Has been brought in twice for this issue with no resolution.[8]

Several times over the last 18-24 months my van has 'stalled' after the auto engine start/stop feature restarts my car. This has mostly happened while at stop lights/signs, or idle. However, it has happened twice while driving, my car will just die and slow dramatically. I have been able to restart by pushing the start/engine button. There has been two times where restarting (while idle) has not worked. Most recently it happened while at a stop light. when the light turned green I went to accelerate and the van would not move, all the dash lit up, and there was no power to the engine. It took several minutes to get the van restarted, holding up traffic and causing me panic and fear that I could be hit.[9]

Honda Odyssey Idle Stop system failure Vehicle: 2020 Honda Odyssey (Elite) Incident description: While driving, the vehicle's "Idle Stop" system engaged as I came to a complete stop at [e.g., a traffic light, intersection, stop sign]. The engine shut off as designed, but failed to restart automatically when I released the brake pedal. This left my vehicle stalled and disabled in the middle of [e.g., an intersection, a lane of traffic] with no forward power. I was scared as

6 2025 Honda Odyssey, NHTSA ID 11675182.
7 2025 Honda Odyssey, NHTSA ID 11686686.
8 2024 Honda Odyssey, NHTSA ID 11677377.
9 2020 Honda Odyssey, NHTSA ID 11624542.

> there were lots of cars behind me in the intersection. This has happened over a dozen times. Safety risk: This failure created an immediate and dangerous safety hazard. My vehicle was a risk for being rear-ended by traffic from behind, and my family was stranded in a vulnerable position. The vehicle was unable to move out of harm's way, and I had to put the vehicle in park and manually restart the engine. This is unacceptable for a system designed to work seamlessly and automatically. Additional information: This is not an isolated incident. The auto start-stop failure has occurred multiple times since March 2025. The system failure has put me and my passengers in a position of significant risk multiple times. Failed component: The vehicle's "Auto Idle Stop" (AIS) system, which failed to restart the engine after it was automatically shut off. Resolution: An immediate and permanent recall is necessary to address this dangerous defect. Existing service bulletins have not corrected the problem. I urge the NHTSA to require Honda to provide an effective, long-term solution to ensure the safety of Odyssey owners.[10]
>
> On 3 separate occasions, I have been at a stop light where the auto stop kicks in. When I release my foot from brake, it should auto start. Instead, it stalls out. This is a huge safety issue and has caused cars behind me to get angry and honk. If someone wasn't paying attention, this could cause collision easily. The battery seems fine, and even if it wasn't, shouldn't the battery life be considered when the feature is triggered? I will be taking it in to get serviced, but I'm very frustrated.[11]

117. The starting failures are not attributable to driver error, improper maintenance, or abnormal vehicle use.

118. Instead, they result directly from the Defect present in the Class Vehicles at the time of sale.

119. When the Defect manifests, drivers are left stranded unless or until they can get their vehicles restarted and driven. This places the driver and

---

[10] 2020 Honda Odyssey, NHTSA ID 11691979.

[11] 2024 Honda Odyssey, NHTSA ID 11736381.

occupants of Class Vehicles in danger of serious injury, as the Class Vehicles are stranded and temporarily inoperable at intersections and other places.

**B. Honda's Knowledge of the Defect**

120. Honda fraudulently, intentionally, negligently, and/or recklessly concealed from Plaintiffs and Class Members the Defect in the Class Vehicles, even though Honda knew or should have known of the design and/or manufacturing defects.

121. Honda became aware of the Defect through sources not available to Plaintiffs and the other members of the Class, including, but not limited to: pre-production testing, pre-production design failure mode and analysis data, production design failure mode and analysis data, early consumer complaints made exclusively to Honda's network of dealers and directly to Honda, aggregate warranty data compiled from Honda's network of dealers, testing conducted by Honda in response to consumer complaints, repair order and parts data received by Honda from Honda's network of dealers and suppliers, its investigation and field analysis of the Defect, and its investigation and root cause analysis of failures in pre-Class Vehicles.

**1. Pre-Release Testing**

122. Honda knew or should have known about the Defect from testing performed on the Class Vehicles. Prior to the sale of any of the Class Vehicles, Honda–like any other reasonable Original Equipment Manufacturer seeking to manufacture and sell vehicles on the U.S. market–completed a multitude of analyses and testing that exposed the existence of the Defect.

123. Honda and its suppliers perform various pre-production testing on new vehicle components, including Failure Modes and Effects Analysis ("FMEA") and Design Validation Plan and Report ("DVP&R").

124. Honda and its suppliers performed these tests, and others, on the Class Vehicles and, if performed with due care, each of these tests demonstrated that the

relevant systems or components in the Class Vehicles would lead to failure of the starting system.

125. FMEA evaluates the ways in which a specific component will fail. It looks at the design of each part, the way it is assembled, and considers whether different types of use could lead to system or part failure. When testing the systems at issue here, Honda's FMEA testing assessed, among other aspects, the circumstances and methods by which the starting system and its components could fail, the likelihood of failure in various situations, and how probable each scenario is during normal, everyday driving. This process included testing the long-term durability of the starting system and its components to identify failures that may only become evident after use, but within the warranty coverage, as a result of underlying defects.

126. The DVP&R phase includes an extensive battery of tests and other work necessary to validate the robustness of any design bench scale and vehicle/field testing.

127. Bench scale testing is component-specific and establishes a strict set of specifications and guidelines to ensure that the component will operate reliably and durably in foreseeable operating conditions. During this phase of testing, Honda's batteries, starter motors, and flywheels were "bench tested," that is, set up on various machinery to simulate certain operating extremities and conditions to confirm whether it meets the necessary specifications and guidelines set by the supplier in coordination with Defendants. Defendants received the detailed results of the bench testing and resulting Technical Control Documents (TCDs) which outline the operating limitations of the starting system along with the potential risks associated with installation in the Class Vehicles, including the Defect. Similarly, bench testing of the starting system would have confirmed what Defendants already knew about its design choice or its workmanship and

materials—that the starting system fails to operate as intended and the results of the Defect.

128. Honda and its suppliers also performed computer and real-world simulations of the systems, including in extreme conditions, to confirm they are meeting the design goals. Honda tested the starting system in actual vehicles, both prototype vehicles and pre-production line vehicles. In these tests, the Class Vehicles were driven through a full range of conditions and extremities that are encountered once a Class Vehicle is sold to the public.

129. Through the rigors of DVP&R testing, the starting system in the Class Vehicles was exposed repeatedly to conditions that cause the Defect to manifest under everyday driving conditions. However, due to the costs of redesigning and fixing the starting system, Honda opted to conceal the Defect.

130. Honda knew or should have known that the Defect was material to owners or lessees of the Class Vehicles and that Plaintiffs and Class Members could not reasonably discover the Defect on their own prior to purchasing or leasing the Class Vehicles.

131. Honda had and continues to have a duty to fully disclose the true nature of the Defect to Plaintiffs and Class Members, among other reasons, because the Defect poses an unreasonable safety hazard; because Honda had and has exclusive knowledge or access to material facts about the Class Vehicles' starting systems that were and are not known to or reasonably discoverable by Plaintiffs and the other members of the Class; and because Honda has actively concealed the Defect from its customers at the time of purchase or repair and thereafter.

132. Specifically, Honda (a) failed to disclose, at the time of purchase or repair and thereafter, any and all known material defects or material nonconformities of the Class Vehicles, including the Defect; (b) failed to disclose, at the time of purchase or repair and thereafter, that the Class Vehicles and their

starting systems were not in good working order, were defective and prone to failure, and were not fit for their intended purpose; and (c) failed to disclose and actively concealed the fact that the Class Vehicles and their starting systems were defective, despite the fact that Honda learned of the Defect before it placed the Class Vehicles in the stream of commerce.

133. Honda could have made these disclosures through its consumer-facing advertisements, sales brochures, and other marketing materials. Additionally, Honda could have informed its dealerships (its chosen agents) of the Defect and had them notify potential purchasers, who are intended third-party beneficiaries, prior to sale.

134. The Defect and its associated safety risks were concealed and actively suppressed in order to protect Honda's corporate profits from loss of sales, purchase refunds, warranty repairs, adverse publicity, and brand disengagement. Consumers were misled into believing their Class Vehicles had different qualities than what they purchased or leased, and as a result, were deprived of economic value, the benefit of their bargain, and overpaid for their Class Vehicles.

135. At all relevant times, in promotional materials, advertisements, and other representations, Honda and its authorized dealers maintained that the Class Vehicles were safe, reliable, and made no reference to the Defect. Honda also engaged in a long-term advertising and branding campaign as a reliable vehicle manufacturer. Plaintiffs and Class Members, directly, and indirectly, were exposed to, saw or heard such promotional materials and advertisements prior to purchasing or leasing the Class Vehicles and had the reasonable expectation that their Class Vehicle would be safe and reliable. Indeed, these misleading representations about the Class Vehicles' reliability and safety were material to Plaintiffs' and Class Members' ultimate decision to purchase or lease the Class Vehicles.

136. Notwithstanding Honda's superior and exclusive knowledge of the Defect, it failed to disclose the Defect to Plaintiffs and Class Members at the time

of purchase or lease of the Class Vehicles and made no mention of the Defect in its advertisements, promotional materials, and other representations.

### 2. Honda's Prior Technical Safety Bulletins and Dealer Communications about the Defect

137. Honda also knew of the Defect because it has long existed in other Honda and Acura models and earlier model years of the Class Vehicles.

138. On June 3, 2022, NHTSA's Office of Defects Investigation ("ODI") opened a "Preliminary Evaluation" concerning complaints with the automatic idle system in 2016-2020 Honda Pilots. According to the ODI, "[t]he complaints allege that the engine fails to restart on its own from a complete stop at a traffic light or road intersection with the Auto Start/Stop function engaged."[12] The ODI further explained that for some, "a jump was required for the vehicle to restart."[13]

139. In connection with the 2022 ODI investigation, Honda "indicated other Honda models (Honda Odyssey, Acura TLX & Acura MDX) with the 3.5L engines equipped with the 9-speed automatic transmissions experience the same failure mode."[14]

140. Beginning on January 6, 2023, Honda released a series of technical service bulletins, addressing the restart issue in 2016-2022 Honda Pilots, 2019-2022 Honda Passports, and 2020-2023 Honda Ridgelines.[15]

141. The countermeasure Honda provided was twofold. First, Honda provided a software update to the Programmed Fuel Injection ("PGM-FI")

---

[12] https://static.nhtsa.gov/odi/inv/2022/INOA-PE22005-9303.PDF (last visited May 18, 2026).

[13] *Id.*

[14] *Id.*

[15] https://static.nhtsa.gov/odi/tsbs/2023/MC-10229676-0001.pdf.; https://static.nhtsa.gov/odi/tsbs/2023/MC-10229677-0001.pdf; https://static.nhtsa.gov/odi/tsbs/2023/MC-10229675-0001.pdf (last visited May 18, 2026).

software. Second, if the software update failed and the vehicle continued to experience a failure to restart, Honda would replace the starter assembly, starter relay, and conduct a valve adjustment if the dealer could replicate the failure.

142. For the vehicles that received a new starter, starter relay or valve adjustment, Honda also extended the warranty coverage to 10 years with unlimited mileage.[16]

143. In 2023, Honda expanded its service bulletin to include 2018-2023 Honda Odysseys but only for the software update.[17] This meant that for these Odysseys, Honda provided a software update to the PGM-FI but did not replace the starter assembly or starter relay or adjust the valves.

144. Honda explained that in the Odysseys, "[t]he engine may exhibit higher resistance at a certain TDC position than the applied starter torque due to a battery reaching the end of it's [sic] useful life."[18]

145. Besides the software update for 2018-2023 model years, Honda has never offered any other remedy for the Defect in 2018-2025 Odysseys.

146. Honda treated the Class Vehicles less favorably than the other models afflicted by the same Defect, even though Honda had identified the same cause. In its Odyssey service bulletin, Honda attributed the no-restart condition in part to insufficient starter torque—stating that the engine "may exhibit higher resistance at a certain TDC position than the applied starter torque"—the very failure mode

---

[16] In 2022, a class action was filed against Honda concerning the Defect in earlier Honda models subject to the technical service bulletins. *In re Honda Idle Stop Litigation*, 22-cv-04252-MCS-SK (C.D. Cal.). A settlement is pending final approval in that case concerning the following Honda models: 2015-2021 Pilots, 2019-2021 Passports, and 2020-2021 Ridgelines.

[17] https://static.nhtsa.gov/odi/tsbs/2023/MC-10245550-0001.pdf (last visited May 18, 2026).

[18] https://static.nhtsa.gov/odi/tsbs/2023/MC-10240336-0001.pdf (last visited May 18, 2026).

Honda had told NHTSA the Odyssey shared with the Pilot and Acura models. Yet for the Class Vehicles, Honda offered only the first-stage PGM-FI software update. It withheld the second-stage remedy it made available for the Pilot, Passport, and Ridgeline—replacement of the starter assembly and starter relays and a valve adjustment—and it did not extend Odyssey owners the 10-year, unlimited-mileage warranty coverage afforded owners of those models. To the contrary, Honda's Odyssey bulletin specified that "[t]he normal warranty applies." Honda thus knew the starter was implicated in the Defect, yet denied the Class Vehicles the more complete remedy, and the warranty protection, it provided for substantially similar vehicles experiencing the same failure.

147. As demonstrated by the numerous complaints below, the software update provided is inadequate and fails to remedy the Defect. Honda has failed to provide any long-term remedy that works for the Class Vehicles and has not otherwise recalled the Class Vehicles due to the Defect.

### 3. Consumer Complaints Concerning the Class Vehicles

148. Federal law requires Honda to monitor defects that can cause a safety issue and report them within five days to NHTSA. Therefore, Honda regularly monitors NHTSA complaints to meet reporting requirements under federal law. Honda, therefore, has knowledge of the Defect due to the numerous consumer complaints, such as those made to NHTSA, as well as by other means.

149. Honda admitted in prior litigation related to the Defect in other models that it routinely monitors these data sources to monitor product performance. *See In re Honda Idle Stop Litigation*, 22-cv-04252-MCS-SK (C.D. Cal.), Doc. No. 137-1, Page ID #:4744.

150. Consumers who purchased or leased Class Vehicles routinely complained to NHTSA about the Defect, detailing the sudden stalling of their vehicles and unsafe driving conditions.

151. The following complaints made to NHTSA reflect examples of the complaints available to Honda concerning the Class Vehicles:

NHTSA Complaints Related to 2025 Honda Odyssey:

June 22, 2025 complaint: On two differed occasions the AIS system failed and left my car disabled at an intersection. I was sitting at a traffic light and the car died when I took my foot off the break and attempted to proceed through the intersection. Additionally, I have a faulty seat/seat belt. The seat does not register an occupant or indicates the occupant is not buckled in when they actually have fastened their seat belt. (NHTSA ID 11668415)

July 21, 2025 complaint: The auto on/off while idling will randomly fail. The car stalls, all emergency lights turn on and the car won't start for a few minutes. This has occurred at stop lights and in traffic after coming to a complete stop and the car turns off when idling. The car is only 6 months old. The first occurrence happened at the 3 month mark and has become more persistent. I've had my battery checked and that was not an issue. (NHTSA ID 11675182)

August 14, 2025: On two separate occasions the vehicle's engine has turned off when stopped as part of the Auto Idle Stop feature and then did not restart when I took my foot off the brake and pushed on the gas pedal. I was stuck in traffic frantically trying to get the van to restart and eventually was able to get it. This is a new van I've had less than a year. I took it to the dealer after the first incident and described the problem. They kept it for more than a day troubleshooting and didn't find a solution. Verbally they recommended using the button that turns off the Auto Idle Stop feature that must be pressed each time the van is started to turn the off the feature. I've done that most of the time since, but I happened to forget this week and then it happened a second time where I was unexpectedly stuck in traffic with the engine not coming back on. (NHTSA ID 11680794)

August 20, 2025 complaint: The contact owns a 2025 Honda Odyssey. The contact stated that the vehicle had a new feature that, when the vehicle was at an idle stop, the engine would shut off automatically, and while the vehicle was stopped for several seconds. The engine was supposed to restart automatically when the driver released the brake pedal. The contact stated that on two occasions, the engine shut off and failed to restart. The contact was able to restart the vehicle. The vehicle

was taken to the dealer; however, no cause for the failure was found. The body control module was replaced; however, the failure persisted. The manufacturer was not notified of the failure. The failure mileage was approximately 10,000. (NHTSA ID 11681936)

August 29, 2025 complaint: Van completely shut down while in an intersection and the battery light came on. It was hard to restart. Took it to the dealership and they cannot find the problem. (NHTSA ID 11683917)

September 3, 2025 complaint: I think there is a problem with the Auto Idle Stop system that has resulted in the starter needing to be replaced. But, the dealership says nothing is wrong. The Auto Idle Stop malfunction lights up when I let off the brake. I have gotten in the habit of turning off the AIS every time I started the car. However, it still is hesitating to start, which leads me to believe the AIS has killed the starter. (NHTSA ID 11684871)

September 11, 2025 complaint: After going into Auto-idle at a traffic light. The engine did not turn back on when accelerator was pressed. Even after a restart. It took about 30 seconds. (NHTSA ID 11686686)

September 14, 2025 complaint: At a stop, the fuel save system shut the car off. When you take your foot off the brake the van fails to restart. If you try to restart using the push button the car will still not start because the transmission is still in drive. Then it takes awhile to get the transmission into park/neutral and then the van will start. The problem is intermittent 3 times in the last 2 months. No accidents just blocking traffic. My wife doesn't like that. (NHTSA ID 11687142)

September 22, 2025 complaint: Brand new vehicle and system shuts down a few times when in idle mode..(stoplight, stop sign) then I need to restart the car again. (NHTSA ID 11689050)

September 22, 2025 complaint: Vehicle shut off and put itself in park leaving a stop light. Was hard to restart. (NHTSA ID 11688971)

September 26, 2025 complaint: Vehicle stalled on a highway after an idle stop event at a stop light. Vehicle went to PARK. Required a full restart by operator to go when light changed and traffic was flowing in other lanes. Dealership examined next day and indicated battery was

good. Voltage dropping to 8V to 10V when starting. Recommended to disable idle stop each time vehicle is started. A new starter was authorized and placed on order. (NHTSA ID 11690005)

September 30, 2025 complaint: The idle engine feature is defective. Often, when stopped and the engine goes idle, it will not restart when the driver releases the brake. The van stalls, and the driver is forced to move the vehicle into park and start the engine again. This is dangerous and stressful because the driver behind you expects you to go, especially when the light turns green, but you are stalled, potentially leading to rear-end accidents. (NHTSA ID 11690610)

September 30, 2025 complaint: The contact owns a 2025 Honda Odyssey. The contact stated that the Engine Auto Start-Stop system failed to operate as needed. The contact stated upon coming to a stop, the engine shutoff; however, upon releasing the brake pedal, the contact became aware that the engine failed to restart as designed. A message of a systems failure was displayed, and an image of a pedal and the Push to Start button were displayed. The contact was able to manually restart the vehicle immediately. The contact stated that the failure had been recurring and had worsened. The contact stated that the vehicle could only be manually restarted after 10 minutes, nearly causing a crash. The dealer was contacted, and an appointment was scheduled for a diagnostic test. The vehicle was not diagnosed or repaired. The manufacturer was not notified of the failure. The failure mileage was approximately 16,000. (NHTSA ID 11690483)

October 4, 2025 complaint: Idlestop fail to restart engine multiple occasions at busy intersections. (NHTSA ID 11691357)

October 5, 2025 complaint: THE AUTO STOP/START OR AUTO IDLES FEATURE ON THE CAR keeps stalling after the car stops AT THE RED LIGHT. It can cause a rear collision. (NHTSA ID 11691455)

October 6, 2025 complaint: Three times now since buying my van about 6 months ago brand new, I come to a stop light, the engine turns off, but then it won't come back on when the light turns green. I have had to put my hazards on while I frantically push the start button multiple times. Eventually it will start up but takes 1-2 minutes. I brought it into the dealer the first time and they blamed it on a weak battery. After it happened 2 more times, they are replacing the starter

but I'm afraid that's not going to fix it. While I wait, i just have to turn off the idle start/stop button every time I start my van. (NHTSA ID 11691626)

October 15, 2025 complaint: Two concerning and dangerous malfunctions are occurring. 1.)When car is stopped at a light for more than 45 seconds the car engine shuts off, when I press on the gas the dashboard lights up and displays a battery light and advises me to restart the car. The car struggles to turn over. 2.) The car struggles to start on initial start as well. The dealership replaced the battery and it continues to happen, they advised me to disengage idol stop every time I start my vehicle to save the starter and prevent the car from stalling. This is obviously a problem with the Honda idol start that needs to be addressed. There are multiple threads in online forums about this issue with Honda. (NHTSA ID 11693599)

October 16, 2025 complaint: The issue involves the auto start/stop system on my 2025 Honda Odyssey Touring. When the feature is turned on, the vehicle intermittently fails to restart after coming to a complete stop. The problem does not occur when the start/stop system is disabled. During normal driving, the engine shuts off as expected at a stoplight, but when I release the brake, the vehicle hesitates or fails to crank, leaving it stalled in traffic. The Honda dealership confirmed the issue and stated that the starter motor needs to be replaced. The van has approximately 9,300 miles. No warning lights or messages appear before the failure. The problem occurs only when the start/stop system is active. This presents a safety concern, as the vehicle can lose power and fail to move when traffic lights change or when merging, increasing the risk of a rear-end collision or blocking intersections. The vehicle is currently being inspected and repaired by the Honda dealer and is available for inspection upon request. (NHTSA ID 11693902)

October 16, 2025 complaint: When I stop, they start stop, turns the engine off, but when I release the brake, the engine struggles to turn over and sometimes doesn’t and I have to put it in park to restart it. I have taken it to the dealership already once, but they said they weren’t able to reproduce it. I will be taking it back to the dealer to try again. (NHTSA ID 11693760)

October 17, 2025 complaint: Description of the Problem I am filing this complaint regarding a serious safety concern and poor quality repair on

my 2025 Honda Odyssey, which I purchased new less than one year ago. 1. Engine Auto Idle Stop / Starter Failure Issue The vehicle suddenly shut down when the "Auto Idle Stop" feature was activated. This incident occurred multiple times, and I was unable to restart the engine until several attempts later. This creates a dangerous situation, especially in traffic or intersections. When I contacted the dealer, they confirmed that the issue is caused by a starter motor failure, and the replacement part will not be available until early November — meaning I must drive for over a month with this feature turned off. Many other owners have reported similar problems online, which strongly suggests a potential defect that should qualify for a safety recall. 2. Water Leak and Poor Quality Repair My vehicle also experienced a water leak from the roof area. The dealer attempted to fix it by simply applying sealing material on the roof molding (see attached photos). The repair looks extremely unprofessional, and I requested them to properly replace or reinstall the roof molding, but they refused. This type of repair is unacceptable for a new vehicle of this class and price. 3. Honda's Unsatisfactory Response I contacted Honda Customer Service (1-800-999-1009) and spoke directly with a representative. However, I was told that: They cannot extend the warranty. They cannot offer any compensation or goodwill service. They cannot provide me with a record or copy of our phone conversation (even though they recorded it). They will only repair the starter once parts arrive. I explained that I have already spent time, fuel, and lost work hours visiting the dealer multiple times, yet they refused any support. Safety Concern and Requested Action The engine shut-off issue clearly affects vehicle safety and could cause accidents in traffic. I request that NHTSA inv (NHTSA ID 11694125)

October 18, 2025 complaint: 2025 Honda Odyssey EX-L My concern and issue is that the 2025 Honda. On 18 October 2025 the Honda Odyssey shuts down by its self after stopping at a red light. I believe it has something to do with the feature of auto start/stop system. This has happened multiple times. The vehicle sporadically fails to restart after coming to a complete stop. The engine shuts off as expected at a stoplight, but when I release the brake, the vehicle hesitates to crank over or start which has left me stalled in traffic numerous times. No warning lights or messages ever appear prior to the issue. This issued has left me in the middle of the road numerous time with traffic behind me. This takes a couple of minutes to restart the engine because the vehicle lights are turned on and it appears that the Odyssey doesn't have

enough power to turn on the vehicle. But after multiple tries the Odyssey finally turns on. This is extremely dangerous because it can cause another car rear ending us and injuring my family. (NHTSA ID 11694331)

October 18, 2025 complaint: Since July 4, 2025, this can has intermittently shut off and stalled on me, my wife and my family and has refused to start. It has now been back to the service department of Trust Honda of Palmdale 4 different times for the same problem and the battery has been replaced on this van back in July. Most recently, it stalled just two days ago in rush hour morning traffic on the 405 Freeway going South in the San Fernando Valley. The display on the dash read "dead battery ". It took over 20 minutes for the van to start and my wife was able to move it off of the freeway to a safe location. (NHTSA ID 11694225)

October 19, 2025 complaint: Honda Odyssey EX-L sport 2025 has been facing the issue of idle stop not working causing engine to stall, engine failing to restart, shutting off completely during mid traffic especially during adaptive cruise control operation. This is causing an unsafe driving situation. While this issue was reported to Scott Clark Honda multiple times and they have claimed to fix this issue in Aug 2025, the issue continues to exist and root cause hasn't been fixed. This seems to be related towards the on-going investigation by NHTSA. Please help to resolve at the earliest since no further support is being received from Honda. (NHTSA ID 11694397)

October 22, 2025 complaint: The idle stop system is malfunctioning. I had it inspected once previously and now trying to get it inspected again for the same occurring issue. The dealership continues to tell me to turn off the idle stop feature on the vehicle. My safety was put at risk because of the vehicle stalling and not kicking back on while being stopped at a redlight on a busy 4 lane highway multiple times now. The first time, I was by myself. The second time, my 8-month-old was in the vehicle with me. This causes a lot of panic as there are impatient drivers around me since I am unable to move my vehicle. I fear that this could happen on a freeway if there was construction, an accident or even while trying to turn in an intersection and getting hit because I can't move my vehicle and often have my two small children with me. The first time the idle stop stalled, it occurred twice in a week. The first time was rather quick, and the engine kicked over quickly so I did not

think anything more of it. The second time which happened a few days later (9/17/25), took about 5 minutes to get the engine going again and moving on the road (4 lane highway). I took it back to my local Honda dealership where they performed a diagnostic test and discovered the battery had dipped down to 7.22V when trying to restart, the battery failed the battery test and ended up being replaced with a new battery. The idle stop issue has now happened for a third time (10/21/25), with the same issues occurring and I am waiting to be able to get back into Honda. The vehicle has only been looked at by my local Honda dealership. There were no warning lamps, messages, or other notifications prior to the failure. I received a warning on the dashboard after the events occurred on how to start the vehicle. This is very disappointing as a new Honda owner. My husband and I decided on Honda over other car companies due to their reliability and this has now become a constant worry. (NHTSA ID 11694929)

October 24, 2025 complaint: I am having issues with my auto start/stop, also, occasionally has issues starting from a cold start! I was at a red traffic light, and once the light turned green I went to go and my car died. I had to put it in park and try and restart it and it took me three times for it to restart. Everybody was honking at me. This is a safety issue. (NHTSA ID 11695501)

October 27, 2025 complaint: My car has been dying when I stop at stoplights. We took it into the dealership and they said the battery was sending error messages. So we replaced the battery. It is doing it again. Sometimes it starts but it is getting progressively harder to restart it. It is dangerous to be stalled at an intersection. The car is not even a year old. (NHTSA ID 11695782)

October 30, 2025 complaint: The car stalled then stopped when I was at a traffic light, I had to press the start engine button multiple times to restart the car. This issue has occurred 3 times within the last two months. (NHTSA ID 11696524)

<u>NHTSA Complaints Related to 2024 Honda Odyssey:</u>

September 30, 2025 complaint: The idle start/stop feature is not starting back up after stopping. This occurs after driving for for some time. I have had this happen to me in traffic where I am not able to quickly start my car back up. Sometimes it requires me to turn my car completely off on the highway. This also happens at traffic lights and I

am not able to go after the light turns green. I took my car in to have it looked at and they said they saw the problem in the logs and it was that my battery was low. They replaced my battery however I am still having this problem with the brand new battery. An error shows on the dash but I can't remember it word for word. (NHTSA ID 11690509)

September 29, 2025: Reference: EA25004 Car fails to restart while warm, and idle stopped. This has happened twice in the last three months. The car will idle stop at an intersection - temperature outside is around 90-93. Air conditioner and other electronics are on in the car, but not on full power. The car will fail to come back on when the foot is taken off the brake. The battery light turns on. Must re-start the car using the push button after several tries. This invariably happens at a very busy intersection. Cars behind you see you take the foot off the brake but the car doesn't move - this is a very dangerous situation. 17,000 miles on odometer Took the car to a dealer a few days later. The dealer says everything tests fine. I ask for a new battery, and they claim they replace it after forcing a test failure. Issue happens again a few weeks later. Also noted: the car has a hard time re-starting when it's warm. It'll turn once, cause the fuses to click, pause, and then turn over and start. So it may not just be the idle-stopper that's the problem. Took to another Honda dealer. They refused to do anything - claimed all tests were fine. They could not replicate the problem. They noted the battery was somewhat discharged. They charged the battery, and said everything still tests fine. No further repair made. On the way home (25 minute drive - mostly highway), near the house, coming back from idle stop - the car laboriously turned back (slow/delayed turnover) on. Still not right, Not a full failure, but not how it should be behaving either. I try to defeat the engine idle stop - but this is an added human factor and I often forget to do so. (NHTSA ID 11690273)

September 29, 2025 complaint: On multiple occasions, the idle-stop function engaged at a red light and then either the entire car shut down or the computer froze for a minute or two then restarted. For each incident, we had cars behind us that either nearly hit us when we did not go forward when the light turned green or nearly hit us by aggressively going around us while we restarted the engine. (NHTSA ID 11690366)

September 23, 2025: The 2024 Honda Odyssey has an idle-stop feature which is hesitating too much and risking stalling at intersections.

Honda tried to blame it on the battery but even Honda has tested the battery as fine. The 2025 model has a software fix to disable the idle-stop when the AC is running hard and this would fix the 2024 but they claim to have to fix for the car. This is dangerous to be stalling at major intersections and many Honda and Acura vehicles have had and many still have this problem. Remembering to disable the control every time one starts the car is NOT a fix. Please help get this problem for 2024 Honda Odyssey's fixed before someone gets injured or worse trying to restart a car when it keeps stalling (NHTSA ID 11689151)

July 29, 2025 complaint: With the auto cutoff engaged when stopped at a red light, the vehicle shut off on its own. I had to put the vehicle in park and try the push button start a few times before the vehicle turned back on. I had to put my flashers on because the light turned green before I could get it restarted. Someone had to swerve to avoid me. I was almost rear ended because the intersection I was stopped at was near an interstate offramp and the driver did not recognize I was stopped. I took it to a Honda Dealership and they said they could not replicate the problem but that there was a bulletin identifying the issue and that the bulletin had been withdrawn. I was told that it likely meant a recall would be coming in the future. The following message came on when the vehicle turned off: Shift to park. The red battery dash light was on. (NHTSA ID 11677348)

July 16, 2025 complaint: When the idle stop feature is engaged (it is by default), my van will die at stoplights, stop signs, or any extended stop. The van has been to the dealership multiple times, battery has been replaced. Service advisor informed me that this is a frequent and known issue with Odysseys. I'm just hoping for some help and/or guidance to remedy this potentially dangerous situation. (NHTSA ID 11674049)

July 9, 2025 complaint: I was stopped at a red light for a long time. The idle on/off feature engaged, turning the engine off as expected. However, the engine would not turn back on; the vehicle completely stalled. It took several attempts to get the vehicle to turn back on. I was on a very busy 5-lane road with my child in the car. This was very dangerous as we were in a middle lane. We would not be able to safely exit the vehicle. I was extremely worried we would be rear-ended. (NHTSA ID 11672380)

March 31, 2025 complaint: On occasion, engine fails to restart on its own from a complete stop at a traffic light or road intersection when the Auto Idle Stop function is engaged. Engine and electronics in vehicle completely shut off, requiring the driver to put the vehicle in park and turn the car on again by pressing the Start button. (NHTSA ID 11651666)

August 12, 2024 complaint: On occasion, engine fails to restart on its own from a complete stop at a traffic light or road intersection when the Auto Idle Stop function is engaged. Engine and electronics in vehicle completely shut off, requiring the driver to put the vehicle in park and turn the car on again by pressing the Start button. (NHTSA ID 11651666)

<u>NHTSA Complaints Related to 2023 Honda Odyssey:</u>

December 6, 2025 complaint: Auto stop/start struggles to start at lights or stopped traffic, rough idles and has already killed 1 battery, replaced under warranty and I'm having to charge my new one already since my car struggles to cold start sometimes! Incredibly stressful having 5 kids and 1car I spent a fortune on so it would last forever and it's a lemon I'm holding my breath doesn't strand us any time I have to break. (NHTSA ID 11703487)

October 15, 2025 complaint: Our auto idle randomly will shut the entire van off. Leaving us stranded without being able to go for 15-30 seconds until we can get It restarted. There has been no warnings or codes thrown  Early on it has been unable to reproduce for them when at the dealership It has been to dealership numerous times because it's a scary safety issue with cars usually behind us honking, yelling, and holding up a finger. They did try update some software the most recent time which was unsuccessful. Now they want to put a new starter and relay and engine valve adjustment. Leaving me with the bill for something that happened in warranty since they can't replicate it within a few minutes (NHTSA ID 11693655)

September 14, 2025 complaint: The vehicle engine failed to restart after being idle for a few minutes in heavy traffic on Southern State Parkway. The vehicle's Auto idle stop function was being utilized during this time. (NHTSA ID 11687216)

June 11, 2025 complaint: Engine shut off in traffic after Auto Idle-Stop failed to restart. While stopped at a red light with Auto Idle-Stop active, the engine shut down normally. When I released the brake to proceed, all electrical power dropped—cluster went dark, accessories reset, and the engine did not crank. Vehicle coasted dead across the intersection and required a full key-cycle to restart, exposing my family and surrounding traffic to a collision risk. Component that malfunctioned Dealer diagnostic later the same day showed the 12-V battery-current sensor reporting an internal resistance spike from 3 mΩ (normal) to 25 mΩ (fault), which commands the powertrain ECU to inhibit Idle-Stop restart ("Idle-Stop Inhibit – Large battery internal R" flag). An AGM load test confirmed the battery itself is healthy (958 CCA). Reproducibility / confirmation The stall occurred twice on public roads. At the dealer, the fault could be reproduced in the data list: resistance value jumps whenever the negative-terminal sensor is jostled. Inspection status Vehicle was inspected by the franchised Honda dealer; screenshots of the diagnostic session and the Midtronics load-test slip are available on request. Manufacturer has NOT yet repaired the sensor; dealer demanded an unnecessary battery purchase first. Warning indicators No MIL or warning lamps illuminated before the stall. After the first stall, a brief "Auto Idle-Stop System Problem" message flashed but cleared on restart. Risk Loss of propulsion and power steering in the middle of an active intersection without warning. If this sensor defect is common, any similar 2022-24 Honda minivan/SUV with Auto Idle-Stop could stall in traffic. Component is still installed and available for inspection. Filed report with FTC (report #188697846). (NHTSA ID 11666380)

November 26, 2023 complaint: Twice while at a stop light, when the car was in Auto Idle Stop, it suddenly shut down completely. There was no power on the dashboard. I couldn't even turn on the hazard lights. The first time, this lasted several minutes, the second time, a few seconds. After this time, the electronics spontaneously came back up and I was able to restart the engine. (NHTSA ID 11556827)

February 2, 2023 complaint: Our AIS has not worked in most of the 3 weeks since we purchased it. We went on (joined) various Odyssey forums and apparently this is a known defect that Honda Corporation is denying (and can't fix). Som think it is a wrong battery in the vehicle issue or defective vehicle charger issue. Others have found a temporary workaround by opening the hood to reset it. Honda is ripping off

customers for an AIS system that is defective. A class action is in order. (NHTSA ID 11505263)

NHTSA Complaints Related to 2022 Honda Odyssey:

October 26, 2022 complaint: Intermittently, my 2022 Honda Odyssey with less than 16,000 miles will “stall” after the idle stop/start system is enacted. The first time it happened, I was waiting to turn left out of a parking lot onto a busy road. The idle stop kicked in, and when I went to go, my car lurched about 5 feet and the engine cut out completely requiring me to turn off the car with the push button start, restart the car, and put the car into drive. Luckily, people going both directions on the crossroad were able to go around me. This has happened probably 10 times before I was able to get it into the car dealership for service. It has no rhyme or reason for when it happens. The car dealership replaced the battery and said that it should fix the issue. When I went to leave the dealership after the “fix” the car again “stalled” as I was leaving the driveway of the dealership. I turned right back around, and returned the car to be serviced. Now, when talking to the service department at the dealership, I am being told that because “there is no code, and they cannot reproduce the issue, there is no fix.” I am not willing to drive an unsafe car, and additionally, the idle stop/start was one of the reasons this van gets good gas milage. So, I should not have to turn off that feature every time I get in the vehicle. My vehicle is currently sitting at the dealership because I have no other recourse to get it fixed. Husband has traded many phone calls with dealership and service department. (NHTSA ID 11490970)

June 9, 2023 complaint: When I was driving my car and stopped at red light my car loss all electrical power and engine died. Would not restart had to have the car jumped off. This has happen several times and I just had it in a Honda dealership this morning and about 3 hours later my car loss all electrical power and died and would not restart. Honda dealership did not know what is causing this issue. (NHTSA ID 11526301)

June 19, 2023 complaint: When the auto-off or whatever it is called engages when you put your foot on the brake at a red light or stop sign and the engine turns off, it is supposed to restart the engine when you take your foot off the brake. That feature is causing issues on average of one time per day where the engine does not turn back on.

The van loses all power, red battery light comes on, and the dash gives an alert to put it part and restart the van. It eventually restarts but with wife and 3 kids in van on the highway, this is not safe as other vehicles almost hit us because they do not know the van died. (NHTSA ID 11527666)

August 14, 2023 complaint: While in stop and go traffic on I-75/85 through downtown Atlanta today, my 2022 Odyssey locked up. The dash indicated a battery problem and advised braking and finding a shoulder, however my engine had cut off and the vehicle would not respond when I attempted to follow the directions given. With my hazard lights on I attempted to turn off/on my engine and place the vehicle in Park without success. It would not restart until I turned off the AIS and put my van in PARK in the middle of the Interstate to finally turn back on. I am a skilled driver with ample engine knowledge and even then was barely able to avoid collision because the vehicle was completely incapacitated. Honda KNOWS this is a problem (I learned after my incident today) and need to find a remedy before someone gets killed. (NHTSA ID 11538434)

November 11, 2024 complaint: Engine totally shut down at a stop sign. No indicator lights were on, the van was completely "dead". The van restarted after continuously mashing engine start button for 4 minutes. During the other occurrence, the engine would not restart after a short store stop but some of the lights were on on the dashboard. The van restarted after about a minute. These occurrences happened within 2 weeks of each other and the mileage was between 44,000-46,000mi. (NHTSA ID 11624588)

September 16, 2025: Engine Auto Start/Stop vehicle failed to restart upon taking foot off of brake pedal. Took my car to Honda dealership on 8/29, dealership said it was a bad battery. Had the battery replaced and 2 weeks later on 9/12 vehicle failed to restart upon taking foot off of brake pedal. (NHTSA ID 11687503)

November 29, 2025: The idle start stop feature constantly doesn’t work on our 2022 Honda Odyssey Touring. When stopped at a light or stop sign the engine will turn off COMPLETELY, causing me to have to put the car in park and restart the car. Also, sometimes the van will start, sometimes it won't. I replaced the battery and now it starts but it is still turning itself off in traffic.There have been several

incidents where this is during rush hour traffic causing traffic jams and we have been very close to being rear ended. Sometimes I have to wait a few minutes before it will actually turn over. This is EXTREMELY unsafe and should be addressed by Honda with a FREE fix for all owners. I've taken it to the dealership and, after scanning my VIN, told that my specific Odyssey doesn't have any open recalls or service bulletins... Seems every other Odyssey does, just not mine? For the EXACT SAME PROBLEM??? (NHTSA ID 11702036)

<u>NHTSA Complaints Related to 2021 Honda Odyssey:</u>

May 26, 2023 complaint: I was driving on I-270 highway in active HOV lane and had to stop because of traffic. The car stopped the engine as it usually does by "Auto Idle Stop" system but failed to start it back when I needed to continue driving. I noticed that the battery light blinked on the dashboard when it tried to re-start the engine. As a result I was in active HOV lane with quickly approaching traffic from behind. We all (me, my wife and 2 kids) were scared. I called 911 immediately for help. This all could end up with a crash and injuries. While calling 911 I was trying to restart the car by pressing the button to turn the car off and on. About 3 attempts failed when a few minutes later the engine started and we continued the drive. This was the worst nightmare to stuck on a highway. Luckily nothing happened but it definitely could. This is a major concern for me. (NHTSA ID 11523976)

February 15, 2024 complaint: The 2021 Honda Odyssey with the VIN provided had 1) Auto Stop Idle Failure in June 2023 where the car would turn off completely at a stop (intersection, stop sign, etc.) and the car would have to me restarted. Sometimes restarting more than once. Honda replaced the car battery and conducted a software update. 2) About 7 months later in February 2024 the dashboard displayed two warnings A) Auto Engine Idle Stop System Problem and B) Charging System Problem. Honda had performed a second software update just prior to the second occurrence on 1/25/24. As of 2/15/24 Honda still has the car and is going to replace a battery sensor. (NHTSA ID 11572191)

July 25, 2024 complaint: 1. Incident: I was driving and stopped at a red light, took my foot off of the brake and the car completely died,

leaving me stranded at the intersection. The car started back up after 4 minutes. Note: This incident happened after 2 months of weird electrical things happening to the car, such as the radio turning on after the car had been turned off, car not starting, sliding doors losing power when they are halfway closed, coming to a stop and putting the car in park then the car completely loses all power/interior lights, and more... 2. My safety was put at risk by having a non-functioning car in the middle of the road. Someone could have rear-ended me. Also, it was over 100 degrees outside which added to the panic I was feeling. 3. The car has been inspected by Spreen Honda multiple times and by an independent Honda mechanic. Spreen Honda has not been able to reproduce the problem. They won't do anything besides hook it up to the computer, and since there are no codes present "there is nothing they can do". The independent mechanic said they'd never seen anything like this. 4. The manufacturer has not inspected the vehicle. When I reported this to Honda America they encouraged me to continue working with the dealer. This is completely unacceptable. 5. Right before the power went out the dash lit up with every warning lamp for maybe 5 seconds. (NHTSA ID 11604609)

September 18, 2024 complaint: My Honda Odyssey is experiencing an issue where it intermittently fails to restart automatically after coming to a stop and engaging the idle stop feature. Despite following Honda's recommendations, which included applying Service Bulletin 23-008 (updating the PGM-FI Idle Stop Software) and replacing the battery, the problem persists. I've also had the vehicle inspected at two different dealerships, with no resolution. I discovered Service Bulletin 23-009 on your website, which directly addresses this exact issue and extends the warranty for the Ridgeline, Pilot, and Passport models. Given that my Odyssey shares the same engine, it's concerning that it's not included in this bulletin. I believe it's unfair that I'm being forced to pay dealership fees to diagnose and fix a safety issue that Honda has already acknowledged and addressed for other vehicles with the same engine. I urge you to reconsider the exclusion of the Odyssey from Service Bulletin 23-009 and provide a solution that doesn't burden owners with unnecessary costs. (NHTSA ID 11615252)

October 25, 2024 complaint: After having the Honda Dealership perform an oil change and software update 23-008 (updating the Auto Idle Stop Software) last week, my engine stalled while at a busy

intersection (PA turnpike/70 junction) during a road trip. At the long stop light the auto idle function engaged and the engine turned off. When the stop light turned green and I lifted my foot off the brake and pressed the gas the engine shut down and automatically went into Park. I had to press the start/stop button to fully turn off then turn back on the car to get the engine to restart. This is with a giant semitruck honking right behind me. The auto idle feature does not work. It sounds terrible every time the engine restarts after it has been engaged. There really should be an option to allow users to permanently disable it, and not have to remember to turn it off every time they start the car--terrible user experience. (NHTSA ID 11621957)

July 14, 2025 complaint: The vehicle's Auto Idle Stop (AIS) malfunctioned. The vehicle stalled and required a complete "shut down" to restart. The vehicle was first in line at a traffic light. The AIS system engaged. When I took my foot off the break to "go" when the light turned green, the car stalled. An error message popped up, indicating that I needed to shift the car into "park". I did so and the car did not start. I attempted to turn the car off several times, while in park and my foot depressing the break pedal. The car would not turn off. After three minutes of attempting to turn off the car and waiting, I was finally able to successfully start the car. I was traveling with my four young children, three of them in child car seats. I was nearly rear ended by one vehicle, despite having my hazard flashers on, because my car stalled at a traffic light when it was green. Two cars drove around me who were also stopped behind me at the traffic light. Another car came up to the traffic light and my vehicle and nearly rear ended me with my four young children in the car. This is the third time that this exact issue has occurred in my car. I brought it to my local Honda dealership on the same day that the issue first occurred. They inspected it but were unable to replicate it. They said they would make note of it but had not heard of such an issue. I had no idea this could be reported on this website. I was never told about this otherwise I would have reported this on the day that each of the two previous incidents occurred. This issue originally occurred the first time approximately 10/2022 and again for the second time approximately 4/2023. It just occurred for the third time today, 7/14/0225. (NHTSA ID 1673383)

August 20, 2025 complaint: While stopped at a stop light at an intersection in our 2021 Hond Odyssey, the idle auto off feature kicked in, and then as we let off the brake and went to hit the gas to move forward the car shut off completely. The car had to be restarted by applying the brake and pressing the start/stop ignition button. This is not the first time this has happened with this vehicle. This also happened a series of times in 2023 and Honda performed a series of software updates, replaced the battery, and replaced a sensor on the battery. However, now two years later the idle auto off issue occured again. (NHTSA ID 11681925)

<u>NHTSA Complaints Related to 2020 Honda Odyssey:</u>

June 8, 2022 complaint: The Honda Idle Stop feature is the issue. My wife drives this car and on at least 20 occasions, the car shut off when she was stopped at a stop light when Idle Stop was enabled. The car shuts off when she tried to accelerate once the traffic light turns green. The car then has to be restarted. This is a safety issue because cars behind us could easily rear-end our vehicle since the stop light has turned green and cars are moving. Honda claims that they cannot replicate the issue but it is clearly a large issue with the Idle Stop feature. It seems as if the vehicle does not have enough power to get the engine back to normal mode and therefore it shuts off. Most of the time that air conditioning is running so perhaps the extra load from that contributes. Regardless, this is something that needs to be fixed quickly. (NHTSA ID 11468251)

June 11, 2022 complaint: The auto idle stop automatically turns on when the van engine is started. I was stopped at a stop sign while trying to cross a dual lane highway (55 mph speed limit). Was not aware that the auto idle stop had shut off the engine. When I had an opportunity to cross the highway I let of the brake and pressed the accelerator and the engine was attempting to start and felt like we were going to be struck by cross traffic before the engine started and we were able to cross. I am aware that this feature can be turned off. But it has to be turned off each time the vehicle is started. Needs to be a way to permanently disable this feature. (NHTSA ID 11468886)

August 19, 2022 complaint: The “auto engine idle stop” system in my minivan is malfunctioning. This is a safety issue because the engine does not always restart when I take my foot off the brake. I am

eventually going to be hit from behind by a driver behind me that assumes my minivan will accelerate from a stop when it is supposed to. Every time the malfunction occurs, the dashboard displays a message “Collision Mitigation System Problem”. However, I have been told by the dealership mechanics that this message is erroneous and that it is displaying because there isn’t a preset error message associated with the auto-engine idle stop malfunction. My minivan was 2 years old when I brought it to the dealership for repair the first time. That was in October-2021 and the dealership is Honda on Grand in Elmhurst, Illinois. I brought the vehicle to them on seven different occasions between October-2021 and now. Even though they were able to reproduce the problem, they say they don’t know how to fix it. So, they made minor repairs each time to different electrical and drive train systems in hopes that the malfunction will cease. After 10 months and 7 attempted repairs, my vehicle is still malfunctioning. The dealership instructed me to contact the corporate level Honda Customer Service Department, which I did on July 8, 2022. I was issued a case number and a customer service representative, Walter, to assist in resolving this problem. After many follow-up phone calls to them, they will not return my call to discuss my vehicle. I recently contacted the Elmhurst, IL dealership and spoke with the service manager, David Abraham, who said he would follow up with Walter. However, I still have not been contacted. I am very concerned for my safety and the safety of my two teenage children who are now driving my vehicle. This will undoubtedly lead to a collision if not repaired. (NHTSA ID 11480126)

August 24, 2022 complaint: The signal turned Red, as I was braking, the car engine stuttered and car shut off. Startled, push the park button, and pressed the engine start button but no response, pressed again and it started. This happened 6 months before but didn't report it as I thought it was a once off event. 6 months ago, the car was at a red light, the IDLE was ON and when I accelerated cause the light changed GREEN, the car shut off. Get the feeling its due to the IDLE but wanted to report this matter (NHTSA ID 11480980)

September 1, 2022 complaint: Start stop system malfunctions during auto stop/restart. Van will stall or fully turn off instead of restart when brake released and accelerator pressed. Problem is intermittent and increasing in frequency. This results in unexpected stalls/stops in traffic, putting driver and passengers (as well as other vehicles) at

risk. Message displayed is "Collision mitigation system problem" or the van stops itself and tells the driver to "shift to park". Van may or may not immediately respond to starting push button. Dealership cannot identify problem, but numerous other customers report similar complaints. (NHTSA ID 11482480)

September 21, 2022 complaint: When the automatic start/stop feature turns the car off when the brake is fully depressed the Car will sometimes not restart as designed. Further, it is sometimes accompanied by the forward collision warning light coming on and shutting the car off. (NHTSA ID 11485605)

October 12, 2022 complaint: Several times the van has failed to restart from an idle stop/start at a red light and in the middle of stopped traffic. Several attempts to restart the van fail (van doesn't even try to start) normally after a few minutes with the van back in park it will start again. Very dangerous to be frequently left stranded in the middle of the road. Frequently when the van does successfully take off from a idle stop, you can tell it struggles and just barely is able to resume. (NHTSA ID 11488897)

December 27, 2022 complaint: Not sure about which component failed and put my family and I in significant danger. We had just come to a stop at a traffic light at the end of a highway exit ramp when the car shut off without warning. Completely off. Hazard lights didn't even work. Nothing worked. Took a minute or two until the vehicle restarted as if nothing had happened. Cars were coming up fast behind us and had to move quickly to get around us. This was late at night so we were hard to spot without any working lights. Thank the Lord no one was injured. I suspect it has something to do with the idle-stop feature. This incident happened within the last 2 hours so it hasn't been reproduced or confirmed by a service center. Please require Honda into issue a recall for whatever caused this defect. (NHTSA ID 11498927)

March 27, 2023 complaint: Auto engine idle shut off issue and yes it is available for inspection. Upon exiting stop/start events(auto shut off at stop signs/lights/parking lots), engine does not restart. instead, it shifts into park, lights up all instruments on display panel, and requires a manual restart. vehicle is dead until restarted, posing a hazard to occupants/oncoming traffic. This has happened to me 3

times over the last two weeks. Didn't document date of 1st incident. 2nd incident was 3/22/23. 3rd incident was 3/25/2023. Immediately taken to dealer service center for repair. Dealer told us they couldn't replicate the issue, that there are no codes, and no service advisories. We were told there was nothing they could do and to just turn off the feature when driving. The only one to inspect the vehicle was the dealer service center. No warning at all. Car just doesn't start and driver is left sitting and helpless in active traffic until the car can be restarted. (NHTSA ID 11513978)

March 28, 2023 complaint: Stopped at red light. System to stop the engine to save fuel engaged. When light turned green the car would not restart, stranding the vehicle at the intersection. (NHTSA ID 11514203)

April 9, 2023 complaint: Auto shutoff feature regularly fails when attempting to restart the engine. It may delay the restart or put the car in park and not allow it to restart for over 30 seconds. I was stuck in stop and go rush hour traffic. The engine would not restart, leaving the car stranded in the center lane for over a minute while attempting to get the car to start and in drive. (NHTSA ID 11516195)

April 13, 2023 complaint: SOMETIMES (NO DISCERNIBLE PATTERN) AFTER STOPPING AT A RED LIGHT OR A STOP SIGN, THE CAR SHUTS OFF AND WILL NOT RESTART FOR SEVERAL MINUTES. THE HONDA SERVICE CENTER AT THE DEALER WHERE WE LEASED THE CAR SAID THEY HAVE HEARD OF SIMILAR PROBLEMS WITH NEWER MODEL HONDA ODYSSEYS AND HONDA PILOTS BUT THERE HAS BEEN NO FORMAL RECALL. THIS IS A CLEAR SAFETY HAZARD. THE BATTERY HAS BEEN TESTED AND IT IS FINE.THE MECHANICS CANNOT FIND ANYTHING WRONG WITH THE CAR. (NHTSA ID 11516959)

May 8, 2023 complaint: The idle stop caused my car to turn off on the highway while I was stopped in traffic. Unfortunately, I was the last car in the line on the highway and the truck coming behind me was coming at a rapid rate of speed. Thankfully, the same issue had happened to my son the week before and he was able to tell me that putting the car in park and turning it off and back on would fix the issue. There is a service bulletin 21-013 related to this issue but not a

recall. This is a safety issue that needs to be addressed. (NHTSA ID 11521067)

June 21, 2023 complaint: Vehicle's "Engine Idle Stop" feature malfunctions unless it is turned off manually. This is an energy conservation feature which turns off the engine when stopped. However, when lifting the brake, the engine does not turn back on at times, sometimes fully stalling the vehicle. At times, numerous lights have come onto the dashboard after this happens. At other times, the vehicle has completely turned off, leaving the safety of the driver and passengers at risk, particularly at stop lights, stop signs, and when in stop and go traffic. I'm continually worried someone is going to rear-end us when they see our brake light go off at an intersection. Vehicle has been brought to Honda dealership who stated they did not know the cause and replaced the battery. Problem was not solved and continues to happen. (NHTSA ID 11528229)

July 24, 2023 complaint: When at a stop light at a busy intersection the idle stop feature would not restart the engine. The vehicle became stalled in the middle of traffic and I could not restart the vehicle for approximately 8 minutes. A transmission failure warning came on the screen and I was unable to operate anything in the vehicle. This could have caused me to be hit by oncoming traffic or rear ended. The vehicle has been inspected by the dealer and they were unable to reproduce the problem. This has happened a total of 3 times within the last 3 months. (NHTSA ID 11534080)

August 17, 2023 complaint: On at least 5 occasions the car has not restarted after going into auto idle while stopped. Normally after pressing the brake pedal all the way down while stopped, the engine will shut off and then restart after releasing pressure from the brake pedal. When it doesn't restart, all the lights on the dashboard come on and you can't do anything. It won't restart if your press the start button and you can't shift it to neutral to push it out of the road. Eventually it will restart by pressing the start button. I have not had this problem if I turn off the auto idle, however you have to manually turn off the auto idle every time you restart the car. (NHTSA ID 11539121)

August 24, 2023 complaint: When the car engages the Idle Stop feature and shuts the engine off, the engine does not restart immediately once the brake is released. This has happened multiple

times but the last time a message appeared that said to change gears and restart the car. In the meantime the vehicle was in traffic and stopped for over a minute before it could be restarted. This put us in danger of a rear end collision as other cars were wanting to go. (NHTSA ID 11540555)

September 12, 2023 complaint: I have had 2 major issues, the idle stop feature has multiple times caused my car to stall. It has even happened on the highway during traffic where the car went into idle-stop mode and would not restart the engine. Last week it happened again on a major road and the only way to restart the car is shift to park in the middle of a busy 4 lane road, turn off the car completely and then attempt a restart. The other issue was with the rear sliding door, my 3 year old son closed the automatic sliding door by pressing the button and his hand was crushed/ stuck until I was able to reopen it. I have called Honda who told me I could have it looked at but it would cost me for the diagnostic and repair if needed due to the fact that it was one month past their 3 year warranty period. (NHTSA ID 11543980)

October 5, 2023 complaint: Occasionaly car will not start of up after Idle Stop engages. Collision warning flashes then leaves us stranded in intersection. Very Danagerous. (NHTSA ID 11548417)

November 19, 2023 complaint: My vehicle has the engine idle option and shuts the engine off when idle in traffic or at traffic lights, etc. There have been incidents where the engine doesn't just shut off but it powers off the entire car and doesn't want to turn back on. My battery is fine because i just had service done on it and they tested the battery and its 100% fine. This issue is not a battery issue for my car. I literally had PTSD when the car shut off though because it happened at a location on the roadway where i had previously been rear ended in another vehicle and after my car shut off this time - my anxiety was very high that day and i was literally shaking. I was scared not knowing what was wrong with my car. (NHTSA ID 11554532)

November 13, 2023 complaint: While stopped in preparation to make a left turn across traffic on a 4 lane road, our 2020 Honda Odyssey engine stalled- the engine idle stop function did not restart the engine as designed. We had to restart our car, but the car did not immediately restart, it took us 2-3 attempts. There was no prior warning or

indication there was a problem. We could have easily been hit by another car, injuring my wife and children. Our system is available for inspection, we have not had it inspected yet. (NHTSA ID 11554955)

November 16, 2023 complaint: Idle stop caused engine to stall 3 separate times leaving me stranded in busy intersections making it difficult to restart vehicle and move safely out of the way. Initial start up checks come on, asked to put car in park, step on brake to restart car, car won't restart. Once happened at night and shut off all my lights for 30 seconds making me not visible for cars coming up to me. (NHTSA ID 11555533)

December 23, 2023 complaint: The car stalled when stopped at a red traffic light. This happened on 2 occasions, 11-3-23 and 12-9-23. The second time other cars behind us had to go around us while we tried to restart the car which put them at risk of being hit by cars in the other lanes. There was no warning. I took the car in for regular maintenance a few days ago during which the dealership did a multi point inspection but did not discuss this issue. Yesterday I heard about the fuel pump recall and think this might be the same issue. I called the dealership today but they said our car is not under the recall. Our car is available for inspection upon request. (NHTSA ID 11561437)

January 6, 2024 complaint: The auto idle feature cuts out the engine in stop and go traffic and will not restart. This has happened on numerous occasions, creating unsafe conditions for traffic. (NHTSA ID 11563909)

<u>NHTSA Complaints Related to 2019 Honda Odyssey:</u>

March 5, 2022 complaint re: I was driving my 2019 Honda Odyssey on the highway and it stopped suddenly in the middle of the highway. The car went to idle mode and changed itself to park gear. We had to off the car and restart it which was dangerous in the middle of the highway. This same incident happened earlier too but in a residential street. We took it to the dealership but they said they couldn't find anything wrong. Then I heard the news story about nhtsa investigation into this problem with Honda and wanted to report my experience. This is dangerous and they need to figure out what is going on. (NHTSA ID 11455296)

June 9, 2022 complaint: Frequently the engine will stall on restart after idle stop system cuts the engine off at a light. Occasionally the stall will lead to a full reboot of the control system taking up to 3 minutes to allow a restart of the engine. (NHTSA ID 11468548)

July 11, 2022 complaint: This is a problem with the auto engine idle shut off. The engine shuts off normally when I come to a stop when I have the system engaged. The problems begin when I take my foot off the break expecting the engine to start up again. What happens consistently (though not all the time) is that when I take my foot off the brake, the engine shuts off, shifts itself into Park, and I have trouble getting the engine to start up again. A number of warning messages show up on the center console as well. Things like, Collision Mitigation Braking System, Road Departure Mitigation, Brake System warnings start displaying. Sometimes, I can get the engine to start up again within 30 seconds. Sometimes, it's been more than a minute. It almost looks/sounds like the battery is dead too (makes that clicking sound and the RPM gauge jiggles around zero). My Honda service shop says they couldn't replicate the issue, that there are no codes, and no service advisories. This started happening around 6-8 months ago and the incidents have recently increased significantly in frequency. This is a significant safety issue as every time this happens, which is now daily, I am vulnerable to being rear-ended and other vehicles are vulnerable to being in an accident by trying to go around me while I'm waiting for my vehicle to be able to restart. (NHTSA ID 11473467)

August 16, 2022 complaint: When I come to a complete stop and the start/stop motor goes into idle mode (shuts the engine down), I have a problem that occurs after it. It is unpredictable but when I come out of the idle and the engine is supposed to kick back on, my minivan stalls out. This has happened in heavy traffic areas and it takes 30 seconds to a minute to get the van to turn back on as the electrical system malfunctions. Big safety issue that can be scary in the moment. There are error messages that come up on the dash including "Collision Mitigation System Problem", "Brake System", and the center console system will restart. This problem doesn't happen when I disable the start/stop motor as it doesn't go into idle-stop mode. I have read through online forums recently and it appears this issue has happened in other Honda models dating back to 2016 models. This is

clearly an issue across years/models and needs to be addressed. The local Honda dealership said they haven't heard of this problem and couldn't replicate. Therefore, there was no repair provided. (NHTSA ID 11479488)

September 27, 2022 complaint: This has happened twice so far. Car has been driven for awhile, come to a stoplight, auto idle engine kicks in and car shuts down. Car display says press brakes and hit starter to turn car back on. I am essentially stopped at a light unable to move. I am on my 3rd battery for my 2019 Odyssey. I have taken to dealership for diagnostic and they're unable to replicate. (NHTSA ID 11486636)

October 1, 2022 complaint: The auto engine stop feature left me stranded when the engine died. I pulled up to a traffic light and the engine cut off and wouldn’t start automatically when I let my foot off the brake. Also wouldn’t start when I tried manually starting it. Had battery and alternator tested. Both tested fine. Car finally started later. Seems to be ok if you disable the auto shut off function. (NHTSA ID 11487463)

October 19, 2022 complaint: When stopping at an intersection multiple times the idle stop turns the car off and the vehicle refuses to start again and all electronics stop working until the vehicle is turned off completely and the driver door is opened. Does not happen all the time so can't consistently reproduce to have a service center confirm. Vehicle has been inspected during other recall repairs and I was told the repairs being done would not fix that issue. (NHTSA ID 11489963)

December 5, 2022 complaint: The car shuts off when stopped at intersections. We have taken the car to Honda several times and they have been unable to find any problem with it. The message we get is "The system has lost power. Push and hold the power button for more than two seconds to enable the system." (NHTSA ID 11496084)

April 11, 2023 complaint: Noticed that a check brake system light came on briefly and then when I stopped at a traffic light, the engine shut down as it is supposed to, but when I lifted my foot off the brake, the car didn't restart and I was stranded in the lane (busy road). Pressed the Engine button, but it wouldn't restart. After about 5 minutes (while I called AAA) I tried again and it restarted. Very

dangerous - I see multiple other people had the same experience. AAA came to my house and the battery, alternator, and starter all tested good. (NHTSA ID 11516594)

July 29, 2023 complaint: My Idle Stop feature on the car has become very unreliable. After the car enters the stop state, waking up the car has the following difficulties: Almost regularly, the start up process causes the car's audio and electrical to glitch and will put a warning on the dashboard that the collision mitigation system has been engaged. A few times now, the car has simply not woken up from the idle stop state, and the console will tell me to put the car in park to restart, but the shifter won't do anything. I've had to open the driver's side door to reset the electronics, close the door, and then hold the brake and push the start/stop button to get the car to restart. (NHTSA ID 11535179)

September 19, 2023 complaint: Auto Engine Idle Stop function does not restart engine after stopping engine. This situation happens regularly. This causes a dangerous situation when the car does not restart when driving I n traffic. Vehicle has been inspected by dealership and they are unable to resolve. (NHTSA ID 11545530)

March 9, 2024 complaint: When I came to a stop at a red light, my auto engine idle engaged. When I tried to go by pressing on the gas, the engine would not turn on. The lights flickered and I had to wait a couple minutes to restart the car. This is not the first time it happened but it happened most recently on March 8, 2024. I have called Honda in two locations multiple times and they say they have no parts. When I told them I am experiencing problems they said they can try to expedite the parts but they don’t know when they will receive them. I am supposed to go in on Monday but they could not guarantee the problem would be fixed since they don’t have the parts. My safety was put at risk because I was driving and blocked traffic at a light which turned green. I had the car inspected in December for a different recall but they could not fix this open recall because they didn’t have parts. They knew I was experiencing problems with the engine not starting in December. (NHTSA ID 11576344)

<u>NHTSA Complaints Related to 2018 Honda Odyssey:</u>

January 12, 2018 complaint: OUR 2018 HONDA ODYSSEY ELITE HAS A FEATURE CALLED IDLE STOP. THE FEATURE HAS MANY CRITERIA THAT MUST BE MET BEFORE IT WILL ACTIVATE. IT SHOULD JUST TURN OFF THE ENGINE WHEN THE CRITERIA HAVE BEEN MET IN AN EFFORT TO CONSERVE FUEL IN LIEU OF IDLING. WE ARE SEEING A RANDOM ISSUE WHEN THIS FEATURE ACTIVATES WHERE THE VEHICLE WILL SHUT OFF THE CAR ENTIRELY AND PLACE IT IN PARK. WE MUST MANUALLY START OUR VEHICLE AGAIN THEN PLACE IT BACK IN DRIVE TO PROCEED. WE'VE HAD IT HAPPEN THREE TIMES. ALL HAVE TAKEN PLACE AT STOP LIGHTS FOLLOWING A COMPLETE STOP. THE MOST RECENT OCCURRENCE TOOK PLACE AT A STOP LIGHT AFTER LEAVING THE HIGHWAY. I'M CONCERNED WE WILL BE REAR ENDED DUE TO OUR VEHICLE BEING DISABLED AT AN INTERSECTION. IT'S CURRENTLY AT THE DEALERSHIP FOR THE FIFTH TIME (MULTIPLE ISSUES WITH THIS VEHICLE) TO HOPEFULLY FIND A SOLUTION. (NHTSA ID 11062395)

October 28, 2018 complaint: THE VEHICLE HAS STALLED WHILE STOPPED AT A TRAFFIC LIGHT. THERE ALSO APPEARS TO BE A PROBLEM WITH THE ELECTRONICS BECAUSE THE CAR WILL REPORT THAT "THIS SYSTEM HAS LOST POWER. PUSH AND HOLD THE POWER BUTTON FOR MORE THAN TWO SECONDS TO ENABLE THE SYSTEM." THE BACKUP CAMERA HAS ALSO FAILED TO TURN ON WHEN THE VEHICLE IS PUT INTO REVERSE. SEE THE ATTACHED PHOTOS FOR PROOF. (NHTSA ID 11143517)

August 23, 2019 complaint: THE VEHICLE COMPLETELY SHUTS DOWN AND OFF INTERMITTENTLY WHEN THE AUTO IDLE STOP FUNCTION IS ENGAGED. THIS HAPPENS WHEN WE ARE IN TRAFFIC ON A HIGHWAY AND STREETS OR AT STOP SIGNS AND STOPPING BRIEFLY AND AND THE VEHICLE GOES INTO PARK AND MUST BE RE-STARTED BY PRESSING THE "ON/OFF" BUTTON. IT IS VERY SCARY AND DANGEROUS. ALSO I GET AN ERROR MESSAGE SAYING THE VEHICLE'S "HEATED SEAT SYSTEM PROBLEM". SECONDLY THE VEHICLES COLLISION WARNING COMES ON WHEN THERE IS NOTHING AROUND AND SAYS THE

PASSENGER SIDE SLIDING DOOR IS OPEN WHEN IT IS NOT. (NHTSA ID 11246051)

August 31, 2019 complaint: WHEN I SLOWED TO A STOP, THE CAR SUDDENLY DIED IN THE MIDDLE OF THE STREET AND WENT INTO PARK. THE AIR CONDITIONER CONTINUED TO RUN, WE COULD NOT GET IT OUT OF PARK. MY CONCERN IS THAT THE DEALER SAYS THIS HAS NEVER HAPPENED BEFORE. I'M HEARING FROM MANY SOURCES THAT THIS HAS HAPPENED TO THEM - EVEN WHILE MOVING. THEY CAN'T SEEM TO FIND OUT WHAT'S WRONG, BUT I'M CONCERNED THAT IT'S SOMETHING MAJOR. IT MAY ALSO BE DANGEROUS IF THIS HAPPENS WHILE I'M DRIVING, AND I GUESS I DON'T TRUST THE DEALER. I'M JUST NOTIFYING YOU TO MAKE A RECORD OF THIS IN CASE THIS TURNS OUT TO BE SOMETHING MORE THAN JUST A QUICK FIX.. (NHTSA ID 11252636)

September 20, 2020 complaint: 2 DIFFERENT TIMES I HAVE COME TO A STOP AT AT STOP LIGHT AND WHEN I GO TO START AGAIN THE CAR TURNS OFF AND GOES INTO PARK. LUCKILY IT HAS HAPPENED AT NO SPEED BUT VERY TERRIFYING TO THINK YOU ARE IN DRIVE THE CAR SHUTS OFF AND YOU ARE IN PARK. ALSO ON 2 SEPARATE OCCASIONS I HAVE COME OUT IN MY GARAGE (AFTER THE CAR HAS BEEN OFF AND PARKED FOR A FEW HOURS) AND MY CAR IS IN ACCESSORY MODE AND THEN THE BATTERY IS DRAINED. I HAD THE KEYS OUT OF THE CAR AND NO ONE ELSE WAS HOME BOTH TIMES. SO CAR IS GOING INTO ACCESSORY MODE WITHOUT KEYS OR A PERSON IN THE CAR. (NHTSA ID 11360098)

April 24, 2021 complaint: OUR 2018 HONDA ODYSSEY ELITE HAS INTERMITTENT ISSUES WITH THE AUTO START/STOP FEATURE. AS CONTEXT, THE CAR ENGINE WILL AUTOMATICALLY STOP WHEN THE VEHICLE IS FULLY STOPPED, FOR EXAMPLE AT A RED LIGHT, AND A FEW OTHER CONDITIONS ARE MET (BRAKE PEDAL PRESSURE, BATTERY CHARGE, ELECTRICAL LOAD). OUR VEHICLE WHEN AUTO STOPPED MAY STALL WHEN ATTEMPTING TO RESUME DRIVING. WHEN THE DRIVER RELEASES THE

BRAKE PEDAL AND PUSHES THE ACCELERATOR PEDAL, THE CAR FAILS TO AUTO START, OR AUTO STARTS WITH WARNING MESSAGES. WHEN THE CAR FAILS TO START, A VARIETY OF WARNING MESSAGES WILL BE DISPLAYED ON THE DASHBOARD. REMEDIATION VARIES. THE CAR MAY RESPOND TO SHIFTING TO PARK AND PUSHING THE IGNITION START/STOP BUTTON TWICE. AT TIMES, THE CAR MAY NOT RESPOND TO SHIFTING TO PARK AND IGNITION BUTTON ACTIONS. THE ONLY FIX THEN SEEMS TO BE A 'HARD' SHUTOFF THAT REQUIRES OPENING THE DRIVER DOOR AND PUSHING THE IGNITION BUTTON, CLOSING THE DOOR, PUSHING THE IGNITION BUTTON, AND SHIFTING TO DRIVE. WHEN THE SYSTEM PARTIALLY FAILS, THE FRONT COLLISION WARNING/MITIGATION SYSTEM IS TEMPORARILY DISABLED. MY CAR IS CURRENT ON ALL RECALLS. I RECENTLY HAD DEALER SERVICE, AND THEY CONFIRMED THERE ARE NO KNOWN BULLETINS FOR THIS ISSUE. THE CAR IS CURRENT ON MAINTENANCE SCHEDULE AND IS OTHERWISE IN VERY GOOD OPERATION CONDITION. THIS SITUATION CAR BE QUITE STRESSFUL WHEN AT A BUSY INTERSECTION, OR WHEN TRYING TO PULL OUT TO MERGE INTO A MAJOR ROAD FROM A STOP. THIS FAILURE COULD BE VERY DANGEROUS IF YOU NEEDED TO MOVE THE VEHICLE QUICKLY, FOR EXAMPLE IF STOPPED NEAR A RAILROAD CROSSING. THE AUTO START/STOP SYSTEM IS ENABLED BY DEFAULT TO IMPROVE FUEL ECONOMY. IT CAN BE MANUALLY DISABLED, HOWEVER IT RESETS WITH EACH SHUTOFF. I WOULD PERMANENTLY DISABLE IT, HOWEVER, THAT IS NOT POSSIBLE APPARENTLY FOR EPA REASONS. I HAVE VIDEOS SHOWING THIS BEHAVIOR. (NHTSA ID 11413718)

June 8, 2022 complaint: Auto restart feature when enabled did not restart vehicle after coming to a stop at stoplight on multiple occasions in the last few months rendering vehicle unable to proceed. We recently saw news article about same issue with Pilots. (NHTSA ID 11468182)

July 1, 2022 complaint: When coming to a stop, usually in stop / go traffic and at times when coming to a complete stop, the auto-idle stop


00236009

kicks in, but then immediately shuts the engine down and shifts vehicle into park. Vehicle has to be entirely shut down and restarted to bring the engine back. We have been taking the vehicle to the dealership since we bought it a couple of years ago. Seems to be mostly occurring in warm summer months. Also affects the audio entertainment, all sounds stop. And after the most recent repair by the dealership (replacing the tuner), the display screen will not come on for 10-15 min when first starting the vehicle (including the back-up cam and warnings) (NHTSA ID 11472050)

September 14, 2022 complaint: On at least 3 occasions, the "Auto Engine Idle Stop" has caused my vehicle to completely die while stopped at a stop light. When the car shuts off/dies, the system prompts you to shift the car in park and restart the car, but on these occasions, the car did not start, leaving me stalled in active traffic. I felt very unsafe to be stalled with no way to operate the vehicle. The dealership checked the battery to ensure it wasn't a battery issue and found it to be completely fine. At the time we did not realize that it could be a problem with the Auto Engine Idle Stop feature, otherwise we would've had them check that system specifically. Further research from other customer forums online prompted us to turn this feature off, but we have to do that every time we start the car. There is no way for us to turn it off permanently. The car gives you no warning that this will happen. When you remove your foot from the break to resume driving, the car shuts off without immediately restarting, leaving you stranded. I am hoping that Honda will issue a recall on affected models. At this point they aren't offering any help other than to tell us to turn it off, but you have to remember to do that every time you start your vehicle. (NHTSA ID 11484513)

October 2, 2022 complaint: Auto idle system engaged when the car was stopped waiting for a train to pass last night. When I took my foot off the brake to move forward, the car completely went dead. No engine start up after auto idle, no electrical system available for emergency flasher lights. No response from the van at all. This put us at considerable safety risk when we could not process through traffic, at night, on a dark country road. A kind passerby attempted to jump start the car for us and while the electrical system came back on momentarily, the engine would not turn over. After five attempts to jump start the van, we stopped trying. There was zero response from the van after that. We purchased this vehicle brand new in December

of 2017. It has had electrical issues ever since the day we bought it. We have reported this to our Honda dealer several times over the course of the past 4+ years. Initially, the auto idle never worked. Then the sliding doors wouldn't shut all the way, reliably. They continue to cause issues and won't close all the way, without popping back open, about 60% of the time. The radio and entertainment center has malfunctioned. The collision warning has malfunctioned and alerts at times when there is nothing in the way of the vehicle. It has been several electrical issues after another. We have had multiple new batteries installed over the past 4+ years. Last night was the absolute greatest risk to our family's safety. The vehicle has experienced this "black out"/stall another time in the past year, but was temporary and came back on after a full restart of the engine. Last night, however, there was no hope to restart. The van was completely seized up and a tow truck had to drag it onto its flatbed truck, assuredly damaging our tires and transmission, potentially. We will have to have the van towed to the Honda dealer Monday morning (this incident happened last night, Saturday Oct 1, 2022.). Now we are without our primary family vehicle. (NHTSA ID 11487473)

January 21, 2023 complaint: The auto idle on my van has cause problems for over three years. I have reported this to our Honda dealership numerous times. The car dies when I am stopped and I try to take off. Everything in car shuts off - dashboard, A/C, radio, etc. When it does not all the way die when I try to go from a stop, all my collision mitigation warnings start flashing and a few times my car has braked itself. They have blamed it on my battery twice - once they replaced and the next time they made me pay for the battery. Then, they tried to blame it on the master computer switch because my door locks would just lock and unlock as I would drive down the road. They ordered the chip in February 2022 and finally replaced it in August 2022. The van has started locking and unlocking again, collision mitigation warnings go off for no reason, and auto idle is starting to kill the van again when I try to take off. (NHTSA ID 11502959)

February 26, 2023 complaint: On 2 occasions, the "Auto Engine Idle Stop" has caused my vehicle to completely die while stopped at a stop light. The car did not start, leaving me stalled in active traffic. Eventually the car reset itself and I was able to restart the car. After this happened the first time the battery in the vehicle was replaced.

The second time this happened the battery was only 2 years old. The manufacturer should fix this problem with a recall. (NHTSA ID 11509213)

March 23, 2023 complaint: This issue been going on for a while now. I Have taking it to the dealer for issue. They said was the battery i replace the battery. Still doesn't fix the issue. Last week we stuck on the hogging in traffic with my family of 5 including children. We came to a stop and it went into idle stop then it when i released brakes the engine didn't turn back on tell me to shift in park in the middle of the highway. I could have been hit from the rear with this issue especially if you're stuck in traffic. This issue has been going on a few times thinking it was because of a battery. I replaced my battery twice because that what Honda said is the issue . (NHTSA ID 11513400)

May 16, 2023 complaint: several times when stopped at a light, the vehicle's auto idle engine engages and shuts the car off. When the brake has been released, the vehicle has failed to start. Most recently, this occurred while waiting in a car line of traffic and it took many different attempts to get the car engine back on - about 10 minutes before the engine could be started, resulting in myself and my children stuck on the road while we opened doors, the hood of the car, tried to start the car and turn it completely off. It was in a stuck position until it wasn't. that was the first time the vehicle wouldn't start after numerous attempts to start the engine. We have been told there is no way to fix this - only to manually turn the function off every time the car is started. (NHTSA ID 11522190)

July 29, 2023 complaint: In two separate incidents, my vehicle stalled when it tried to restart after being in Auto Idle Stop mode. In both incidents, I was stopped at an intersection where I was making an unprotected left turn. As I was stopped, the Auto Idle Stop mode activated on my Honda Odyssey which turned off the engine. When it was clear to make a left turn, I lifted my foot off the gas which disabled Auto Idle Stop mode. As my engine tried to restart, it stalled. I was able to get it to restart but only after being stalled in traffic for several seconds causing other drivers to honk at me. When my engine restarted, several warning lights lit up on my dashboard for about a second and a warning alarm sounded. Since they were illuminated for such a short period and I was actively trying to clear the intersection,

I was not able to see which lights they were but I do remember that one of the lights that lit up in the first incident was the sliding door warning light. The first incident happened in May 2023 when I had about 99,000 miles on my van. The second incident happened in July 2023 with approximately 101,000 miles on my van. The problem happens at seemingly random times and has not been able to be reproduced. There were no other warnings prior to the problem happening. Since my van randomly stalled in the middle of an intersection, I believe this problem posed a safety risk to myself and my occupants as well as other drivers near me. Had I not been able to get my van restarted, I would have been at risk of being hit by oncoming cars. Even the few-second delay in restarting could have been catastrophic had an oncoming car been approaching quickly. I have had no issues with the starter on my van or with issues stalling other than these incidents. The stalls have only occured when coming out of Auto Idle Stop mode. Unfortunately, there is no way to permanently deactivate this mode. It automatically turns on each time I start up my car. (NHTSA ID 11535233)

July 29, 2023 complaint: My car has stalled on multiple occasions when the auto-idle feature is engaged. A message on the dashboard flashes stating ‘collision mitigation system’ and then the car just stalls and the battery light comes on. Typically this requires turning the car off and turning back on to begin driving. Very scary and dangerous when in the middle of a busy road/traffic light/stop. (NHTSA ID 11535184)

September 2, 2023 complaint: When idle stop is activated, car will often stall on attempt to restart. Car can then not be started for 5-10 seconds. If the car does not stall, it will often hesitate 2-3 seconds before the engine restarts, leading to multiple near-miss accidents on turns. Electrical warnings will often flash after idle stop, such as "sliding door problem," "collision mitigation malfuction," "anti-theft system malfunction," etc. Battery has been replaced twice with no other remedy offered while in or out of warranty. (NHTSA ID 11542263)

September 2, 2023 complaint: When the vehicle’s auto start-stop feature is active, the feature will malfunction causing the engine to not start properly. Instead, the vehicle stalls and must be restarted manually. However, there are many occasions when the vehicle does

not start manually either. In these cases, it takes many attempts to restart the vehicle. While these events are happening, the vehicle displays an error message for the auto start-stop feature on the instrument cluster, and the instrument cluster will flicker on and off. The events often occur during the middle of an intersection and attempting to turn in front of oncoming traffic. It creates a very dangerous situation. the vehicle or component has not been inspected by the manufacturer, police, insurance representatives or others because the issue occurs regularly, and the dealership has asked us to come back when the problem is occurring. The problem has not been reproduced or confirmed by a dealer or independent service center. However, there are other Honda vehicles (e.g., Honda Pilot) which have the exact same issue, and a recall has been issued for those vehicles but not the Honda Odyssey. (NHTSA ID 11542249)

April 17, 2024 complaint: Car stalls out and completely shuts off when auto start/stop is engaged. In the 2018 model there is no way to turn off auto start/stop. The car has been unable to turn on for 3 minutes causing major safety and traffic issues. On average it takes 10-20 seconds to manually restart the vehicle with the engine start/stop button. We have taken the vehicle back to the Honda dealership multiple (3-4) times with no resolution and in they can't find the problem, but has happened to them during test drive. They did a system update hoping it will solve the problem, but it hasn't. I'm going to have to take it back to Honda again. Please issue a recall, this has been a known problem/issue and is on Reddit. The issue first started about a year and a half ago with the most recent occurrence being today, April 17th 2024. The vehicle has failed to turn back on after the auto start/stop engaged over 20 times. (NHTSA ID 11583687)

April 18, 2024 complaint: when stopped in traffic or a light, the engine idle engages. on several occassions (5-6) the stop is too short but the Auto Engine idle is engaged and rather than restart the engine, it turns the engine off. THe car will not restart or turn off unless i open the driver door then hit the on/off button and let the whole car completely shut down before turning it back on. It can take almost full minute or more to go through the process. The danger to myself and those in my car, when we are stopped on the highway, busy road and traffic begins to move again, and i have to open my driver door to get the car to turn back on. I have informed the Honda Dealership

> (Pohanka Fredericksburg) about the incidents almost every time they have occurred to have them look at the vehicle, but informed they cannot reproduce the problem. I have had video of the incident occurring. (NHTSA ID 11583776)

152. Owners and lessees of the Class Vehicles have also reported the Defect on social media platforms and online forums, including Honda Odyssey-specific forums. Below is a sample of complaints posted to these forums:

- December 4, 2020 complaint: Ody keeps on stalling from auto idle: At a red light auto idle kicks in. But when I accelerate the engine shuts down. It usually takes a few min until I can restart the idy.[19]

- November 20, 2020 complaint: 2020 Ex – Auto Idle Stop – Wont turn back on: This is happening intermittently, about 20% of the time. When I stop a stop while driving the auto idle stop kicks in, but does not turn my car back on! This happens at dangerous times and puts my vehicle into park. I scramble to get my car started and engaged into gear. Please help! I bought this care only a few months ago brand new! Also, not sure if related, my center screen is now not turning on… I had no idea Honda was selling lemons. Please help.[20]

- 2024 complaint: Idle-stop stall: Does anyone's car of this issue? Mine is a 2020 and we've been experiencing this issue since last year. Last year after it stalls, we would still be able to turn off the care and restart again (problem went away after a few months). A month ago, we started to have the same issue again except we can't restart the car unless we jump start it! Took it to Honda, they said they 'fixed' the recall, replaced the battery and couldn't find any other issue. They still haven't found the fix after 3 visits. We get it back and the same problem always come back a week later.[21]

---

[19] https://www.odyclub.com/threads/ody-keeps-on-stalling-from-auto-idle.361750/?post_id=2406769&nested_view=1#post-2406769 (last visited May 18, 2026).

[20] https://www.odyclub.com/threads/2020-ex-auto-idle-stop-wont-turn-back-on.361609/?post_id=2405074&nested_view=1#post-2405074 (last visited May 18, 2026).

[21] https://www.reddit.com/r/HondaOdyssey/comments/1ejkas3/idlestop_stall/ (last visited May 18, 2026).

153. Honda monitors social media platforms and online forums, including Honda forums. Accordingly, Honda is and was aware of the numerous, widespread complaints about the Defect in the Class Vehicles

**4. Warranty Data**

154. Federal regulations require vehicle manufacturers producing 5,000 or more light vehicles annually, such as Honda, to comply with Early Warning Reporting requirements under the Transportation Recall Enhancement, Accountability, and Documentation Act of 2000 (the "TREAD Act"), 49 U.S.C. §§ 30101-30170.

155. Under the TREAD Act and its implementing regulations, all vehicle manufacturers are required by law to routinely monitor and analyze consumer complaints and other safety data to determine whether vehicles or components should be recalled due to safety concerns. This includes submitting reports to NHTSA quarterly that provide information on incidents involving death or injury. The regulations also hold manufacturers responsible "for any safety-related defect or any noncompliance determined to exist in the vehicle or in any item of original equipment."

156. Honda also knew about the Defect from its warranty data. Per the TREAD Act, Honda tracks customer complaints, vehicle diagnoses, and repairs from dealership technicians in a single, aggregated database. Honda employs persons who monitor the database for repair trends, and engineering and management staff review such trends in regular meetings. For every one complaint filed with NHTSA, Honda likely receives hundreds or thousands of related warranty claims. Accordingly, Honda has likely received thousands of Defect warranty claims from the start of production.

157. Based on pre-production testing, pre-production design failure mode analysis, production design failure mode analyses, early consumer complaints made to Defendants' network of exclusive dealers, aggregate warranty data

compiled from those dealers, repair order and parts data received from the dealers, consumer complaints to NHTSA, public consumer complaints made online, and the testing performed in response to the consumer complaints, Honda knew the Defect was present in all Class Vehicles, but it has not disclosed the Defect or provided an adequate repair to all Class Vehicles. Honda's halfhearted and unconscionable acts deprived and continues to deprive Plaintiffs and Class members of the benefit of their bargain. Had Plaintiffs and Class Members known what Honda knew about the Defect, they would not have purchased their Class Vehicles or certainly would have paid less to do so.

**5. NHTSA's Ongoing Investigation**

158. NHTSA's scrutiny of the no-restart defect began no later than on June 3, 2022, when its ODI opened Preliminary Evaluation PE22005. On March 26, 2025, ODI escalated that inquiry into a formal Engineering Analysis, EA25004 — the more intensive, second phase of NHTSA's defect-investigation process, which precedes any recall determination—concerning complaints "that the engine fails to restart on its own from a complete stop at a traffic light or road intersection with the Auto Start/Stop function engaged."[22]

159. The EA25004 investigation covers 2016-2025 Honda Pilots, 2018-2025 Honda Odysseys, 2019-2025 Honda Passports, 2020-2025 Honda Ridgelines, 2015-2025 Acura TLXs, and 2016-2025 Acura MDXs.

160. According to ODI, it "continues to receive complaints of the AIS failure to restart, with many complainants alleging the [prior] campaign countermeasures had been completed"—confirming both that the Defect persists and that Honda's earlier repair efforts did not remedy it.[23]

161. In the course of the investigation, NHTSA reviewed Honda's

---

[22] https://static.nhtsa.gov/odi/inv/2025/INOA-EA25004-10033.pdf (last visited June 2, 2026).

[23] *Id.*

responses to its Information Request Letters—responses that, by NHTSA's own account, involved Honda's "warranty claims, lawsuits, and consumer complaints" concerning the Defect.[24] Honda's internal records therefore documented the Defect, including warranty claims and consumer complaints, of which Honda was aware.

162. Honda's knowledge that the Defect persisted in the Class Vehicles is further confirmed by its own dealer communications. In a May 21, 2025 communication to all Honda service managers and advisors, captioned "Request for Parts: 23-25 Ody/Passport/Pilot/Ridgeline Auto Idle Stop No Restart," Honda acknowledged the Defect was still occurring in the Class Vehicles and its other affected models. Honda told dealers it was "searching for certain 2023-2025 Odysseys, Passports, Pilots, and Ridgelines with a customer complaint of a no auto re-start condition after going into an auto idle stop" and conceded that "[t]he push button ignition may or may not restart the engine."[25]

163. As of that May 2025 communication—nearly three years after PE22005 opened, and more than two years after Honda issued service bulletins addressing the condition in other models—Honda still had not identified a remedy for the Class Vehicles. Instead, Honda told dealers it was collecting parts "[t]o better understand the cause of this condition" and offered technicians a Visa gift card to identify qualifying vehicles—soliciting affected vehicles for study rather than recalling them or offering a fix.[26]

164. Honda's own screening criteria in that communication reflect its understanding of the Defect's cause. Honda instructed that a vehicle qualifies even after a "[p]revious battery replacement," so long as "the 'no restart after auto idle

---

24 *Id.*

25 https://static.nhtsa.gov/odi/tsbs/2025/MC-11019246-0001.pdf (last visited June 2, 2026).

26 *Id.*

stop' condition . . . happened with the current battery"—confirming Honda knew the Defect was not resolved by replacing the battery—and limited its collection to vehicles with "[n]o previous replacement of the starter (31200) or battery sensor (38920)," the components Honda itself identified as the suspected cause.

### C. Honda Has a Long History of Touting the Safety, Quality, and Reliability of Its Vehicles While Concealing the Defect

165. Through its network of dealerships across the United States, Honda has become one of the top automakers in the United States in terms of sales.

166. In 2020 and 2021, Honda sold 1.34 million and 1.46 million vehicles, respectively.[27]

167. Honda is a large player in the United States auto-market based on its branding and assurances to consumers of safety, care, durability, and quality.

168. Honda employed and continues to employ a long term and uniform marketing message that its vehicles are of the utmost safety and dependability and that the Odyssey was engineered to provide safe and dependable transportation to families.

169. Honda dedicates a page on its website entitled "safety," where Honda represents the safety of its vehicles.[28] Honda includes promotional videos touting the pre-sale safety testing it conducts and states: "Everyone deserves to feel safe on the road. Our global safety philosophy, 'Safety for Everyone,' embodies our commitment to protecting drivers, passengers and pedestrians alike."[29]

170. Honda also states that it conducts "3D Model Testing," and touts that it has "developed an advanced safety visualization technology to create highly

---

[27] https://www.best-selling-cars.com/usa/2021-full-year-usa-honda-and-acura-sales-by-model/#:~:text=Honda%20Brand%20Sales%20in%20the,top%2Dselling%20Honda%20car%20 (last visited May 18, 2026).

[28] https://automobiles.honda.com/safety (last visited May 18, 2026).

[29] *Id.*

detailed three-dimensional models of a vehicle's crash safety structure[30]."

171. On its webpage "Safety for Everyone," Honda continues to tout and acknowledge its reputation for safety. For example, the webpage includes a video interview with Bryan Hourt, Chief Engineer for North America Safety Strategy and Planning, in which he touts the various pre-sale tests that Honda conducts and its "development of core safety technologies."[31]

172. Notwithstanding the presence of the Defect in millions of Class Vehicles, Honda calls itself "a mobility company–we move people. But, for us, safety is an enormous priority. We don't just want to move you; we want to move you safely."[32]

173. Honda claims that the safety testing procedures it utilizes "allows [it] to make the road safer for everybody on it by engineering for worst case scenarios in an unprecedented way."[33]

174. Honda's YouTube channel similarly displays a commercial titled "Each Honda is engineered with Safety for Everyone in mind," dated January 8, 2021.[34]

175. In the commercial, Honda's Manager/Principal Engineer of Crash Safety touts Honda's "safety for everyone philosophy." The video description reads, "[f]rom our own family members to yours, safety is a top priority when

---

30 *Id.*

31 https://hondanews.com/en-US/safety/channels/channel-ca54ead83e3667d0b2045585b001b6d4?sortOrder=PublishedAscending&selectedTabId=channel&modal=video-37608fb76eaa9e3e3e588b6f5d00d80d (last visited May 18, 2026).

32 https://www.honda.com/safety/virtual-and-real-world-tests (last visited May 18, 2026).

33 *Id.*

34 https://www.youtube.com/watch?v=t5VltkR4J_w (last visited May 18, 2026).

engineering our vehicles. When you or your loved ones get behind the wheel of a Honda, you're driving a vehicle that's been designed with Safety for Everyone in mind."

176. The uniform marketing message from Honda concerning the reliability of its vehicles is also found in Honda's marketing brochures for the Class Vehicles.

177. Featured prominently in Honda's marketing materials are claims of excellence in quality, design, safety, and reliability.

178. For example, for the 2025 Honda Odyssey, under "Safety," Honda states that its "safety philosophy means every Odyssey is amply equipped with safety features." And that "Odyssey is expected to receive excellent safety ratings for the 2025 model year."[35]

179. Indeed, Honda's public messaging about its commitment to safety goes back decades. Since 2019 Honda's website told consumers "Everyone deserves to feel safe on the road. Our global safety philosophy, 'Safety For Everyone,' embodies our commitment to protecting drivers, passengers and pedestrians alike," describing in detail the numerous standard safety features across Honda vehicles including "Active Safety Technologies," "Passive Safety," "Active Stability Systems," and many more.[36]

180. From 2017 to 2019, Honda's website similarly touted its "Two Sides of Safety [] Not all vehicle safety technology serves the same purpose. That's why Honda employs two different methods to help make our vehicles even safer" - "Active Safety Features" and "Passive Safety Features."

181. Prior to that, since 2014, Honda's website touted "Honda Safety" telling consumers "We know that the people who matter to you could be drivers

---

[35] https://www.hondainfocenter.com/2025/Odyssey/Feature-Guide/Feature-Highlights/ (last visited May 18, 2026).

[36] https://automobiles.honda.com/safety (last visited May 18, 2026).

or passengers in one of our own cars, occupants of another vehicle or even pedestrians. That's why Honda looks beyond government regulations, studying real-world situations to develop new safety technologies for everyone" and providing detailed descriptions of its vehicle's standard safety features.

182. On information and belief, Honda requires its marketing brochures to be provided to prospective customers at its network of dealerships.

**D. Honda's Warranties**

183. Honda has issued a Limited Vehicle Warranty for the Class Vehicles. Under the Limited Vehicle Warranty, Honda agreed to repair defects reported on the Class Vehicles within 3 years or 36,000 miles whichever comes first.

184. In addition to the Honda New Vehicle Limited Warranty, Honda's Federal Emissions warranty applies to vehicles sold in California, New York and Virginia and provides coverage for the first 3 years or 36,000 miles, whichever comes first. Likewise, Honda's California Emissions Warranty applies to vehicles registered and normally driven in California, New York and Virginia and provides coverage for up to 7 years or 70,000 miles depending on the defective part.

185. Under these warranties, Honda warrants that the vehicles are (1) designed, built, and equipped to conform with all emissions standards applicable at the time of sale or lease, and (2) are free from defects in materials and workmanship that would cause it to fail to conform with applicable emissions requirements during the specified time and mileage periods. Systems covered by these warranties include a vehicle ignition system and fuel injection system, among others, either or both of which would include a vehicle's starting system. Repairs associated with the Defect are included in these warranties.

186. Honda instructs vehicle owners and lessees to bring their vehicles to a certified dealership for warranty repairs.

187. Many owners and lessees have presented Class Vehicles to Honda-certified dealerships with complaints related to the Defect.

188. Honda has evaded its warranty obligations by (1) failing to tell consumers that the Class Vehicles are defective and (2) refusing to perform adequate or timely repairs to correct the Defect.

**E. Honda's Dealers Are Its Agents and Plaintiffs and Class Members Are Third Party Beneficiaries**

189. Honda controls its dealerships, and the dealerships act for the benefit of Honda.

190. Honda's authorized dealerships acted as its agents in selling, leasing, and servicing the Class Vehicles. Each dealership agreement requires compliance with Honda's sales policies, warranty procedures, and advertising guidelines, and Honda exercises substantial control over the manner of sale, financing, and customer interaction. Honda trains and certifies dealer personnel, approves all marketing and point-of-sale materials, and retains the right to terminate dealerships that fail to follow its directives.

191. Through these dealerships, Honda made uniform representations to consumers concerning the safety, reliability, and performance of the Class Vehicles. Honda's knowledge of the Defect and its omissions are therefore imputed to its authorized dealers, and the dealers' representations and warranties are attributable to Honda.

192. Plaintiffs and Class Members purchased or leased their Class Vehicles from Honda's authorized dealerships or online platforms operating under Honda's control. Accordingly, Honda is directly liable for, and bound by, its dealers' representations, sales practices, and warranty obligations.

193. Plaintiffs and Class Members are also intended third-party beneficiaries of the express and implied warranties issued by Honda, which were made to induce sales and to assure consumers that the Class Vehicles were of merchantable quality, safe, and fit for ordinary use. These warranties were

intended to benefit subsequent purchasers and lessees and therefore extend to all Class Members.

**TOLLING AND ESTOPPEL OF THE STATUTE OF LIMITATIONS**

194. Plaintiffs and the other Class Members could not have discovered through the exercise of reasonable diligence that their Class Vehicles were defective within the time period of any applicable statutes of limitation because the Defect cannot be seen by reasonable inspection of the Class Vehicles.

195. Throughout the time period relevant to this action, Honda concealed from and failed to disclose to Plaintiffs and the other Class Members vital information about the Defect described herein, including Honda's long-standing knowledge of the Defect and the Defect's existence.

196. Indeed, Honda kept Plaintiffs and the other Class Members ignorant of vital information essential to the pursuit of their claims. As a result, neither Plaintiffs nor the other Class Members could have discovered the Defect, even upon reasonable exercise of diligence. Even when Plaintiffs and Class Members presented their Class Vehicles to Honda dealers complaining of the starting failures and related symptoms, Honda did not disclose that those symptoms were caused by the common Defect that Honda was not willing or able to repair.

197. Since at least 2017, Honda has been aware that the starting system installed in the Class Vehicles is defective.

198. Despite its knowledge of the Defect, Honda failed to disclose and concealed, and continues to conceal, this critical information from Plaintiffs and the other Class Members, even though, at any point in time, it could have done so through individual correspondence, media release, or by other means.

199. Honda affirmatively and actively concealed the Defect when it continued marketing the Class Vehicles and introducing new vehicles with the same starting system, despite knowing that it was defective.

200. Plaintiffs and the other Class Members justifiably relied on Honda to disclose the Defect in the Class Vehicles that they purchased or leased, because that defect was hidden and not discoverable through reasonable efforts by Plaintiffs and the other Class Members.

201. Thus, the running of all applicable statutes of limitation have been suspended with respect to any claims that Plaintiffs and the other Class Members have sustained as a result of the defect, by virtue of the fraudulent concealment doctrine.

202. Additionally, based on the foregoing, Honda is estopped from relying on any statutes of limitations in defense of this action.

## CLASS ACTION ALLEGATIONS

203. Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of the following Nationwide Class:

> All current and former owners or lessees of a Class Vehicle (as defined herein) that was purchased or leased in the United States, the District of Columbia, Puerto Rico, and all other United States territories and/or possessions.

204. Plaintiffs also bring this action, in addition to and alternatively, as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of the following individual statewide classes under the laws of their respective states and multi-state class(es) that include all states with sufficiently similar laws:

> California Class: All current and former owners or lessees of a Class Vehicle (as defined herein) that was purchased or leased in California.

> Georgia Class: All current and former owners or lessees of a Class Vehicle (as defined herein) that was purchased or leased in Georgia.

> New York Class: All current and former owners or lessees of a Class Vehicle (as defined herein) that was purchased or leased in North York.

North Carolina Class: All current and former owners or lessees of a Class Vehicle (as defined herein) that was purchased or leased in North Carolina.

Virginia Class: All current and former owners or lessees of a Class Vehicle (as defined herein) that was purchased or leased in Virginia.

205. Excluded from the Classes are Honda, its affiliates, employees, officers and directors, persons or entities that purchased the Class Vehicles for resale, and the Judge(s) assigned to this case. Plaintiffs reserve the right to modify, change, or expand the Class definition.

206. Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Classes may be expanded or narrowed by amendment or amended complaint or narrowed at class certification.

207. Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.

208. This action has been brought and may be properly maintained on behalf of the Classes proposed herein under Federal Rule of Civil Procedure 23.

**Numerosity of the Class (Federal Rule of Civil Procedure 23(a)(1))**

209. The members of the Class are so numerous that their individual joinder is impracticable.

210. Plaintiffs are informed and believe that hundreds of thousands of Class Vehicles were sold across the United States.

211. The number and identity of Class members can be obtained through business records regularly maintained by Honda, its employees and agents and state agencies. Members of the Class can be notified of the pending action by e-mail and mail, supplemented by published notice, if necessary.

**Commonality and Predominance (Federal Rule of Civil Procedure 23(a)(2))**

212. There are questions of law and fact common to the Class. These questions predominate over any questions only affecting individual Class members. The common legal and factual issues include, but are not limited to:

a. Whether Defendants engaged in the conduct alleged herein;
b. Whether Defendants designed, advertised, marketed, distributed, leased, sold, or otherwise placed Class Vehicles into the stream of commerce in the United States;
c. Whether the Class Vehicles contain the Defect;
d. When Defendants learned of the Defect;
e. Whether Defendants concealed the Defect from Plaintiffs and other Class Members;
f. Whether Plaintiffs and other Class Members have been harmed by Defendants' conduct alleged herein;
g. Whether Plaintiffs and members of the Class are entitled to equitable relief in the form of rescission of the purchase agreement or other injunctive relief and, if so, in what amount; and
h. Whether Plaintiffs and Class Members are entitled to damages, restitution, restitutionary disgorgement, equitable relief, and/or other relief and the amount to be awarded.

**Typicality (Federal Rule of Civil Procedure 23(a)(3))**

213. Plaintiffs' claims are typical of the claims of each member of the Class. Plaintiffs, like all other members of the Class, have sustained damages arising from Honda's conduct as alleged herein.

214. Plaintiffs and the members of the Class were and are similarly or identically harmed by Honda's unlawful, deceptive, unfair, systematic, and pervasive pattern of misconduct.

**Adequacy (Federal Rule of Civil Procedure 23(a)(4))**

215. Plaintiffs will fairly and adequately represent and protect the interests of the Class members and has retained counsel who are experienced and competent trial lawyers in complex litigation and class action litigation.

216. There are no material conflicts between Plaintiffs' claims and those of the members of the Class that would make class certification inappropriate.

217. Counsel for the Class will vigorously assert the claims of all Class members.

**Superiority (Federal Rule of Civil Procedure 23(b)(3))**

218. This suit may be maintained as a class action under Federal Rule of Civil Procedure 23(b)(3), because questions of law and fact common to the Class predominate over the questions affecting only individual members of the Class and a class action is superior to other available means for the fair and efficient adjudication of this dispute.

219. The damages suffered by individual Class members are small compared to the burden and expense of individual prosecution of the complex and extensive litigation needed to address Defendants' conduct.

220. Further, it would be virtually impossible for the members of the Class to individually redress effectively the wrongs done to them.

221. Even if Class members themselves could afford such individual litigation, the court system could not.

222. In addition, individualized litigation increases the delay and expense to all parties and to the court system resulting from complex legal and factual issues of the case.

223. Individualized litigation also presents a potential for inconsistent or contradictory judgments. By contrast, the class action device presents far fewer management difficulties; allows the hearing of claims which might otherwise go unaddressed because of the relative expense of bringing individual lawsuits; and

provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

224. Plaintiffs contemplate the eventual issuance of notice to the proposed Class members setting forth the subject and nature of the instant action.

225. Upon information and belief, Defendants' own business records and electronic media can be utilized for the contemplated notices. To the extent that any further notice may be required, Plaintiffs would contemplate the use of additional media and/or mailings.

## CLAIMS FOR RELIEF

### A. Claims Brought on Behalf of the Nationwide Class

### COUNT I

**Violation of California's Unfair Competition Law**

**(Cal. Bus. & Prof. Code § 17200, *et seq.*)**

**(Plaintiff Bodney Individually and on behalf of Nationwide Class or, in the alternative, the California Class)**

226. Plaintiff Carole Bodney ("Plaintiff" for purposes of this Count) incorporates by reference each preceding paragraph as though fully set forth herein.

227. Plaintiff brings this Count individually and on behalf of the other members of the Class who purchased or leased Class Vehicles in states with state consumer laws that are similar to California's Unfair Competition Law (the "UCL") as applied to the facts of this case, or, in the alternative, on behalf of members of the California Class. The application of California law to the claims of the Nationwide Class is proper and constitutional. Defendant Honda has its principal place of business in California, where it maintains its headquarters, and the challenged conduct— including the design and testing of the Class Vehicles, the formulation and dissemination of uniform misrepresentations and omissions, the development of nationwide marketing and warranty policies, and the handling

of consumer complaints and corrective-action decisions—emanated from Honda's California offices. California therefore has a significant aggregation of contacts with each Class member's claims sufficient to satisfy constitutional due process. Further, under California's choice-of-law rules, California law may be applied on a classwide basis because the interests of other states do not materially conflict with California's strong interest in regulating misconduct that originated within its borders. To the extent any material conflict is shown at the class certification stage, Plaintiff reserves the right to propose subclasses or pursue claims under the laws of individual states as appropriate.

228. The UCL and similar laws in other states, prohibits any "unlawful," "fraudulent" or "unfair" business act or practice and any "unfair, deceptive, untrue or misleading advertising."

229. In the course of conducting business, Honda committed "unlawful" business practices by, *inter alia*, omitting and misrepresenting material facts concerning the safety and reliability of the Class Vehicles, making deceptive representations as set forth more fully herein (which also constitute advertising within the meaning of Bus. & Prof. Code §§ 17200 and 17500), and violating Civil Code §§ 1770(a)(5), (7), (9) and (16) under the CLRA, Business & Professions Code § 17500, *et seq.*, and the common law, including breach of express warranty, breach of implied warranty of merchantability, and unjust enrichment.

230. Plaintiff and the Class reserve the right to allege other violations of law constituting other unlawful business acts or practices as discovery proceeds. Honda's unlawful conduct at issue is ongoing and continues to this date.

231. Honda's omissions, non-disclosures, acts, misrepresentations, and practices as alleged herein constitute "unfair" business acts and practices within the meaning of the UCL, in that Honda's conduct was substantially injurious to consumers, offended public policy, and was unethical and unscrupulous. By concealing and misrepresenting material safety facts, Honda violated the "unfair"

prong of the UCL because its conduct contravenes established public policies embodied in the CLRA, which prohibits deceptive omissions and misrepresentations in consumer transactions, and Section 5 of the FTC Act, which bars unfair or deceptive practices in commerce. These policies collectively reflect a strong legislative determination that consumers must be protected from unsafe, defective, and deceptively marketed products. Plaintiff reserves the right to identify additional public policy violations as discovery proceeds. While Plaintiff and the other Class members were harmed, Honda was unjustly enriched by its violations of consumer protection and unfair competition laws.

232. As a result of their reliance on Honda's omissions and/or misrepresentations, owners and lessees of the Class Vehicles have suffered injury in fact and have lost money as a result of Honda's unfair conduct, including an ascertainable loss of money, property, and/or value in connection with the purchase or lease of their Class Vehicles.

233. Honda's above-described wrongful acts and practices also constitute "fraudulent" business acts and practices within the meaning of California Business and Professions Code § 17200 in that the representations and omissions described herein are false, misleading and/or likely to deceive reasonable consumers. Honda knew that the Class Vehicles suffered from the Defect, were defectively designed and/or manufactured, and were not suitable for their intended use. In misrepresenting the Class Vehicles and failing to disclose the Defect, Honda knowingly and intentionally concealed material facts and breached its duty not to do so. The facts misrepresented, concealed or not disclosed by Honda to Plaintiff and the other Class Members are material because a reasonable person would have considered them to be important in deciding whether to purchase or lease Honda's Class Vehicles, or to pay less for them. Had Plaintiff and the other Class Members known that the Class Vehicles suffered from the Defect described herein, they

would not have purchased or leased the Class Vehicles or would have paid less for them.

234. Honda continues to conceal the defective nature of the Class Vehicles and the Defect even after Plaintiff and the other Class Members began to report problems. Indeed, Honda continues to cover up and conceal the true nature of this systematic problem today. Honda's conduct caused and continues to cause substantial injury to Plaintiff and the other Class Members.

235. Honda's unfair or deceptive acts or practices occurred repeatedly in Honda's trade or business and were capable of deceiving a substantial portion of the purchasing public.

236. As a direct and proximate result of Honda's unfair and deceptive practices, Plaintiff and the other Class Members have suffered and will continue to suffer actual damages.

237. Through its unfair acts and practices, Defendants have improperly obtained money from Plaintiff and Class Members. As such, Plaintiff requests that this Court cause Defendants to restore this money to Plaintiff and all Class Members, and to enjoin Defendants from continuing to violate the UCL as discussed herein and/or from violating the UCL in the future. Otherwise, Plaintiff and Class Members may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

238. Plaintiff and the Class lack an adequate legal remedy to address Honda's misconduct. Legal damages alone cannot remedy the full extent of the harm because Plaintiff and Class members continue to own and drive their Class Vehicles and remain exposed to the Defect that Honda continues to conceal and refuses to fix, and damages do not prevent Honda from continuing to misrepresent and conceal the safety risks associated with the Class Vehicles. Restitution is necessary to restore to Plaintiff and the Class the monies wrongfully obtained by Honda, and injunctive relief is required to ensure that Honda discloses the defect

and ceases its unlawful conduct. In any event, any legal remedy that does exist is not as prompt, certain, or efficient as the equitable remedies sought, including because the claims giving rise to potential damages are subject to legal defenses and more stringent elements not applicable under the UCL, and the scope of actionable misconduct under the unfair prong of the UCL is broader than other available claims. Even if Plaintiff prevails and recovers legal damages under certain claims, those remedies may represent recovery for different harm than that which could be remedied under the UCL. Thus, Plaintiff may be entitled to restitution or injunctive relief under the UCL even if legal damages are unavailable, limited, or directed at different injuries. Plaintiff pleads this claim separately and in the alternative under Federal Rule of Civil Procedure 8(a)(3), such that if the Court dismisses or enters judgment against Plaintiff on her damages claims, she will otherwise lack an adequate remedy at law.

**COUNT II**

**Violation of California's Consumer Legal Remedies Act**

**(Cal. Civil Code § 1750, *et seq.*)**

**(Plaintiff Bodney Individually and on behalf of Nationwide Class or, in the alternative, the California Class)**

239. Plaintiff Carole Bodney ("Plaintiff" for purposes of this Count) incorporates by reference each preceding paragraph as though fully set forth herein.

240. Plaintiff brings this Count on behalf of herself and on behalf of the other members of the Class who purchased or leased Class Vehicles in states with state consumer laws that are similar to California's Consumers Legal Remedies Act (the "CLRA") as applied to the facts of this case, or, in the alternative, on behalf of members of the California Class. The application of California law to the claims of the Nationwide Class is proper and constitutional. Defendant Honda has its principal place of business in California, where it maintains its headquarters,

and the challenged conduct— including the design and testing of the Class Vehicles, the formulation and dissemination of uniform misrepresentations and omissions, the development of nationwide marketing and warranty policies, and the handling of consumer complaints and corrective-action decisions—emanated from Honda's California offices. California therefore has a significant aggregation of contacts with each Class member's claims sufficient to satisfy constitutional due process. Further, under California's choice-of-law rules, California law may be applied on a classwide basis because the interests of other states do not materially conflict with California's strong interest in regulating misconduct that originated within its borders. To the extent any material conflict is shown at the class certification stage, Plaintiffs reserve the right to propose subclasses or pursue claims under the laws of individual states as appropriate.

241. HML and AHM are "persons" as defined by California Civil Code § 1761(c).

242. Plaintiff and the Class Members are "consumers" within the meaning of California Civil Code § 1761(d).

243. By failing to disclose and concealing the defective nature of the Class Vehicles' starting systems from Plaintiff and the other Class Members, Honda violated California Civil Code § 1770(a), as they represented that the Class Vehicles had characteristics and benefits that they do not have, represented that the Class Vehicles were of a particular standard, quality, or grade when they were of another, and advertised the Class Vehicles with the intent not to sell them as advertised. *See* Cal. Civ. Code §§ 1770(a)(5), (7), (9) and (16).

244. Honda's unfair and deceptive acts or practices occurred repeatedly in Honda's trade or business, were capable of deceiving a substantial portion of the purchasing public and imposed a serious safety risk on the public.

245. Honda knew that the Class Vehicles' starting system suffered from an inherent defect, were defectively designed or manufactured, and were not suitable for their intended use.

246. Honda was under a duty to Plaintiff and the other Class Members to disclose the defective nature of the Class Vehicles' starting systems because: a) Honda was in a superior position to know the true state of facts about the safety defect contained in the Class Vehicles' starting system; b) Plaintiff and the other Class Members could not reasonably have been expected to learn or discover that their starting system has a dangerous safety defect until after they purchased the Class Vehicles; and c) Honda knew that Plaintiff and the other Class Members could not reasonably have been expected to learn about or discover the Defect.

247. By failing to disclose the Defect, Honda knowingly and intentionally concealed material facts and breached their duty not to do so.

248. The facts concealed or not disclosed by Honda to Plaintiff and the other Class Members are material because a reasonable consumer would have considered them to be important in deciding whether to purchase the Class Vehicles, or to pay less for them. Had Plaintiff and the other Class Members known that the Class Vehicles' starting system is defective, they would not have purchased the Class Vehicles or would have paid less for them.

249. Plaintiff and the other Class Members are reasonable consumers who do not expect that their vehicles will suffer from the Defect. That is the reasonable and objective consumer expectation for vehicles.

250. As a result of Honda's misconduct, Plaintiff and the other Class Members have been harmed and have suffered actual damages in that the Class Vehicles are defective and require repairs or replacement.

251. As a direct and proximate result of Honda's unfair or deceptive acts or practices, Plaintiff and the other Class Members have suffered and will continue to suffer actual damages.

252. As described above, Honda was provided pre-suit notice of the Defect, and as such has been afforded a reasonable opportunity to cure its breach of written warranties. Additionally, pursuant to Cal. Civ. Code § 1782(a), on June 2, 2026, Honda was notified in writing by certified mail of the particular violations of Section 1770 of the CLRA, which notification demanded that Honda rectify the problems associated with the actions detailed above and give notice to all affected consumers of Honda's intent to so act. A copy of the letter is attached hereto as **Exhibit A**.

253. If Honda fails to rectify or agree to rectify the problems associated with the actions detailed above and give notice to all affected consumers within 30 days of the date of written notice, pursuant to section 1782 of the CLRA, Plaintiff intends to amend the complaint to seek actual, punitive and statutory damages.

254. Plaintiff seeks all available relief under the CLRA for all violations complained of herein.

255. Accordingly, Plaintiff and the other Class Members seek an order enjoining the acts and practices described above.

256. Pursuant to § 1780(d) of the CLRA, attached hereto as **Exhibit B** is the affidavit showing that this action has been commenced in the proper forum.

## B. Claims Brought on Behalf of the California Class

### COUNT III

### Breach of Express Warranty

### (U.C.C. § 2-313; Cal. Comm. Code §§ 2313 and 10210)

### (Plaintiff Bodney Individually and on behalf of the California Class)

257. Plaintiff Carole Bodney ("Plaintiff" for purposes of the California Class) incorporates and realleges each preceding paragraph as though fully set forth herein.

258. Plaintiff brings this Count individually and on behalf of the other members of the California Class who purchased or leased Class Vehicles in the

state of California (the "Class," for purposes of this Count).

259. Plaintiff and the other California Class Members purchased or leased the Class Vehicles from Defendants by and through their authorized agents for retail sale or were otherwise expected to be the eventual purchasers or lessees of the Class Vehicles. At all relevant times, Honda was the manufacturer, distributor, warrantor, and/or seller of the Class Vehicles and knew or had reason to know of the particular purpose for which the Class Vehicles were purchased or leased.

260. Honda is and was at all relevant times a "merchant" and "seller" within the meaning of the Uniform Commercial Code §§ 2-103, 2-104(1) and Cal. Comm. Code §§ 2103(d), 2104 and §§ Cal. Comm. Code §§ 10103(a)(2) and (c).

261. With respect to leases, Defendant is and was at all relevant times a "lessor" within the meaning of the Uniform Commercial Code, § 2A-103(1)(p) and Cal. Comm. Code § 10103.

262. The Class Vehicles are and were at all relevant times "goods" within the meaning of the Uniform Commercial Code, § 2-105(a) and Cal. Comm Code § 2105 and § 10103(a)(8).

263. In connection with the purchase or lease of each of the Class Vehicles, Honda provides warranty coverage for the Class Vehicles under one or more manufacturer's warranties. Under these warranties, Honda promised to repair or replace the defective starting system and its components free of charge if it failed due to defects in materials or workmanship.

264. These affirmations of fact, promises, and undertakings constitute express warranties within the meaning of U.C.C. § 2-313 and Cal. Comm. Code § 2313 and 10210 and became part of the basis of the bargain between Honda and Plaintiff and the other Class Members.

265. Honda breached the express warranties because the Class Vehicles were sold and leased with defective starting systems that cause sudden stalling and complete shutdown of the vehicle engine. Despite its warranties, Honda has

refused and/or failed to repair the Defect or provide an effective remedy.

266. By failing to disclose the Defect and refusing to provide an effective repair, Honda deprived Plaintiff and the Class Members of the benefit of their bargain and breached the express warranties promising to correct defects in materials or workmanship.

267. Plaintiff and the California Class Members performed all conditions precedent under the contract between the parties.

268. As described above, Honda was provided pre-suit notice of the Defect, and as such have been afforded a reasonable opportunity to cure their breach of written warranties. Any additional time to do so would be unnecessary and futile because Honda has known of and concealed the Defect and, on information and belief, has refused to repair or replace necessary components despite the Defect's existence at the time of sale or lease of the Class Vehicles.

269. Honda is in privity with Plaintiff and members of the California Class. Plaintiff and California Class Members, not the dealers, were the intended beneficiaries of the Class Vehicles and the associated written warranties. Honda designed and manufactured the Class Vehicles, and created the advertising, marketing, and representations at issue and warranted the Class Vehicles to Plaintiff and members of the Class, either directly or through authorized agents. Purchase or lease through authorized dealers is sufficient to create privity because such authorized sellers act as Honda's agents for the purpose of the sale and lease of the Class Vehicles. Further, Honda knew the identity, purpose and requirements of Plaintiff and members of the California Class and designed, manufactured and marketed the Class Vehicles to meet their requirements.

270. Honda's breach was willful and knowing. Honda knew that the Defect existed at the time of sale and that their purported repairs were ineffective but nevertheless continued to sell and lease Class Vehicles while representing them as defect-free.

271. As a direct and proximate result of Honda's breach of express warranties, Plaintiff and the other California Class Members have suffered damages, including the diminished value of their vehicles, out-of-pocket repair costs, and loss of use.

272. Because of Honda's breach of express warranty as set forth herein, Plaintiff and the other members of the California Class assert, as additional and/or alternative remedies pursuant to U.C.C. § 2-608 and Cal. Comm. Code §§ 2608 and 10517, revocation of acceptance and restitution of all purchase or lease payments, together with incidental and consequential damages as permitted by law.

**COUNT IV**

**Breach of Implied Warranty**

**(U.C.C. § 2-314, Cal. Comm. Code §§ 2314 and 10212)**

**(Plaintiff Bodney Individually and on behalf of the California Class)**

273. Plaintiff Carole Bodney ("Plaintiff" for purposes of the California Class) incorporates and realleges each preceding paragraph as though fully set forth herein.

274. Plaintiff brings this Count individually and on behalf of the other members of the California Class who purchased or leased Class Vehicles in the state of California (the "Class," for purposes of this Count).

275. Plaintiff and the other California Class Members purchased or leased the Class Vehicles from Honda by and through its authorized agents for retail sales or were otherwise expected to be the eventual purchasers of the Class Vehicles when bought from a third party. At all relevant times, Honda was the manufacturer, distributor, warrantor, and/or seller of Class Vehicles. Honda knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased.

276. Honda is and was at all relevant times a "merchant" and "seller" within the meaning of the Uniform Commercial Code, §§ 2-103, 2-104(1) and Cal.

Comm. Code §§ 2103(d), 2104 and §§ Cal. Comm. Code §§ 10103(a)(2) and (c).

277. With respect to leases, Defendant is and was at all relevant times a "lessor" within the meaning of the Uniform Commercial Code, § 2A-103(1)(p) and Cal. Comm. Code § 10103.

278. The Class Vehicles are and were at all relevant times "goods" within the meaning of the Uniform Commercial Code, § 2-105(a) and Cal. Comm Code § 2105 and § 10103(a)(8).

279. Under Uniform Commercial Code § 2-314 and Cal. Comm. Code §§ 2314 and 10212, every sale of consumer goods carries with it an implied warranty that the goods are merchantable and fit for the ordinary purposes for which such goods are used, including safe and reliable transportation.

280. Honda impliedly warranted that the Class Vehicles were of merchantable quality and fit for the ordinary purposes for which vehicles are used, would pass without objection in the trade, and would conform to the promises or affirmations made on their labels, marketing and warranties.

281. In fact, the Class Vehicles were sold and leased with defective starting systems that cause sudden loss of acceleration and power while the vehicle is in operation. Because of this Defect, the Class Vehicles were not of merchantable quality, were unfit for their ordinary purpose, and failed to conform to the promises and affirmations made by Defendants.

282. The Defect substantially impairs the use, value, and safety of the Class Vehicles. As such, the vehicles would not pass without objection in the trade and would not be accepted by a reasonable consumer if the Defect were disclosed.

283. At the time of sale or lease, Honda knew or should have known that the Class Vehicles were defective and not in merchantable condition, yet they failed to disclose the defect and refused to provide a permanent or adequate repair.

284. Plaintiff and the Class Members performed all conditions precedent under the contract between the parties.

285. Honda is in privity with Plaintiff and the Class Members because Honda and its authorized dealers were part of a single distributive chain, and the retail transactions were made pursuant to Honda's express and implied warranties. Plaintiff and the Class Members were the intended beneficiaries of those transactions and of the implied warranties arising therefrom.

286. As described above, Honda was provided pre-suit notice of the Defect, and as such have been afforded a reasonable opportunity to cure their breach of written warranties. Any additional time to do so would be unnecessary and futile because Honda has known of and concealed the Defect and, on information and belief, has refused to repair or replace the necessary components free of charge despite the Defect's existence at the time of sale or lease of the Class Vehicles.

287. Honda's breach of implied warranty affected all Class Vehicles uniformly and constitutes a continuing course of conduct.

288. As a direct and proximate result of Honda's breach of implied warranty, Plaintiff and the Class Members have suffered damages, including the difference in value between the vehicles as delivered and as warranted, incidental and consequential damages, and diminution in resale value.

## **<u>COUNT V</u>**

### **Unjust Enrichment**

### **(Plaintiff Bodney Individually and on behalf of the California Class)**

289. Plaintiff Carole Bodney ("Plaintiff" for purposes of the California Class) incorporates and realleges each preceding paragraph as though fully set forth herein.

290. Plaintiff brings this Count individually and on behalf of the other members of the California Class who purchased or leased Class Vehicles in the state of California (the "Class," for purposes of this Count).

291. Plaintiff and the other members of the California Class conferred a benefit on Honda by leasing or purchasing the Class Vehicles. Honda was and should have been reasonably expected to provide Class Vehicles free from the Defect.

292. Honda unjustly profited from the lease and sale of the Class Vehicles at inflated prices as a result of their false representations, omissions, and concealment of the Defect in the Class Vehicles.

293. As a proximate result of Honda's false representations, omissions, and concealment of the Defect in the Class Vehicles, and as a result of Honda's ill-gotten gains, benefits and profits, Honda has been unjustly enriched at the expense of Plaintiff and the other California Class Members. It would be inequitable for Honda to retain their ill-gotten profits without paying the value thereof to Plaintiff and the other California Class Members.

294. There is a direct relationship between Honda on the one hand, Plaintiff and the other California Class Members on the other, sufficient to support a claim for unjust enrichment. Honda failed to disclose the Defect to improve retail sales, which in turn improved wholesale sales. Conversely, Honda knew that disclosure of the Defect would suppress retail and wholesale sales of the Class Vehicles, suppress leasing of the Class Vehicles, and would negatively impact the reputation of Honda's brand among Plaintiff and the other California Class Members. Honda also knew its concealment and suppression of the Defect would discourage Plaintiffs and the other California Class Members from seeking replacement or repair concerning the Defect, thereby increasing profits and/or avoiding the cost of such replacement or repairs.

295. Plaintiff and the other California Class Members are entitled to restitution of the amount of Honda's ill-gotten gains, benefits and profits, including interest, resulting from their unlawful, unjust and inequitable conduct.

296. Plaintiff and the other California Class Members seek an order requiring Honda to disgorge their gains and profits to Plaintiff and the other California Class Members, together with interest, in a manner to be determined by the Court.

**C. Claims Brought on Behalf of the Georgia Class**

**COUNT VI**

**Violation of the Georgia Fair Business Practices Act**

**(Ga. Code Ann. §§ 10-1-390, *et seq*.)**

**(Plaintiff Salloway Individually and on behalf of the Georgia Class)**

297. Plaintiff Michael Salloway ("Plaintiff" for purposes of this Count) incorporates by reference each preceding paragraph as though fully set forth herein.

298. Plaintiff brings this Count individually and on behalf of the other members of the Georgia Class who purchased or leased Class Vehicles in the state of Georgia (the "Class," for purposes of this Count).

299. Plaintiff and Class members are "consumers" and Honda engaged in "trade or commerce" within the meaning of the Georgia Fair Business Practices Act ("GFBPA"), GA Code §§ 10-1-392(a)(6) and (28).

300. HML and AHM are a "person" as defined by GA Code § 10-1-392(a)(24).

301. The GFBPA prohibits "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce[.]" GA Code § 10-1-393(a). This includes, but is not limited to, "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have," "[r]epresenting that goods or services are of a particular standard, quality, or grade … if they are of another," and "[a]dvertising goods or services with intent not to sell them as advertised." *Id.* § 10-1-393(b)(5), (7), and (9). By concealing the Defect in the

Class Vehicles, Honda participated in unfair and deceptive trade practices that violated the GFBPA as described herein.

302. Honda's unfair and deceptive acts or practices occurred repeatedly in Honda's trade or business, were capable of deceiving a substantial portion of the purchasing public and imposed a serious safety risk on the public.

303. Honda knew that the Class Vehicles' starting system suffered from an inherent defect, were defectively designed or manufactured, and were not suitable for their intended use.

304. Honda intended for Plaintiff and Class members to rely on Honda's omissions regarding the Defect.

305. Plaintiff and Class Members justifiably acted or relied to their detriment upon Honda's omissions of fact concerning the above-described Defect, as evidenced by Plaintiff's and Class members' purchases and leases of Class Vehicles.

306. Honda was under a duty to Plaintiff and the other Class Members to disclose the defective nature of the Class Vehicles' starting systems because: a) Honda was in a superior position to know the true state of facts about the safety defect contained in the Class Vehicles' starting system; b) Plaintiff and the other Class Members could not reasonably have been expected to learn or discover that their starting system has a dangerous safety defect until after they purchased the Class Vehicles; and c) Honda knew that Plaintiff and the other Class Members could not reasonably have been expected to learn about or discover the Defect.

307. By failing to disclose the Defect, Honda knowingly and intentionally concealed material facts and breached their duty not to do so.

308. The facts concealed or not disclosed by Honda to Plaintiff and the other Class Members are material because a reasonable consumer would have considered them to be important in deciding whether to purchase the Class Vehicles, or to pay less for them. Had Plaintiff and the other Class Members

known that the Class Vehicles' starting system is defective, they would not have purchased the Class Vehicles or would have paid less for them.

309. Plaintiff and the other Class Members are reasonable consumers who do not expect that their vehicles will suffer from the Defect. That is the reasonable and objective consumer expectation for vehicles.

310. Had Honda disclosed all material information regarding the Defect to Plaintiff and Class members, Plaintiff and Class members would not have purchased or leased Class Vehicles or would have paid less to do so.

311. Honda's omissions have deceived Plaintiff, and those same business practices have deceived or are likely to deceive members of the consuming public and the other members of the Class.

312. In addition to being deceptive, the business practices of Honda were unfair because Honda knowingly sold Plaintiff and Class members vehicles with starting systems that are essentially unusable for the purposes for which they were sold. The injuries to Plaintiff and Class members are substantial and greatly outweigh any alleged countervailing benefit to Plaintiff and Class members or to competition under all of the circumstances. Moreover, in light of Honda's exclusive knowledge of the Defect, the injury is not one that Plaintiff and Class members could have reasonably avoided.

313. As a direct and proximate result of Honda's unfair and deceptive trade practices, Plaintiff and Class members have suffered ascertainable loss and actual damages. Plaintiff and Class members who purchased or leased the Class Vehicles would not have purchased or leased the Class Vehicles, or, alternatively, would have paid less for them had the truth about the Defect been disclosed. Plaintiff and Class members have also suffered ascertainable loss and actual damages related to the Defect recall. Plaintiff and Class members are entitled to recover actual damages, attorneys' fees and costs, and all other relief allowable by law.

314. As described above, Honda was provided pre-suit notice of the Defect, and as such has been afforded a reasonable opportunity to cure their unfair and deceptive practices.

315. Pursuant to GA Code §§ 10-1399(a) and (d), Plaintiff and the Class seek a Court order enjoining the above-described wrongful acts and practices of Honda, for damages, attorneys' fees and costs, and any other relief the Court deems proper.

**COUNT VII**

**Breach of Express Warranty**

**(Ga. Code Ann. §§ 11-2-313 and 11-2A-210)**

**(Plaintiff Salloway Individually and on behalf of the Georgia Class)**

316. Plaintiff Michael Salloway ("Plaintiff" for purposes of the Georgia Class) incorporates and realleges each preceding paragraph as though fully set forth herein.

317. Plaintiff brings this Count individually and on behalf of the other members of the Georgia Class who purchased or leased Class Vehicles in the state of Georgia (the "Class," for purposes of this Count).

318. Plaintiff and the other Georgia Class Members purchased or leased the Class Vehicles from Defendants by and through their authorized agents for retail sale or were otherwise expected to be the eventual purchasers or lessees of the Class Vehicles. At all relevant times, Honda was the manufacturer, distributor, warrantor, and/or seller of the Class Vehicles and knew or had reason to know of the particular purpose for which the Class Vehicles were purchased or leased.

319. Honda is and was at all relevant times a "merchant" and "seller" within the meaning of GA Code §§ 11-2-103(1)(d), 11-2-104(1), and § 11-2A-103(1)(t).

320. With respect to leases, Defendants are and were at all relevant times "lessors" within the meaning of GA Code § 11-2A-103(1)(p).

321. The Class Vehicles are and were at all relevant times "goods" within the meaning of GA Code §§ 11-2-105(1) and 11-2A-103(h).

322. In connection with the purchase or lease of each of the Class Vehicles, Honda provides warranty coverage for the Class Vehicles under one or more manufacturer's warranties. Under these warranties, Honda promised to repair or replace defective starting systems and its components free of charge if they failed due to defects in materials or workmanship.

323. These affirmations of fact, promises, and undertakings constitute express warranties within the meaning of GA Code §§ 11-2-313 and 11-2A-210 and became part of the basis of the bargain between Honda and Plaintiff and the other Class Members.

324. Honda breached the express warranties because the Class Vehicles were sold and leased with defective starting systems that cause sudden stalling and complete shutdown of the vehicle engine. Despite its warranties, Honda has refused and/or failed to repair the Defect or provide an effective remedy.

325. By failing to disclose the Defect and refusing to provide an effective repair, Honda deprived Plaintiff and the Class Members of the benefit of their bargain and breached the express warranties promising to correct defects in materials or workmanship.

326. Plaintiff and the California Class Members performed all conditions precedent under the contract between the parties.

327. As described above, Honda was provided pre-suit notice of the Defect, and as such have been afforded a reasonable opportunity to cure their breach of written warranties. Any additional time to do so would be unnecessary and futile because Honda has known of and concealed the Defect and, on information and belief, has refused to repair or replace necessary components despite the Defect's existence at the time of sale or lease of the Class Vehicles.

328. Alternatively, Plaintiff and Class Members were excused from providing Honda with notice and an opportunity to cure the breach of warranty because it would have been futile. Honda still has not provided an adequate remedy to address the Defect.

329. Honda is in privity with Plaintiff and members of the Georgia Class. Plaintiff and Georgia Class Members, not the dealers, were the intended beneficiaries of the Class Vehicles and the associated written warranties. Honda designed and manufactured the Class Vehicles, and created the advertising, marketing, and representations at issue and warranted the Class Vehicles to Plaintiff and members of the Class, either directly or through authorized agents. Purchase or lease through authorized dealers is sufficient to create privity because such authorized sellers act as Honda's agents for the purpose of the sale and lease of the Class Vehicles. Further, Honda knew the identity, purpose and requirements of Plaintiff and members of the Georgia Class and designed, manufactured and marketed the Class Vehicles to meet their requirements.

330. Honda's breach was willful and knowing. Honda knew that the Defect existed at the time of sale and that their purported repairs were ineffective but nevertheless continued to sell and lease Class Vehicles while representing them as defect-free.

331. As a direct and proximate result of Honda's breach of express warranties, Plaintiff and the other Georgia Class Members have suffered damages, including the diminished value of their vehicles, out-of-pocket repair costs, and loss of use.

332. Because of Honda's breach of express warranty as set forth herein, Plaintiff and the other members of the Georgia Class assert, as additional and/or alternative remedies pursuant to GA Code §§ 11-2-608 and 11-2A-517, revocation of acceptance and restitution of all purchase or lease payments, together with incidental and consequential damages as permitted by law.

**COUNT VIII**

**Breach of Implied Warranty of Merchantability**

**(Ga. Code Ann. §§ 11-2-314 and 11-2A-212)**

**(Plaintiff Salloway Individually and on behalf of the Georgia Class)**

333. Plaintiff Michael Salloway ("Plaintiff" for purposes of the Georgia Class) incorporates and realleges each preceding paragraph as though fully set forth herein.

334. Plaintiff brings this Count individually and on behalf of the other members of the Georgia Class who purchased or leased Class Vehicles in the state of Georgia (the "Class," for purposes of this Count).

335. Plaintiff and the other Georgia Class Members purchased or leased the Class Vehicles from Honda by and through its authorized agents for retail sales or were otherwise expected to be the eventual purchasers of the Class Vehicles when bought from a third party. At all relevant times, Honda was the manufacturer, distributor, warrantor, and/or seller of Class Vehicles. Honda knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased.

336. Honda is and was at all relevant times a "merchant" and "seller" within the meaning of GA Code §§ 11-2-103(1)(d), 11-2-104(1), and § 11-2A-103(1)(t).

337. With respect to leases, Defendants are and were at all relevant times "lessors" within the meaning of GA Code § 11-2A-103(1)(p).

338. The Class Vehicles are and were at all relevant times "goods" within the meaning of GA Code §§ 11-2-105(1) and 11-2A-103(h).

339. Under GA Code §§ 11-2-314 and 11-2A-212, every sale of consumer goods carries with it an implied warranty that the goods are merchantable and fit for the ordinary purposes for which such goods are used, including safe and reliable transportation.

340. Honda impliedly warranted that the Class Vehicles were of merchantable quality and fit for the ordinary purposes for which vehicles are used, would pass without objection in the trade, and would conform to the promises or affirmations made on their labels, marketing and warranties.

341. The Class Vehicles, when sold and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which cars are used.

342. In fact, the Class Vehicles were sold and leased with defective starting systems that cause sudden loss of acceleration and power while the vehicle is in operation. Because of this Defect, the Class Vehicles were not of merchantable quality, were unfit for their ordinary purpose, and failed to conform to the promises and affirmations made by Defendants.

343. Honda knew or had reason to know that Plaintiff and Class Members would use, consume, or be affected by the Class Vehicles.

344. Because of the Defect, the Class Vehicles were not in merchantable condition when sold and are not fit for the ordinary purpose of providing safe and reliable transportation.

345. The Defect substantially impairs the use, value, and safety of the Class Vehicles. As such, the vehicles would not pass without objection in the trade and would not be accepted by a reasonable consumer if the Defect were disclosed.

346. At the time of sale or lease, Honda knew or should have known that the Class Vehicles were defective and not in merchantable condition, yet they failed to disclose the defect and refused to provide a permanent or adequate repair.

347. Plaintiff and the Class Members performed all conditions precedent under the contract between the parties.

348. Honda is in privity with Plaintiff and the Class Members because Honda and its authorized dealers were part of a single distributive chain, and the retail transactions were made pursuant to Honda's express and implied warranties.

Plaintiff and the Class Members were the intended beneficiaries of those transactions and of the implied warranties arising therefrom.

349. As described above, Honda was provided pre-suit notice of the Defect, and as such has been afforded a reasonable opportunity to cure its breach of written warranties. Any additional time to do so would be unnecessary and futile because Honda has known of and concealed the Defect and, on information and belief, has refused to repair or replace the necessary components free of charge despite the Defect's existence at the time of sale or lease of the Class Vehicles.

350. Honda's breach of implied warranty affected all Class Vehicles uniformly and constitutes a continuing course of conduct.

351. As a direct and proximate result of Honda's breach of implied warranty, Plaintiff and the Class Members have suffered damages, including the difference in value between the Class Vehicles as delivered and as warranted, incidental and consequential damages, and diminution in resale value.

## COUNT IX

### Unjust Enrichment

### (Plaintiff Salloway Individually and on behalf of the Georgia Class)

352. Plaintiff Michael Salloway ("Plaintiff" for purposes of the Georgia Class) incorporates and realleges each preceding paragraph as though fully set forth herein.

353. Plaintiff brings this Count individually and on behalf of the other members of the Georgia Class who purchased or leased Class Vehicles in the state of Georgia (the "Class," for purposes of this Count).

354. Plaintiff and the other members of the Georgia Class conferred a benefit on Honda by leasing or purchasing the Class Vehicles. Honda was and should have been reasonably expected to provide Class Vehicles free from the Defect.

355. Plaintiffs and Class Members unknowingly conferred a benefit on Honda of which Honda had knowledge, since Honda was aware of but failed to disclose the Defect and misled Plaintiffs and Class Members regarding the nature and quality of the subject Class Vehicles while profiting from this deception.

356. Honda unjustly profited from the lease and sale of the Class Vehicles at inflated prices as a result of their false representations, omissions, and concealment of the Defect in the Class Vehicles.

357. As a proximate result of Honda's false representations, omissions, and concealment of the Defect in the Class Vehicles, and as a result of Honda's ill-gotten gains, benefits and profits, Honda has been unjustly enriched at the expense of Plaintiff and the other Georgia Class Members. It would be inequitable for Honda to retain their ill-gotten profits without paying the value thereof to Plaintiff and the other Georgia Class Members.

358. There is a direct relationship between Honda on the one hand, Plaintiff and the other Georgia Class Members on the other, sufficient to support a claim for unjust enrichment. Honda failed to disclose the Defect to improve retail sales, which in turn improved wholesale sales. Conversely, Honda knew that disclosure of the Defect would suppress retail and wholesale sales of the Class Vehicles, suppress leasing of the Class Vehicles, and would negatively impact the reputation of Honda's brand among Plaintiff and the other Georgia Class Members. Honda also knew its concealment and suppression of the Defect would discourage Plaintiffs and the other Georgia Class Members from seeking replacement or repair concerning the Defect, thereby increasing profits and/or avoiding the cost of such replacement or repairs.

359. Plaintiff and the other Georgia Class Members are entitled to restitution of the amount of Honda's ill-gotten gains, benefits and profits, including interest, resulting from their unlawful, unjust and inequitable conduct.

360. Plaintiff and the other Georgia Class Members seek an order requiring Honda to disgorge their gains and profits to Plaintiff and the other Georgia Class Members, together with interest, in a manner to be determined by the Court.

## D. Claims Brought on Behalf of the North Carolina Class

## COUNT X

### Violation of North Carolina Unfair and Deceptive Acts and Practices Act (N.C. Gen. Stat. §§ 75-1.1, *et seq.*)

### (Plaintiff Miller Individually and on behalf of North Carolina Class)

361. Plaintiff Tabor Miller ("Plaintiff" for purposes of the North Carolina Class) incorporates and realleges each preceding paragraph as though fully set forth herein.

362. Plaintiff brings this Count individually and on behalf of the other members of the North Carolina Class who purchased or leased Class Vehicles in the state of North Carolina (the "Class," for purposes of this Count).

363. Honda engaged in "commerce" and in "competition in or affecting commerce" within the meaning of the North Carolina Unfair and Deceptive Acts and Practices Act ("North Carolina UDTPA"), N.C. Gen. Stat. §§ 75-1-1(a) and (b).

364. The North Carolina UDTPA broadly prohibits "unfair or deceptive acts or practices in or affecting commerce." N.C. Gen. Stat. § 75-1.1(a). By concealing the Defect in the Class Vehicles, Honda participated in unfair and deceptive trade practices that violated the North Carolina UDTPA as described herein.

365. Honda's unfair and deceptive acts or practices occurred repeatedly in Honda's trade or business, were capable of deceiving a substantial portion of the purchasing public and imposed a serious safety risk on the public.

366. Honda knew that the Class Vehicles' starting system suffered from an inherent defect, were defectively designed or manufactured, and were not suitable for their intended use.

367. Honda intended for Plaintiff and Class members to rely on Honda's omissions regarding the Defect.

368. Plaintiff and Class Members justifiably acted or relied to their detriment upon Honda's omissions of fact concerning the above-described Defect, as evidenced by Plaintiff's and Class members' purchases and leases of Class Vehicles.

369. Honda was under a duty to Plaintiff and the other Class Members to disclose the defective nature of the Class Vehicles' starting systems because: a) Honda was in a superior position to know the true state of facts about the safety defect contained in the Class Vehicles' starting system; b) Plaintiff and the other Class Members could not reasonably have been expected to learn or discover that their starting system has a dangerous safety defect until after they purchased the Class Vehicles; and c) Honda knew that Plaintiff and the other Class Members could not reasonably have been expected to learn about or discover the Defect.

370. By failing to disclose the Defect, Honda knowingly and intentionally concealed material facts and breached their duty not to do so.

371. The facts concealed or not disclosed by Honda to Plaintiff and the other Class Members are material because a reasonable consumer would have considered them to be important in deciding whether to purchase the Class Vehicles, or to pay less for them. Had Plaintiff and the other Class Members known that the Class Vehicles' starting system is defective, they would not have purchased the Class Vehicles or would have paid less for them.

372. Plaintiff and the other Class Members are reasonable consumers who do not expect that their vehicles will suffer from the Defect. That is the reasonable and objective consumer expectation for vehicles.

373. Had Honda disclosed all material information regarding the Defect to Plaintiff and Class members, Plaintiff and Class members would not have purchased or leased Class Vehicles or would have paid less to do so.

374. Honda's omissions have deceived Plaintiff, and those same business practices have deceived or are likely to deceive members of the consuming public and the other members of the Class.

375. In addition to being deceptive, the business practices of Honda were unfair because Honda knowingly sold Plaintiff and Class members vehicles with starting systems that are essentially unusable for the purposes for which they were sold. The injuries to Plaintiff and Class members are substantial and greatly outweigh any alleged countervailing benefit to Plaintiff and Class members or to competition under all of the circumstances. Moreover, in light of Honda's exclusive knowledge of the Defect, the injury is not one that Plaintiff and Class members could have reasonably avoided.

376. As a direct and proximate result of Honda's unfair and deceptive trade practices, Plaintiff and Class members have suffered ascertainable loss and actual damages. Plaintiff and Class members who purchased or leased the Class Vehicles would not have purchased or leased the Class Vehicles, or, alternatively, would have paid less for them had the truth about the Defect been disclosed. Plaintiff and Class members have also suffered ascertainable loss and actual damages related to the Defect recall. Plaintiff and Class members are entitled to recover actual damages, attorneys' fees and costs, and all other relief allowable by law.

## COUNT XI

## Breach of Express Warranty

## (N.C. Gen. Stat. §§ 25-2-313 and 25-2A-210)

## (Plaintiff Miller Individually and on behalf of North Carolina Class)

377. Plaintiff Tabor Miller ("Plaintiff" for purposes of the North Carolina Class) incorporates and realleges each preceding paragraph as though fully set

forth herein.

378. Plaintiff brings this Count individually and on behalf of the other members of the North Carolina Class who purchased or leased Class Vehicles in the state of North Carolina (the "Class," for purposes of this Count).

379. Plaintiff and the other North Carolina Class Members purchased or leased the Class Vehicles from Defendants by and through their authorized agents for retail sale or were otherwise expected to be the eventual purchasers or lessees of the Class Vehicles. At all relevant times, Honda was the manufacturer, distributor, warrantor, and/or seller of the Class Vehicles and knew or had reason to know of the particular purpose for which the Class Vehicles were purchased or leased.

380. Honda is and was at all relevant times a "merchant" and "seller" within the meaning of N.C. Gen. Stat. §§ 25-2-104, 25-2-103(a)(34) and §§ 25-2A-103(a)(35) and (46).

381. With respect to leases, Defendants are and were at all relevant times "lessors" within the meaning of N.C. Gen. Stat. § 25-2A-103.

382. The Class Vehicles are and were at all relevant times "goods" within the meaning of N.C. Gen. Stat. §§ 25-2-105(a) and 25-2A-103(a)(21).

383. In connection with the purchase or lease of each of the Class Vehicles, Honda provides warranty coverage for the Class Vehicles under one or more manufacturer's warranties. Under these warranties, Honda promised to repair or replace defective starting systems and its components free of charge if they failed due to defects in materials or workmanship.

384. These affirmations of fact, promises, and undertakings constitute express warranties within the meaning of N.C. Gen. Stat. §§ 25-2-313 and 25-2A-210 and became part of the basis of the bargain between Honda and Plaintiff and the other Class Members.

385. Honda breached the express warranties because the Class Vehicles were sold and leased with defective starting systems that cause sudden stalling and complete shutdown of the vehicle engine. Despite its warranties, Honda has refused and/or failed to repair the Defect or provide an effective remedy.

386. By failing to disclose the Defect and refusing to provide an effective repair, Honda deprived Plaintiff and the Class Members of the benefit of their bargain and breached the express warranties promising to correct defects in materials or workmanship.

387. Plaintiff and the California Class Members performed all conditions precedent under the contract between the parties.

388. As described above, Honda was provided pre-suit notice of the Defect, and as such have been afforded a reasonable opportunity to cure their breach of written warranties. Any additional time to do so would be unnecessary and futile because Honda has known of and concealed the Defect and, on information and belief, has refused to repair or replace necessary components despite the Defect's existence at the time of sale or lease of the Class Vehicles.

389. Alternatively, Plaintiff and Class Members were excused from providing Honda with notice and an opportunity to cure the breach of warranty because it would have been futile. Honda still has not provided an adequate remedy to address the Defect.

390. Honda is in privity with Plaintiff and members of the North Carolina Class. Plaintiff and North Carolina Class Members, not the dealers, were the intended beneficiaries of the Class Vehicles and the associated written warranties. Honda designed and manufactured the Class Vehicles, and created the advertising, marketing, and representations at issue and warranted the Class Vehicles to Plaintiff and members of the Class, either directly or through authorized agents. Purchase or lease through authorized dealers is sufficient to create privity because such authorized sellers act as Honda's agents for the purpose of the sale and lease

of the Class Vehicles. Further, Honda knew the identity, purpose and requirements of Plaintiff and members of the North Carolina Class and designed, manufactured and marketed the Class Vehicles to meet their requirements.

391. Honda's breach was willful and knowing. Honda knew that the Defect existed at the time of sale and that their purported repairs were ineffective but nevertheless continued to sell and lease Class Vehicles while representing them as defect-free.

392. As a direct and proximate result of Honda's breach of express warranties, Plaintiff and the other North Carolina Class Members have suffered damages, including the diminished value of their vehicles, out-of-pocket repair costs, and loss of use.

393. Because of Honda's breach of express warranty as set forth herein, Plaintiff and the other members of the North Carolina Class assert, as additional and/or alternative remedies pursuant to N.C. Gen. Stat. §§ 25-2-608 and 25-2A-517, revocation of acceptance and restitution of all purchase or lease payments, together with incidental and consequential damages as permitted by law.

**COUNT XII**

**Breach of Implied Warranty of Merchantability**

**(N.C. Gen. Stat. §§ 25-2-314 and 25-2A-212)**

**(Plaintiff Miller Individually and on behalf of North Carolina Class)**

394. Plaintiff Tabor Miller ("Plaintiff" for purposes of the North Carolina Class) incorporates and realleges each preceding paragraph as though fully set forth herein.

395. Plaintiff brings this Count individually and on behalf of the other members of the North Carolina Class who purchased or leased Class Vehicles in the state of North Carolina (the "Class," for purposes of this Count).

396. Plaintiff and the other North Carolina Class Members purchased or leased the Class Vehicles from Honda by and through its authorized agents for

retail sales or were otherwise expected to be the eventual purchasers of the Class Vehicles when bought from a third party. At all relevant times, Honda was the manufacturer, distributor, warrantor, and/or seller of Class Vehicles. Honda knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased.

397. Honda is and was at all relevant times a "merchant" and "seller" within the meaning of N.C. Gen. Stat. §§ 25-2-104, 25-2-103(a)(34) and §§ 25-2A-103(a)(35) and (46).

398. With respect to leases, Defendants are and were at all relevant times "lessors" within the meaning of N.C. Gen. Stat. § 25-2A-103.

399. The Class Vehicles are and were at all relevant times "goods" within the meaning of N.C. Gen. Stat. §§ 25-2-105(a) and 25-2A-103(a)(21).

400. Under N.C. Gen. Stat. §§ 25-2-314 and 25-2A-212, every sale of consumer goods carries with it an implied warranty that the goods are merchantable and fit for the ordinary purposes for which such goods are used, including safe and reliable transportation.

401. Honda impliedly warranted that the Class Vehicles were of merchantable quality and fit for the ordinary purposes for which vehicles are used, would pass without objection in the trade, and would conform to the promises or affirmations made on their labels, marketing and warranties.

402. The Class Vehicles, when sold and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which cars are used.

403. In fact, the Class Vehicles were sold and leased with defective starting systems that cause sudden loss of acceleration and power while the vehicle is in operation. Because of this Defect, the Class Vehicles were not of merchantable quality, were unfit for their ordinary purpose, and failed to conform to the promises and affirmations made by Defendants.

404. Honda knew or had reason to know that Plaintiff and Class Members would use, consume, or be affected by the Class Vehicles.

405. Because of the Defect, the Class Vehicles were not in merchantable condition when sold and are not fit for the ordinary purpose of providing safe and reliable transportation.

406. The Defect substantially impairs the use, value, and safety of the Class Vehicles. As such, the vehicles would not pass without objection in the trade and would not be accepted by a reasonable consumer if the Defect were disclosed.

407. At the time of sale or lease, Honda knew or should have known that the Class Vehicles were defective and not in merchantable condition, yet they failed to disclose the defect and refused to provide a permanent or adequate repair.

408. Plaintiff and the Class Members performed all conditions precedent under the contract between the parties.

409. Honda is in privity with Plaintiff and the Class Members because Honda and its authorized dealers were part of a single distributive chain, and the retail transactions were made pursuant to Honda's express and implied warranties. Plaintiff and the Class Members were the intended beneficiaries of those transactions and of the implied warranties arising therefrom.

410. As described above, Honda was provided pre-suit notice of the Defect, and as such has been afforded a reasonable opportunity to cure its breach of written warranties. Any additional time to do so would be unnecessary and futile because Honda has known of and concealed the Defect and, on information and belief, has refused to repair or replace the necessary components free of charge despite the Defect's existence at the time of sale or lease of the Class Vehicles.

411. Honda's breach of implied warranty affected all Class Vehicles uniformly and constitutes a continuing course of conduct.

412. As a direct and proximate result of Honda's breach of implied warranty, Plaintiff and the Class Members have suffered damages, including the

difference in value between the Class Vehicles as delivered and as warranted, incidental and consequential damages, and diminution in resale value.

**COUNT XIII**

**Unjust Enrichment**

**(Plaintiff Miller Individually and on behalf of North Carolina Class)**

413. Plaintiff Tabor Miller ("Plaintiff" for purposes of the North Carolina Class) incorporates and realleges each preceding paragraph as though fully set forth herein.

414. Plaintiff brings this Count individually and on behalf of the other members of the North Carolina Class who purchased or leased Class Vehicles in the state of North Carolina (the "Class," for purposes of this Count).

415. Plaintiff and the other members of the North Carolina Class conferred a measurable benefit on Honda by leasing or purchasing the Class Vehicles, which benefit was not conferred officiously or gratuitously. Honda consciously accepted this benefit. Honda was and should have been reasonably expected to provide Class Vehicles free from the Defect.

416. Plaintiffs and Class Members unknowingly conferred a benefit on Honda of which Honda had knowledge, since Honda was aware of but failed to disclose the Defect and misled Plaintiffs and Class Members regarding the nature and quality of the subject Class Vehicles while profiting from this deception.

417. Honda unjustly profited from the lease and sale of the Class Vehicles at inflated prices as a result of their false representations, omissions, and concealment of the Defect in the Class Vehicles.

418. As a proximate result of Honda's false representations, omissions, and concealment of the Defect in the Class Vehicles, and as a result of Honda's ill-gotten gains, benefits and profits, Honda has been unjustly enriched at the expense of Plaintiff and the other North Carolina Class Members. It would be

inequitable for Honda to retain their ill-gotten profits without paying the value thereof to Plaintiff and the other North Carolina Class Members.

419. There is a direct relationship between Honda on the one hand, Plaintiff and the other North Carolina Class Members on the other, sufficient to support a claim for unjust enrichment. Honda failed to disclose the Defect to improve retail sales, which in turn improved wholesale sales. Conversely, Honda knew that disclosure of the Defect would suppress retail and wholesale sales of the Class Vehicles, suppress leasing of the Class Vehicles, and would negatively impact the reputation of Honda's brand among Plaintiff and the other North Carolina Class Members. Honda also knew its concealment and suppression of the Defect would discourage Plaintiffs and the other North Carolina Class Members from seeking replacement or repair concerning the Defect, thereby increasing profits and/or avoiding the cost of such replacement or repairs.

420. Plaintiff and the other North Carolina Class Members are entitled to restitution of the amount of Honda's ill-gotten gains, benefits and profits, including interest, resulting from their unlawful, unjust and inequitable conduct.

421. Plaintiff and the other North Carolina Class Members seek an order requiring Honda to disgorge their gains and profits to Plaintiff and the other North Carolina Class Members, together with interest, in a manner to be determined by the Court.

## E. Claims Brought on Behalf of the New York Class

### COUNT XIV

### Violation of the New York General Business Law §§ 349 and 350

### (N.Y. Gen. Bus. Law §§ 349 and 350, *et seq.*)

### (Plaintiff Wood Individually and on behalf of the New York Class)

422. Plaintiff Carol Wood ("Plaintiff" for purposes of this Count) incorporates by reference each preceding paragraph as though fully set forth herein.

423. Plaintiff brings this Count individually and on behalf of the other members of the New York Class who purchased or leased Class Vehicles in the state of New York (the "Class," for purposes of this Count).

424. New York General Business Law ("NYGBL") section 349 broadly prohibits "[u]nfair, deceptive, or abusive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service" in the State.

425. Section 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service."

426. False advertising includes "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect," taking into account "the extent to which the advertising fails to reveal facts material in light of such representations [made] with respect to the commodity …." NYGBL § 350-A.1. By falsely marketing the characteristics of the Class Vehicles, and failing to reveal the Defect, Honda violated NYGBL section 350.

427. Honda's unfair and deceptive acts or practices occurred repeatedly in Honda's trade or business, were capable of deceiving a substantial portion of the purchasing public and imposed a serious safety risk on the public.

428. Honda knew that the Class Vehicles' starting system suffered from an inherent defect, were defectively designed or manufactured, and were not suitable for their intended use.

429. Honda intended for Plaintiff and Class members to rely on Honda's omissions regarding the Defect.

430. Plaintiff and Class Members justifiably acted or relied to their detriment upon Honda's omissions of fact concerning the above-described Defect, as evidenced by Plaintiff's and Class members' purchases and leases of Class Vehicles.

431. Honda was under a duty to Plaintiff and the other Class Members to disclose the defective nature of the Class Vehicles' starting systems because: a)

Honda was in a superior position to know the true state of facts about the safety defect contained in the Class Vehicles' starting system; b) Plaintiff and the other Class Members could not reasonably have been expected to learn or discover that their starting system has a dangerous safety defect until after they purchased the Class Vehicles; and c) Honda knew that Plaintiff and the other Class Members could not reasonably have been expected to learn about or discover the Defect.

432. By failing to disclose the Defect, Honda knowingly and intentionally concealed material facts and breached their duty not to do so.

433. The facts concealed or not disclosed by Honda to Plaintiff and the other Class Members are material because a reasonable consumer would have considered them to be important in deciding whether to purchase the Class Vehicles, or to pay less for them. Had Plaintiff and the other Class Members known that the Class Vehicles' starting system is defective, they would not have purchased the Class Vehicles or would have paid less for them.

434. Plaintiff and the other Class Members are reasonable consumers who do not expect that their vehicles will suffer from the Defect. That is the reasonable and objective consumer expectation for vehicles.

435. Had Honda disclosed all material information regarding the Defect to Plaintiff and Class members, Plaintiff and Class members would not have purchased or leased Class Vehicles or would have paid less to do so.

436. Honda's omissions have deceived Plaintiff, and those same business practices have deceived or are likely to deceive members of the consuming public and the other members of the Class.

437. In addition to being deceptive, the business practices of Honda were unfair because Honda knowingly sold Plaintiff and Class members vehicles with starting systems that are essentially unusable for the purposes for which they were sold. The injuries to Plaintiff and Class members are substantial and greatly outweigh any alleged countervailing benefit to Plaintiff and Class members or to

competition under all of the circumstances. Moreover, in light of Honda's exclusive knowledge of the Defect, the injury is not one that Plaintiff and Class members could have reasonably avoided.

438. As a direct and proximate result of Honda's unfair and deceptive trade practices, Plaintiff and Class members have suffered ascertainable loss and actual damages. Plaintiff and Class members who purchased or leased the Class Vehicles would not have purchased or leased the Class Vehicles, or, alternatively, would have paid less for them had the truth about the Defect been disclosed. Plaintiff and Class members have also suffered ascertainable loss and actual damages related to the Defect recall. Plaintiff and Class members are entitled to recover actual damages, attorneys' fees and costs, and all other relief allowable by law.

## COUNT XV

### Breach of Express Warranty

### (N.Y. U.C.C. §§ 2-313 and 2-A-210)

### (Plaintiff Wood Individually and on behalf of the New York Class)

439. Plaintiff Carol Wood ("Plaintiff" for purposes of the New York Class) incorporates and realleges each preceding paragraph as though fully set forth herein.

440. Plaintiff brings this Count individually and on behalf of the other members of the New York Class who purchased or leased Class Vehicles in the state of New York (the "Class," for purposes of this Count).

441. Plaintiff and the other New York Class Members purchased or leased the Class Vehicles from Defendants by and through their authorized agents for retail sale or were otherwise expected to be the eventual purchasers or lessees of the Class Vehicles. At all relevant times, Honda was the manufacturer, distributor, warrantor, and/or seller of the Class Vehicles and knew or had reason to know of the particular purpose for which the Class Vehicles were purchased or leased.

442. Honda is and was at all relevant times a "merchant" and "seller" within the meaning of N.Y. U.C.C. §§ 2-104(1) and 2-103(1)(d) and N.Y. U.C.C. § 2-A-103(1)(t) and (3).

443. With respect to leases, Defendants are and were at all relevant times "lessors" within the meaning of N.Y. U.C.C. § 2-A-103(1)(p).

444. The Class Vehicles are and were at all relevant times "goods" within the meaning of N.Y. U.C.C. §§ 2-105(1) and 2-A-103(1)(h).

445. In connection with the purchase or lease of each of the Class Vehicles, Honda provides warranty coverage for the Class Vehicles under one or more manufacturer's warranties. Under these warranties, Honda promised to repair or replace defective starting systems and its components free of charge if they failed due to defects in materials or workmanship.

446. These affirmations of fact, promises, and undertakings constitute express warranties within the meaning of N.Y. U.C.C. §§ 2-313 and 2-A-210 and became part of the basis of the bargain between Honda and Plaintiff and the other Class Members.

447. Honda breached the express warranties because the Class Vehicles were sold and leased with defective starting systems that cause sudden stalling and complete shutdown of the vehicle engine. Despite its warranties, Honda has refused and/or failed to repair the Defect or provide an effective remedy.

448. By failing to disclose the Defect and refusing to provide an effective repair, Honda deprived Plaintiff and the Class Members of the benefit of their bargain and breached the express warranties promising to correct defects in materials or workmanship.

449. Plaintiff and the New York Class Members performed all conditions precedent under the contract between the parties.

450. As described above, Honda was provided pre-suit notice of the Defect, and as such have been afforded a reasonable opportunity to cure their

breach of written warranties. Any additional time to do so would be unnecessary and futile because Honda has known of and concealed the Defect and, on information and belief, has refused to repair or replace necessary components despite the Defect's existence at the time of sale or lease of the Class Vehicles.

451. Alternatively, Plaintiff and Class Members were excused from providing Honda with notice and an opportunity to cure the breach of warranty because it would have been futile. Honda still has not provided an adequate remedy to address the Defect.

452. Honda is in privity with Plaintiff and members of the New York Class. Plaintiff and New York Class Members, not the dealers, were the intended beneficiaries of the Class Vehicles and the associated written warranties. Honda designed and manufactured the Class Vehicles, and created the advertising, marketing, and representations at issue and warranted the Class Vehicles to Plaintiff and members of the Class, either directly or through authorized agents. Purchase or lease through authorized dealers is sufficient to create privity because such authorized sellers act as Honda's agents for the purpose of the sale and lease of the Class Vehicles. Further, Honda knew the identity, purpose and requirements of Plaintiff and members of the New York Class and designed, manufactured and marketed the Class Vehicles to meet their requirements.

453. Honda's breach was willful and knowing. Honda knew that the Defect existed at the time of sale and that their purported repairs were ineffective but nevertheless continued to sell and lease Class Vehicles while representing them as defect-free.

454. As a direct and proximate result of Honda's breach of express warranties, Plaintiff and the other New York Class Members have suffered damages, including the diminished value of their vehicles, out-of-pocket repair costs, and loss of use.

455. Because of Honda's breach of express warranty as set forth herein, Plaintiff and the other members of the New York Class assert, as additional and/or alternative remedies pursuant to N.Y. U.C.C. §§ 2-608 and 2-A-517, revocation of acceptance and restitution of all purchase or lease payments, together with incidental and consequential damages as permitted by law.

**COUNT XVI**

**Breach of Implied Warranty of Merchantability**

**(N.Y. U.C.C. §§ 2-314 and 2-A-212)**

**(Plaintiff Wood Individually and on behalf of the New York Class)**

456. Plaintiff Carol Wood ("Plaintiff" for purposes of the New York Class) incorporates and realleges each preceding paragraph as though fully set forth herein.

457. Plaintiff brings this Count individually and on behalf of the other members of the New York Class who purchased or leased Class Vehicles in the state of New York (the "Class," for purposes of this Count).

458. Plaintiff and the other New York Class Members purchased or leased the Class Vehicles from Honda by and through its authorized agents for retail sales or were otherwise expected to be the eventual purchasers of the Class Vehicles when bought from a third party. At all relevant times, Honda was the manufacturer, distributor, warrantor, and/or seller of Class Vehicles. Honda knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased.

459. Honda is and was at all relevant times a "merchant" and "seller" within the meaning of N.Y. U.C.C. §§ 2-104(1) and 2-103(1)(d) and N.Y. U.C.C. § 2-A-103(1)(t) and (3).

460. With respect to leases, Defendants are and were at all relevant times "lessors" within the meaning of N.Y. U.C.C. § 2-A-103(1)(p).

461. The Class Vehicles are and were at all relevant times "goods" within the meaning of N.Y. U.C.C. §§ 2-105(1) and 2-A-103(1)(h).

462. Under N.Y. U.C.C. §§ 2-314 and 2-A-212, every sale of consumer goods carries with it an implied warranty that the goods are merchantable and fit for the ordinary purposes for which such goods are used, including safe and reliable transportation.

463. Honda impliedly warranted that the Class Vehicles were of merchantable quality and fit for the ordinary purposes for which vehicles are used, would pass without objection in the trade, and would conform to the promises or affirmations made on their labels, marketing and warranties.

464. The Class Vehicles, when sold and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which cars are used.

465. In fact, the Class Vehicles were sold and leased with defective starting systems that cause sudden loss of acceleration and power while the vehicle is in operation. Because of this Defect, the Class Vehicles were not of merchantable quality, were unfit for their ordinary purpose, and failed to conform to the promises and affirmations made by Defendants.

466. Honda knew or had reason to know that Plaintiff and Class Members would use, consume, or be affected by the Class Vehicles.

467. Because of the Defect, the Class Vehicles were not in merchantable condition when sold and are not fit for the ordinary purpose of providing safe and reliable transportation.

468. The Defect substantially impairs the use, value, and safety of the Class Vehicles. As such, the vehicles would not pass without objection in the trade and would not be accepted by a reasonable consumer if the Defect were disclosed.

469. At the time of sale or lease, Honda knew or should have known that the Class Vehicles were defective and not in merchantable condition, yet they failed to disclose the defect and refused to provide a permanent or adequate repair.

470. Plaintiff and the Class Members performed all conditions precedent under the contract between the parties.

471. Honda is in privity with Plaintiff and the Class Members because Honda and its authorized dealers were part of a single distributive chain, and the retail transactions were made pursuant to Honda's express and implied warranties. Plaintiff and the Class Members were the intended beneficiaries of those transactions and of the implied warranties arising therefrom.

472. As described above, Honda was provided pre-suit notice of the Defect, and as such has been afforded a reasonable opportunity to cure its breach of written warranties. Any additional time to do so would be unnecessary and futile because Honda has known of and concealed the Defect and, on information and belief, has refused to repair or replace the necessary components free of charge despite the Defect's existence at the time of sale or lease of the Class Vehicles.

473. Honda's breach of implied warranty affected all Class Vehicles uniformly and constitutes a continuing course of conduct.

474. As a direct and proximate result of Honda's breach of implied warranty, Plaintiff and the Class Members have suffered damages, including the difference in value between the Class Vehicles as delivered and as warranted, incidental and consequential damages, and diminution in resale value.

## **COUNT XVII**

### **Unjust Enrichment**

### **(Plaintiff Wood Individually and on behalf of the New York Class)**

475. Plaintiff Carol Wood ("Plaintiff" for purposes of the New York Class) incorporates and realleges each preceding paragraph as though fully set forth herein.

476. Plaintiff brings this Count individually and on behalf of the other members of the New York Class who purchased or leased Class Vehicles in the state of New York (the "Class," for purposes of this Count).

477. Plaintiff and the other members of the New York Class conferred a benefit on Honda by leasing or purchasing the Class Vehicles. Honda was and

should have been reasonably expected to provide Class Vehicles free from the Defect.

478. Plaintiffs and Class Members unknowingly conferred a benefit on Honda of which Honda had knowledge, since Honda was aware of but failed to disclose the Defect and misled Plaintiffs and Class Members regarding the nature and quality of the subject Class Vehicles while profiting from this deception.

479. Honda unjustly profited from the lease and sale of the Class Vehicles at inflated prices as a result of their false representations, omissions, and concealment of the Defect in the Class Vehicles.

480. As a proximate result of Honda's false representations, omissions, and concealment of the Defect in the Class Vehicles, and as a result of Honda's ill-gotten gains, benefits and profits, Honda has been unjustly enriched at the expense of Plaintiff and the other New York Class Members. It would be inequitable for Honda to retain their ill-gotten profits without paying the value thereof to Plaintiff and the other New York Class Members.

481. There is a direct relationship between Honda on the one hand, Plaintiff and the other New York Class Members on the other, sufficient to support a claim for unjust enrichment. Honda failed to disclose the Defect to improve retail sales, which in turn improved wholesale sales. Conversely, Honda knew that disclosure of the Defect would suppress retail and wholesale sales of the Class Vehicles, suppress leasing of the Class Vehicles, and would negatively impact the reputation of Honda's brand among Plaintiff and the other New York Class Members. Honda also knew its concealment and suppression of the Defect would discourage Plaintiffs and the other New York Class Members from seeking replacement or repair concerning the Defect, thereby increasing profits and/or avoiding the cost of such replacement or repairs.

482. Plaintiff and the other New York Class Members are entitled to restitution of the amount of Honda's ill-gotten gains, benefits and profits,

including interest, resulting from their unlawful, unjust and inequitable conduct.

483. Plaintiff and the other New York Class Members seek an order requiring Honda to disgorge their gains and profits to Plaintiff and the other New York Class Members, together with interest, in a manner to be determined by the Court.

**F. Claims Brought on Behalf of the Virginia Class**

**COUNT XVIII**

**Virginia Consumer Protection Act**

**Va. Code Ann. § 59.1-196, *et seq.***

**(Plaintiff Singh Individually and on Behalf of the Virginia Class)**

484. Plaintiff Mandeep Singh ("Plaintiff" for purposes of the Virginia Class) incorporates by reference each allegation as if fully set forth herein.

485. Plaintiff brings this Count individually and on behalf of the other members of the Virginia Class who purchased or leased Class Vehicles in the state of Virginia (the "Class," for purposes of this Count).

486. Honda, Plaintiff, and the other Virginia Class Members are "persons" within the meaning of Va. Code Ann. § 59.1-198.

487. In selling and leasing the Class Vehicles, Honda was engaged within a "consumer transaction" within the meaning of Va. Code Ann. § 59.1-198.

488. The VCPA prohibits any "deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction." Va. Code Ann. § 59.1-200.A.14.

489. The VCPA prohibits "[m]isrepresenting that goods or services are of a particular standard, quality, grade, style, or model." Va. Code Ann. § 59.1-200.A.6.

490. The VCPA prohibits "[a]dvertising or offering for sale goods that are . . ., defective, blemished, deteriorated, or reconditioned, . . . without clearly and unequivocally indicating in the advertisement or offer for sale that the goods are

. . . , defective, blemished, deteriorated, reconditioned . . .[.]" Va. Code Ann. § 59.1-200.A.7.

491. The VCPA prohibits "[a]dvertising goods or services with intent not to sell them as advertised, or with intent not to sell at the price or upon the terms advertised." Va. Code Ann. § 59.1-200.A.8.

492. By the conduct described in detail above and incorporated herein, Honda engaged in unfair or deceptive acts in violation of the VCPA.

493. Honda's unfair and deceptive acts or practices occurred repeatedly in Honda's trade or business, were capable of deceiving a substantial portion of the purchasing public and imposed a serious safety risk on the public.

494. Honda knew that the Class Vehicles' starting system suffered from an inherent defect, were defectively designed or manufactured, and were not suitable for their intended use.

495. Honda intended for Plaintiff and Class members to rely on Honda's omissions regarding the Defect.

496. Plaintiff and Class Members justifiably acted or relied to their detriment upon Honda's omissions of fact concerning the above-described Defect, as evidenced by Plaintiff's and Class members' purchases and leases of Class Vehicles.

497. Honda was under a duty to Plaintiff and the other Class Members to disclose the defective nature of the Class Vehicles' starting systems because: a) Honda was in a superior position to know the true state of facts about the safety defect contained in the Class Vehicles' starting system; b) Plaintiff and the other Class Members could not reasonably have been expected to learn or discover that their starting system has a dangerous safety defect until after they purchased the Class Vehicles; and c) Honda knew that Plaintiff and the other Class Members could not reasonably have been expected to learn about or discover the Defect.

498. By failing to disclose the Defect, Honda knowingly and intentionally concealed material facts and breached their duty not to do so.

499. The facts concealed or not disclosed by Honda to Plaintiff and the other Class Members are material because a reasonable consumer would have considered them to be important in deciding whether to purchase the Class Vehicles, or to pay less for them. Had Plaintiff and the other Class Members known that the Class Vehicles' starting system is defective, they would not have purchased the Class Vehicles or would have paid less for them.

500. Plaintiff and the other Class Members are reasonable consumers who do not expect that their vehicles will suffer from the Defect. That is the reasonable and objective consumer expectation for vehicles.

501. Had Honda disclosed all material information regarding the Defect to Plaintiff and Class members, Plaintiff and Class members would not have purchased or leased Class Vehicles or would have paid less to do so.

502. Honda's omissions have deceived Plaintiff, and those same business practices have deceived or are likely to deceive members of the consuming public and the other members of the Class.

503. In addition to being deceptive, the business practices of Honda were unfair because Honda knowingly sold Plaintiff and Class members vehicles with starting systems that are essentially unusable for the purposes for which they were sold. The injuries to Plaintiff and Class members are substantial and greatly outweigh any alleged countervailing benefit to Plaintiff and Class members or to competition under all of the circumstances. Moreover, in light of Honda's exclusive knowledge of the Defect, the injury is not one that Plaintiff and Class members could have reasonably avoided.

504. As a direct and proximate result of Honda's unfair and deceptive trade practices, Plaintiff and Class members have suffered ascertainable loss and actual damages. Plaintiff and Class members who purchased or leased the Class Vehicles

would not have purchased or leased the Class Vehicles, or, alternatively, would have paid less for them had the truth about the Defect been disclosed. Plaintiff and Class members have also suffered ascertainable loss and actual damages related to the Defect recall. Plaintiff and Class members are entitled to recover actual damages, attorneys' fees and costs, and all other relief allowable by law.

505. Honda was provided pre-suit notice of the Defect, and as such has been afforded a reasonable opportunity to cure their fraud and breach of warranties. Any additional time to do so would be unnecessary and futile because Honda has known of and concealed the Defect and, on information and belief, has refused to repair or replace the starter systems free of charge despite the Defect's existence at the time of sale or lease of the Class Vehicles.

506. Plaintiff and the Virginia Class Members seek compensatory damages, punitive damages, reasonable attorneys' fees, and any other just and proper relief available under the VCPA.

**COUNT XIX**

**Breach of Express Warranty**

**(Va. Code Ann. §§ 8.2-313 and 8.2A-210)**

**(Plaintiff Singh Individually and on Behalf of the Virginia Class)**

507. Plaintiff Mandeep Singh ("Plaintiff" for purposes of the Virginia Class) incorporates by reference each allegation as if fully set forth herein.

508. Plaintiff brings this Count individually and on behalf of the other members of the Virginia Class who purchased or leased Class Vehicles in the state of Virginia (the "Class," for purposes of this Count).

509. Plaintiff and the other Virginia Class members purchased or leased the Class Vehicles from Defendants by and through their authorized agents for retail sale or were otherwise expected to be the eventual purchasers or lessees of the Class Vehicles. At all relevant times, Honda was the manufacturer, distributor,

warrantor, and/or seller of the Class Vehicles and knew or had reason to know of the particular purpose for which the Class Vehicles were purchased or leased.

510. Honda is and was at all relevant times a "merchant" and "seller" as defined under Va. Code Ann. §§ 8.2-104(1) and 8.2-103(1)(d), and §§ 8.2A-103(1)(t).

511. With respect to leases, Honda is and was all relevant times a "lessor" under Va. Code Ann. § 8.2A-103(1)(p).

512. The Class Vehicles are and were at all relevant times "goods" within the meaning of Va. Code Ann. §§ 8.2-105(1) and 8.2A-103(1)(h).

513. In connection with the purchase or lease of each of the Class Vehicles, Honda provides warranty coverage for the Class Vehicles under one or more manufacturer's warranties. Under these warranties, Honda promised to repair or replace defective starting systems and its components free of charge if they failed due to defects in materials or workmanship.

514. These affirmations of fact, promises, and undertakings constitute express warranties within the meaning of Va. Code Ann. §§ 8.2-313 and 8.2A-210 and became part of the basis of the bargain between Honda and Plaintiff and the other Class Members.

515. Honda breached the express warranties because the Class Vehicles were sold and leased with defective starting systems that cause sudden stalling and complete shutdown of the vehicle engine. Despite its warranties, Honda has refused and/or failed to repair the Defect or provide an effective remedy.

516. By failing to disclose the Defect and refusing to provide an effective repair, Honda deprived Plaintiff and the Class Members of the benefit of their bargain and breached the express warranties promising to correct defects in materials or workmanship.

517. Plaintiff and the Virginia Class Members performed all conditions precedent under the contract between the parties.

518. As described above, Honda was provided pre-suit notice of the Defect, and as such have been afforded a reasonable opportunity to cure their breach of written warranties. Any additional time to do so would be unnecessary and futile because Honda has known of and concealed the Defect and, on information and belief, has refused to repair or replace necessary components despite the Defect's existence at the time of sale or lease of the Class Vehicles.

519. Alternatively, Plaintiff and Class Members were excused from providing Honda with notice and an opportunity to cure the breach of warranty because it would have been futile. Honda still has not provided an adequate remedy to address the Defect.

520. Honda is in privity with Plaintiff and members of the Virginia Class. Plaintiff and Virginia Class Members, not the dealers, were the intended beneficiaries of the Class Vehicles and the associated written warranties. Honda designed and manufactured the Class Vehicles, and created the advertising, marketing, and representations at issue and warranted the Class Vehicles to Plaintiff and members of the Class, either directly or through authorized agents. Purchase or lease through authorized dealers is sufficient to create privity because such authorized sellers act as Honda's agents for the purpose of the sale and lease of the Class Vehicles. Further, Honda knew the identity, purpose and requirements of Plaintiff and members of the Virginia Class and designed, manufactured and marketed the Class Vehicles to meet their requirements.

521. Honda's breach was willful and knowing. Honda knew that the Defect existed at the time of sale and that their purported repairs were ineffective but nevertheless continued to sell and lease Class Vehicles while representing them as defect-free.

522. As a direct and proximate result of Honda's breach of express warranties, Plaintiff and the other Virginia Class Members have suffered damages,

including the diminished value of their vehicles, out-of-pocket repair costs, and loss of use.

523. Because of Honda's breach of express warranty as set forth herein, Plaintiff and the other members of the Virginia Class assert, as additional and/or alternative remedies pursuant to Va. Code Ann. §§ 8.2-608 and 8.2A-517, revocation of acceptance and restitution of all purchase or lease payments, together with incidental and consequential damages as permitted by law.

**COUNT XX**

**Breach of Implied Warranty of Merchantability**

**(Va. Code Ann. §§ 8.2-314 and 8.2A-212)**

**(Plaintiff Singh Individually and on Behalf of the Virginia Class)**

524. Plaintiff Mandeep Singh ("Plaintiff" for purposes of the Virginia Class) incorporates by reference each allegation as if fully set forth herein.

525. Plaintiff brings this Count individually and on behalf of the other members of the Virigina Class who purchased or leased Class Vehicles in the state of Virginia (the "Class," for purposes of this Count).

526. Plaintiff and the other Virginia Class Members purchased or leased the Class Vehicles from Honda by and through its authorized agents for retail sales or were otherwise expected to be the eventual purchasers of the Class Vehicles when bought from a third party. At all relevant times, Honda was the manufacturer, distributor, warrantor, and/or seller of Class Vehicles. Honda knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased.

527. Honda is and was at all relevant times a "merchant" and "seller" as defined under Va. Code Ann. §§ 8.2-104(1) and 8.2-103(1)(d), and §§ 8.2A-103(1)(t).

528. With respect to leases, Honda is and was all relevant times a "lessor" under Va. Code Ann. § 8.2A-103(1)(p).

529. The Class Vehicles are and were at all relevant times "goods" within the meaning of Va. Code Ann. §§ 8.2-105(1) and 8.2A-103(1)(h).

530. Under Va. Code Ann. §§ 8.2-314 and 8.2A-212, every sale of consumer goods carries with it an implied warranty that the goods are merchantable and fit for the ordinary purposes for which such goods are used, including safe and reliable transportation.

531. Honda impliedly warranted that the Class Vehicles were of merchantable quality and fit for the ordinary purposes for which vehicles are used, would pass without objection in the trade, and would conform to the promises or affirmations made on their labels, marketing and warranties.

532. The Class Vehicles, when sold and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which cars are used.

533. In fact, the Class Vehicles were sold and leased with defective starting systems that cause sudden loss of acceleration and power while the vehicle is in operation. Because of this Defect, the Class Vehicles were not of merchantable quality, were unfit for their ordinary purpose, and failed to conform to the promises and affirmations made by Defendants.

534. Honda knew or had reason to know that Plaintiff and Class Members would use, consume, or be affected by the Class Vehicles.

535. Because of the Defect, the Class Vehicles were not in merchantable condition when sold and are not fit for the ordinary purpose of providing safe and reliable transportation.

536. The Defect substantially impairs the use, value, and safety of the Class Vehicles. As such, the vehicles would not pass without objection in the trade and would not be accepted by a reasonable consumer if the Defect were disclosed.

537. At the time of sale or lease, Honda knew or should have known that the Class Vehicles were defective and not in merchantable condition, yet they failed to disclose the defect and refused to provide a permanent or adequate repair.

538. Plaintiff and the Class Members performed all conditions precedent under the contract between the parties.

539. Honda is in privity with Plaintiff and the Class Members because Honda and its authorized dealers were part of a single distributive chain, and the retail transactions were made pursuant to Honda's express and implied warranties. Plaintiff and the Class Members were the intended beneficiaries of those transactions and of the implied warranties arising therefrom.

540. As described above, Honda was provided with pre-suit notice of the Defect, and as such has been afforded a reasonable opportunity to cure its breach of written warranties. Any additional time to do so would be unnecessary and futile because Honda has known of and concealed the Defect and, on information and belief, has refused to repair or replace the necessary components free of charge despite the Defect's existence at the time of sale or lease of the Class Vehicles.

541. Honda's breach of implied warranty affected all Class Vehicles uniformly and constitutes a continuing course of conduct.

542. As a direct and proximate result of Honda's breach of implied warranty, Plaintiff and the Class Members have suffered damages, including the difference in value between the Class Vehicles as delivered and as warranted, incidental and consequential damages, and diminution in resale value.

**COUNT XXI**

**UNJUST ENRICHMENT**

**(Plaintiff Singh Individually and on behalf of the Virginia Class)**

543. Plaintiff Singh ("Plaintiff" for purposes of the Virginia Class) incorporates by reference each allegation as if fully set forth herein.

544. Plaintiff and the other members of the Virginia Class conferred a benefit on Honda by leasing or purchasing the Class Vehicles. Honda was and should have been reasonably expected to provide Class Vehicles free from the Defect.

545. Plaintiffs and Class Members unknowingly conferred a benefit on Honda of which Honda had knowledge, since Honda was aware of but failed to disclose the Defect and misled Plaintiffs and Class Members regarding the nature and quality of the subject Class Vehicles while profiting from this deception.

546. Honda unjustly profited from the lease and sale of the Class Vehicles at inflated prices as a result of their false representations, omissions, and concealment of the Defect in the Class Vehicles.

547. As a proximate result of Honda's false representations, omissions, and concealment of the Defect in the Class Vehicles, and as a result of Honda's ill-gotten gains, benefits and profits, Honda has been unjustly enriched at the expense of Plaintiff and the other Virginia Class Members. It would be inequitable for Honda to retain their ill-gotten profits without paying the value thereof to Plaintiff and the other Virginia Class Members.

548. There is a direct relationship between Honda on the one hand, Plaintiff and the other Virginia Class Members on the other, sufficient to support a claim for unjust enrichment. Honda failed to disclose the Defect to improve retail sales, which in turn improved wholesale sales. Conversely, Honda knew that disclosure of the Defect would suppress retail and wholesale sales of the Class Vehicles, suppress leasing of the Class Vehicles, and would negatively impact the reputation of Honda's brand among Plaintiff and the other Virginia Class Members. Honda also knew its concealment and suppression of the Defect would discourage Plaintiffs and the other Virginia Class Members from seeking replacement or repair concerning the Defect, thereby increasing profits and/or avoiding the cost of such replacement or repairs.

549. Plaintiff and the other Virginia Class Members are entitled to restitution of the amount of Honda's ill-gotten gains, benefits and profits, including interest, resulting from their unlawful, unjust and inequitable conduct.

550. Plaintiff and the other Virginia Class Members seek an order requiring Honda to disgorge their gains and profits to Plaintiff and the other Virginia Class Members, together with interest, in a manner to be determined by the Court.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the other Class Members, respectfully request that the Court enter judgment in their favor and against Defendants as follows:

A. An order certifying the proposed Classes and designating the named Plaintiffs as the named representatives of the Classes and designating the undersigned as Class Counsel for the Class;

B. A declaration that the starting system in the Class Vehicles is defective;

C. A declaration that Honda is financially responsible for notifying all Class Members about the defective nature of the Class Vehicles;

D. An order enjoining Honda to desist from further deceptive distribution, sales, and lease practices with respect to the Class Vehicles and directing Honda to permanently, expeditiously, and completely repair the Class Vehicles;

E. An award to Plaintiffs and Class Members of compensatory, exemplary, and statutory penalties, damages, including interest, including overpayment and diminution in value damages, and punitive damages, in an amount to be proven at trial, as well as other damages available at law;

F. An award to Plaintiffs and Class Members for the return of the purchase or lease price of the Class Vehicles, with interest from the time it was paid, the reimbursement of the reasonable expenses occasioned by the sale or lease, and damages;

G. A Defendant-funded program, using transparent, consistent, and reasonable protocols, under which out-of-pocket expenses and damages claims associated with the Defect in Plaintiffs' and Class Members' Class Vehicles, can be made and paid, such that Honda, not the Class Members, absorb the losses and expenses fairly traceable to the recall of the vehicles and correction of the defect;

H. A declaration that Honda must disgorge, for the benefit of Plaintiffs and Class Members, all or part of the ill-gotten profits they received from the sale or lease of the Class Vehicles, or make full restitution to Plaintiffs and Class Members;

I. An award of attorneys' fees and costs, as allowed by law;

J. An award of pre-judgment and post-judgment interest, as provided by law;

K. Leave to amend this Complaint to conform to the evidence produced at trial; and

L. Such other relief as may be appropriate under the circumstances.

**JURY DEMAND**

Plaintiffs hereby demand a trial by jury on all claims so triable.

Respectfully submitted,

Dated: June 2, 2026

BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
THOMAS J. O'REARDON II (247952)
PAULA R. BROWN (254142)

By: *s/ Timothy G. Blood*
TIMOTHY G. BLOOD

501 West Broadway, Suite 1490
San Diego, CA 92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
toreardonbholaw.com
pbrown@bholaw.com

LEVI & KORSINSKY LLP
EDUARD KORSINSKY (*phv forthcoming*)

MARK REICH (*phv forthcoming*)
33 Whitehall St. 27th Floor
New York, NY 10004
Tel: 212/363-7500
ek@zlk.com
mreich@zlk.com

***Counsel for Plaintiffs***